United States District Court
District of Connecticut

Richard Nau, : Case No.
Plaintiff

V. : January 1, 2021

Daniel Papoosha, Scott Erfe, : Jury trial demand
Antonio Santiago, Dave Magia,
William Mulligan, Kristine Barone,
Robert Martin, Donald Boyd, C/O King,
C/O Peracchio, C/O Vargas, C/O Wright, R. Taylor,
G. Cuzio, Joseph Roach, D/W Guadarrama,
C/S Stanley, D/A Rodriguez, Angel Quiros,
Sued in their individual and official capacities,
Defendants.

# Verified Complaint
## For Damages and Injunctive Relief

## I.) Introduction

This is a civil rights action filed by Richard Nau, a state prisoner for damages, declatory and injunctive relief under 42 U.S.C. section 1983, Alleging Violations of freedom of speach, free exercise of religion, due process, equal protection, unreasonable search and seizure and cruel and unusual punishment under the First, fourth, fifth, eighth and fourteenth amendments of the United States Constitution, Article First Sections 3, 4, 5, 7, 9 and 20 of the Connecticut constitution and The Americans with Disabilities Act.

Plaintiff also alleges the torts of negligence and the intentional infliction of emotional distress.

## II.) Jurisdiction

1.) The Court has jurisdiction over Plaintiffs claims of violation of federal constitutional rights under 42 U.S.C Sections 1331(1) and 1343.

2.) The Court has supplemental jurisdiction over plaintiffs state law tort claims under 28 U.S.C. Section 1367.

## III.) Parties

3.) Plaintiff, Richard Nau, at all times herein was confined by the Connecticut Department of corrections (Doc). The events giving rise to this complaint occured while he was housed at Cheshire C.I., Macdougal-Walker C.I (walker), and corrently at Corrigan - Radgowski C.C (corrigan).

4.) Defendant, Daniel Papoosha, IS a captain in the Doc Security division and the Security Risk Group (SRG) coordinator. He is responsable for making and enforcing administrative policies and restrictions in the Srg units and program. Defendant papoosha reports to defendant Santiago and He is Located at Doc headquarters in Wethersfield Connecticut.

5.) Defendant, Scott Erfe, was the Warden of Cheshire C.I. during the Plaintiff's disciplinary and SRG designation process', He was then promoted to District Administrator (D/A) for district 2 at cheshire C.I. when the Plaintiff filed His administrative appeal's, He is Located at Cheshire C.I.

6.) Defendant, Antonio Santiago, was the director of security for DoC. and is responsable for making, approving and enforcing all security related policies and decisions, to include authorizing the Plaintiffs SRG designation and transfer to the Segregated SRG Unit, Defendant Santiago is also responsable to conduct proper, adequate and impartial reviews of inmate SRG designation's. Defendant Santiago reports to Defendant Quiros and is located at DoC headquarters in Wethersfield CT.

7.) Defendant, Dave Magia, was the director of Population Management and Inmate Classification for D.o.C. and is responsable for all offender classification's, transfer's and housing of the inmate population. Defendant Magia works in union with Defendant's Santiago and Papoosha and reports to Defendant Quiros, He is Located at DoC headquarters in Wethersfield CT.

8.) Defendant, William Mulligan, was the District Administrator for DoC in district 1 and is responsable to ensure directive policies, state administrative regulations and due process protections are followed and to be impartial in the review and decision making of level 2 administrative remedies, Defendant Mulligan reports to defendant Quiros and is located at Macdougal-Walker C.I.

9.) Defendant, Kristine Barone, was Warden of macdougall-Walker C.I. and responsable for inmate safety, to ensure adequate medical care, proper treatment, safe housing conditions and the supervision of all facility staff in the SRG unit (B-2) in Walker. Defendant Barone reports to defendants Papoosha, Santiago, Mulligan and Quiros and Magia and is located at Macdougal-Walker C.I.

10.) Defendant, Robert Martin, is the Warden at Corrigan-Radgowski C.C. and is responsable for the operations, treatment, supervision and housing conditions of the SRG units at Corrigan and to Remedy Greivances to ensure Directive policies, time frames and due process protections are followed. Defendant Martin reports to Defendants Quiros, Papoosha, Santiago, and magia and is located at Corrigan-Radgowski C.C.

11.) Defendant, Donald Boyd, was the LIeutenant (LT) and supervisor of the Intelligence (Intel) unit at cheshire C.I. and is responsable to ensure directive policies are followed in the disciplinary process and to supervise the actions of defendants Peracchio, Vargas and wright. Defendant Boyd reports to defendants Erfe, Taylor, Papoosha, Santiago and magia, He is located at Cheshire C.I.

12.) Defendant, King, is a Correction officer (C/O) and greivance coordinator at corrigan and is responsable to process administrative remedies in accordance with directive Policies and within time frames. Defendant King reports to defendant martin and is located at Corrigan C.C.

13.) Defendant, Peracchio, was a C/O and phone monitor in the intel unit at cheshire C.I. and is responsable to follow and enforce directive policies. Defendant Peracchio reports to defendants Boyd, Taylor, Erfe, Guadarrama and Papoosha and He works with defendants Vargas and wright, He is located at cheshire C.I.

14.) Defendant, Vargas, was a C/O and disciplinary investigator (D/I) For the intel unit at cheshire C.I. and is responsable to follow and enforce directive policies. Defendant Vargas works with defendants Peracchio and Wright, and reports to defendants Boyd, Taylor, Erfe, Guadarrama and Papoosha and is located at cheshire C.I.

15.) Defendant, Wright, was a C/O and D/I for the intel unit at cheshire C.I. and is responsable to follow and enforce directive policies. Defendant Wright works with defendants Peracchio and Vargas, and reports to defendants Boyd, Taylor, Erfe, Guadarrama and Papoosha and is located at cheshire C.I.

16.) Defendant, R. Taylor, was a Captain and Unit Manager of the restrictive housing unit (RHU) and disciplinary office and responsable to ensure proper treatment and directive Policies are followed. Defendant Taylor supervised defendants Boyd, Peracchio, Vargas and wright and reports to Defendants Guadarrama, and Erfe, and is located at cheshire C.I.

17.) Defendant, G. Cuzio, was LT. and disciplinary hearing officer (DHO) For DOC, and responsable to, conduct Fair and impartial disciplinary and SRG hearings, and to ensure directive Policies and due Process protections are followed. Defendant Cuzio reports to defendants Papoosha, Santiago, Magia and Erfe.

18.) Defendant, Joseph Roach, was Deputy Warden (D/W), of Walker and he is responsable For housing and maintinence conditions in the SRG Unit at Walker C.I. Defendant Roach reports to defendant Barone and is located at macdougall-walker C.I.

19.) Defendant, Guadarrama, was D/W of Security at Cheshire C.I., and acting Warden when defendant Erfe was promoted to D/A. Defendant Guadarrama was responsable to supervise the day to day operations, to ensure Inmate rights, Safety and Security, to ensure directive policies are followed and to review and remedy inmate Greivances, he reports to defendants Erfe, Papoosha, santiago, Magia and Quiros and is located at cheshire C.I.

20.) Defendant, Stanley, was the Counselor Supervisor C/S and unit manager for the SRG Unit (B2) in walker, and is responsable for the daily operations, housing conditions, supervision, safety and treatment of of inmates, and to ensure directive policies are followed. Defendant Stanley reports to defendants Barone, Roach, Papocsha, Santiago and magia and is located at macdougal-walker C.I.

21.) Defendant, Rodriguez, was the district administrator for DOC Facilities in district 2, and responsable to ensure directive policies, state administrative regulations and due process protections are followed and to be impartial in the review and decision making of level 2 administrative remedies. Defendant Rodriguez reports to defendant Quiros and was located at cheshire C.I.

22.) Defendant, Angel Quiros, is the Commissioner of Doc and is responsable for the overall operations and directive policies of all facilities in the DOC, and to be an impartial reviewer and decision maker of level 3 administrative remedies, to ensure inmate rights and due process protections. Defendant Quiros was responsable for making and approving SRG unit and program policies prior to becoming the Commissioner and he is located at D.O.C. headquarters in wethersfield Connecticut.

## IV.) Exhaustion of Remedies

23.) Plaintiff has exhausted all remedies available to him and has no further adequate remedy at law for the redress of greivances.

## V.) Facts

24.) Plaintiff was incarcerated in 2013 and shortly after, falsely designated as an SRG member.

25.) Plaintiff successfully completed the SRG program on March 11 of 2016 and was transfered to Cheshire C.I.

26.) In Cheshire the Plaintiff was permitted to possess property, history and religious literature and items to practice his "Asatru" faith in the confines of his cell as well as attend religious services. The Plaintiff was permitted to send and recieve all mail, publications and books in accordance with directive policies and at the approval of prison authorities. The Plaintiff was in Cheshire almost 3 years and was approx 2 years dr free, had just been given contact visits with and was in daily contact with his family and friends, completed progams, and was taking a paralegal certification course. The plaintiff had the food server job, assisted with various tasks unit officers asked of him, also assisted with painting an office and murals for defendants Wright, Peracchio, Vargas and Boyd, and the Plaintiff was classified as a level 3 inmate housed in the level 4 Cheshire facility for approx. 6 months prior to the events giving rise to this claim.

27.) The following course of events are a direct link between the defendants actions, the plaintiffs increased security status, re-classification, transfer and current housing in conditions similar to administrative segregation for a minimum of 730 day's. The defendants actions caused the plaintiff to lose his job, liberty interests, privleges, property and good time (rrec) earning status, and severely restricted contact with his family and friends.

28.) The Plaintiff has broken down the complaint into several parts in the succession of events, however please note, some of the disciplinary reports, injury and event time frames do overlap and/or coincide:

part I - Threats Dr

29.) on 2/22/19 Plaintiff had been housed in the south block 6 unit for approx. 5 months when Inmate Michael Baldino (Baldino) moved to the unit on the same teir and rec as the plaintiff, who has been friends with Baldino for over 20 years prior to his incarceration.

30.) mr. Baldino was not given his property, the Plaintiff gave food and cosmetics to Baldino, talked and looked at pictures of family and friends catching up on eachothers lives as friends do.

31.) The Plaintiff asked Baldino about the plaintiffs Brothers truck being broken into and items stolen a few years earlier. Baldino told the plaintiff his little brother and a girlfriend had done it because they were hooked on drugs, and were arrested for it. The Plaintiff was looking for clarification because his family had not explained it to him and now found the truth from Baldino.

32.) On 2/23/19 The Plaintiff spoke to his mother on the telephone, during the conversation the Plaintiff told his mother Baldino was there. The Plaintiffs mother expressed her dislike for Baldino and told the Plaintiff Baldino Broke into his brothers truck attempting to cause conflict Between the Plaintiff and Baldino Because of her dislike. The Plaintiff tried to explain it to his mother but she would not listen so they began to argue and the plaintiff made comments about getting in trouble and going to RHU and that he would lose contact visits if he got in trouble in an attempt to stop talking about it hoping his mother would stop trying to cause conflict.

33.) The Plaintiff continued to argue with his mother about trying to cause conflict and she threatened him by saying she would call the prison to start issues for the Plaintiff, the conversation became irate between only the Plaintiff and his mother and the Plaintiff hung up.

34.) The Plaintiff then called his Grandmother to explain the situation with his mother in an attempt to have her diffuse the situation.

35.) The Plaintiff remained in the unit, socializing with Baldino for 4 days following these calls with no conflict between them.

36.) on 2/27/19 The Plaintiff and Baldino had morning rec, the Plaintiff then served the food at chow call, assisted in cleaning the unit and returned to his cell.

37.) Defendant Boyd then came to the Plaintiffs cell with a group of officers stating the Plaintiff is going to RHU for threats made on the phone.

38.) The Plaintiff knew it was about the phone call with his mother and asked defendant Boyd to speak with Baldino to see no threats were made and there was no conflict. Defendant Boyd disreguarded the plaintiffs request.

39.) The Defendant instructed the Plaintiff to remove His Thor's Hammer pendant and Celtic cross and throw it in his property without a Supervisor or Religious Coordinator present, (items used against Plaintiff in part 3 of this Complaint).

40.) The Plaintiff Complied, was restrained, escorted to RHU, strip searched and Placed in cell 5 in the east 1 Restrictive housing unit. (RHU)

41.) The Plaintiff was then Given a 1 Page dr written by defendant Peracchio and authorized by defendant Boyd.

42.) Defendant Peracchio's dr alleged that he percieved Statements made over multiple calls as threatening in nature, but only listed the exchanges where the Plaintiff expressed that he would lose his Contact visits if he got in trouble and if Baldino broke into his brothers truck he needed his ass whooped, the Plaintiff was only Speaking to his mother and never said he would get into a Conflict with Baldino.

43.) C/O Howes was the unit officer in South block 6 where the Plaintiff was Housed, Packed Plaintiffs property and brought it to the property room to be Stored as temporary storage property (tsp) while the plaintiff remained in RHU. officer Howes went to plaintiffs cell in RHU to have the Plaintiff sign a Property matrix form.

44.) on 3/4/19 The Plaintiff went to the dr office, defendants wright and Vargas were present. The plaintiff told defendant wright he did not threaten Baldino and he could verify that there was no conflict with the Plaintiff. The Plaintiff plead not guilty and defendant wright told Plaintiff he would go to a hearing.

45.) The Plaintiff chose an advocate and asked for Baldino, Baldino's cellmate, and defendant Peracchio as witness' for the hearing.

46.) Defendant Vargas became angry with the Plaintiff for requesting defendant Peracchio as a witness and told the Plaintiff staff cannot be and would not be a witness at the hearing.

47.) Defendant Vargas then escorted the Plaintiff to his RHU cell, during the escort defendant Vargas threatened the Plaintiff, stating he and defendant Peracchio would search the temporary storage property (tsp) officer Howes stored, and that they would find something to keep the Plaintiff in RHU Longer for his choice to call defendant peracchio as a witness at the hearing. Plaintiff asked to Speak to a shift supervisor and defendant Vargas refused to call one.

48.) The Plaintiff was told he would go to a hearing on 3/12/19.

49.) The Plaintiff was not given any further evidence of statements, transcripts or supplemental reports prior to the hearing.

50.) On 3/12/19 The Plaintiff went to the hearing in the dr office, defendants Wright and cuzio were present and Plaintiffs advocate was present, no witness' Plaintiff requested were present.

51.) Plaintiff asked where the witness' were so he could question them to present a defense. Defendant Wright told the Plaintiff Baldino and his cellmate wrote positive statements in Plaintiffs defense and could not question them or see their statements.

52.) Plaintiff asked why defendant Peracchio was not Present, Defendant Cuzio told the Plaintiff Prison staff could not be witness'.

53.) Plaintiff attempted to present a defense with the inadequate information on the dr and without phone transcripts or supplementals present.

54.) Plaintiff told defendant Cuzio the dr was issued 4 days after the Phone call, not within 24 hours of the alleged misconduct and per State administrative regulations, calls can only be terminated for misconduct and subJect the Plaintiff to loss of phone privleges, not punitive seg time.

55.) Defendant Cuzio stopped the Plaintiff and told him that it does not matter what defense the Plaintiffs presents or that he was not speaking to Baldino to threaten him because it was defendant Peracchio's perception that threats were made.

56.) The Plaintiff asked defendants Cuzio and wright if the definition of threat's is the intent to cause fear of Harm to a person, and Baldino was not Present in the Plaintiffs phone call to his mother, when and where did the Plaintiff personally make threats to Baldino? The Plaintiff had a Private call with his mother not Baldino, expressing his free speach to his mother never causing or intending to threaten or cause fear of harm to Baldino.

57.) Defendant Cuzio told the Plaintiff it doesnt matter he would find the plaintiff guilty and that if the Plaintiff did not plead Guilty to the dr he would impose the maximum punitive sanctions on the plaintiff.

58.) The Plaintiff plead guilty under duress to avoid the maximum sanctions in order to stay in contact with his family. Plaintiff recieved 15 days Seg time, 30 days Loss of Commissary and phone privleges and 15 days loss of good time.

Part 2 - Contraband dr

59.) On 2/27/19 when the Plaintiff was taken to RHU for the threats dr by defendant Boyd, The plaintiff Lost the right to Control and possess any property.

60.) Officer Howes Collected what he percieved to be the Plaintiffs Property, inventoried it, found no contraband and brought it to the Property room to be stored. officer Howes then had the Plaintiff sign a property matrix Form and verbally assured him all religious, history, Art, and school books were accounted for.

61.) The Property officer inventoried the Property, found No Contraband, put the property in box's and stored it in the secure area of the Property room as temporary storage property (tsp). TSP is property the Plaintiff is not permitted to possess due to his housing status in RHU.

62.) on 3/4/19 when the Plaintiff chose to take the threats dr to a hearing and asked for defendant Peracchio as a witness, Defendant Vargas got mad and threatened the plaintiff with a harrassment search of the tsp with defendant Peracchio to find something to keep the Plaintiff in RHU longer.

63.) Defendants Vargas and Peracchio performed the un-authorized and unreasonable search of the tsp. Defendant Vargas issued a dr alleging he found contraband during the retalitory search, Defendant Vargas stated he found a "needle" "inside" of a pencil, Defendant Taylor authorized this dr to be given to the plaintiff.

64.) Plaintiff chose to take contraband dr to a hearing, he chose witness', an advocate and defendant Vargas to be present at the hearing. Defendant Wright said staff cannot be witness' at a hearing.

65.) on 3/11/19 The Plaintiff recieved a second dr for the calculated retalitory harrassment search alleging SRG Affiliated Items were found during the search, defendant Peracchio issued the dr at the authorization of defendant Boyd

66.) On 3/12/19 The Plaintiff went to dr hearing for threats and contraband dr's. Plaintiff's advocate, and defendants Wright and cuzio were Present, but defendants Peracchio and Vargas were not present and defendant cuzio said they were not going to be at the hearing.

67.) Defendant Cuzio dismissed the contraband dr, because directive Policy dictates the plaintiff could not have been in possession of the alleged contraband due to his housing status in RHU and the property being stored in the property room as tsp.

68.) Defendant cuzio recognized defendants Peracchio and Vargas's search was not authorized and they used their position of authority to violate directive policy and issue the contraband dr with the intent to further harm and harass the Plaintiff.

Part 3 - SRG DR

69.) On 2/27/19 Plaintiff was brought to RHU By defendant Boyd for defendant Peracchio's threats dr.

70.) Plaintiffs property was inventoried and packed by unit officer Howes, who then brought it to the property room. The Property officer inventoried the property again and stored it as temporary storage property (tSP), No contraband was found, documented and/or discarded by either officer.

71.) on 3/4/19 The Plaintiff chose to take threats dr to a hearing, chose an advocate, witness' and requested defendant Peracchio to be present as a witness which angered defendant Vargas.

72.) when defendant Vargas escorted the Plaintiff back to the RHU cell, The defendant Threatened him to conduct a retalitory, unauthorized and unreasonable search of the tSP with defendant Peracchio, and that the 2 defendants would find something to keep the Plaintiff in RHU Longer.

73.) Defendant Vargas and defendant Peracchio conducted the unauthorized, unreasonable Retalitory Search of the tSP, following through on defendant Vargas's threat with wanton and deliberate indifference to the Plaintiff's rights, administrative directives and state administrative regulations, Showing Malicious intent.

74.) Defendant Vargas issued the contraband dr on 3/4/19, and defendant Peracchio issued the SRG dr on 3/11/19, Both dr's for the same act, the search threatened and conducted on 3/4/19 By Both defendants.

75.) on 3/12/19 the Plaintiff went to the dr hearing for defendant Vargas's contraband dr, Defendant Cuzio dismissed the contraband dr, due to the fact, By the directive's 9.4 and 6.10 the Plaintiff was not permitted to possess the contraband property.

76.) On 3/12/19 following the hearing the Plaintiff sent a request to defendant Taylor, requesting religious literature, mailing labels he saved, reciepts for property and ASATRU religious items and historical materials that were purchased, sent, reviewed By prison officials and permitted into the cheshire facility, out of Plaintiff's stored property, to use at the SRG hearing and prepare and present a proper defense at the SRG hearing.

77.) On 3/13/19 the Plaintiff was brought to the intel office and was surrounded by defendants Papoosha, Boyd, Vargas, Peracchio, Wright and several other C/o's from cheshire intel unit and D.o.C. security division. The defendants tried to intimidate the Plaintiff and coerce him into pleading guilty to the SRG dr. Defendant Papoosha had a large stack of paper copies saying it was all "evidence" against the Plaintiff but the defendant would not allow the Plaintiff to see said "evidence".

78.) The Plaintiff told the defendants he had previously completed the SRG program in march of 2016 and that at that time and currently was not and is not a member of any gang. The Plaintiff explained his study of and practice of the ASATRU faith and that all the symbols alleged as SRG material were religious symbols from books permitted into the cheshire facility and that the Thor's Hammer pendant and Celtic cross used in the SRG dr were approved by the director of religious services, DR. Reverand Williams.

79.) Defendant Papoosha told the Plaintiff CT D.o.C. Does not recognize "ASATRU" as a religion, and inmates can only practice a religion recognized by DOC, any inmate that practices "ASATRU" will be labeled as an SRG member of the Aryan Brotherhood.

80.) The Plaintiff told defendant Papoosha that his belief in "ASATRU" faith is sincerely held and he practizes it by conducting himself by the Nine Noble Virtues, paying respect to his ancestors and heritage, producing Artwork with Nordic symbols, and wearing Norse religious items as a sign of his faith, AND that the defendants stigmatization of the "ASATRU" faith places his life in danger by improperly finding him guilty and designating him as a member of a gang he is not part of,

81.) Defendant Papoosha laughed and said that is the Plaintiffs Problem, and that the Plaintiff could not practize ASATRU and still attend and participate in the catholic services.

82.) Plaintiff told the defendant that his ancestors were forced to practice their religion in secret because if they didnt convert to Catholosism they would be persecuted over 1000 years ago and that studying other faiths enables him to better understand others and the facility chaplin was aware of his practice and study of both faiths.

83.) Defendant Peracchio then told the Plaintiff it was not personal.

84.) The Plaintiff told the defendants, what could be more personal than the wanton and malicious search of property he could not possess and the wanton and malicious misinterpertation of religious and historical material allowed into the facility used in the dr, the intimidation by surrounding the Plaintiff with the entire intel unit and security division with the intent to send the Plaintiff back to the SRG Program, threatening his health and safety and constituting a major change in his conditions of confinement amounting to a greivous loss of privleges, property, liberty interests, and fundemental rights, when the Plaintiff is not an SRG member, it was and is personal.

85.) Defendant Papoosha told the Plaintiff it did not matter what the facility authorities permitted into the facility, the history material on John wilkes Booth Conspiracy, the religious items and publications, the letters, the Plaintiffs history and the Plaintiffs race would be used to designate him as an SRG member no matter what defense the Plaintiff presented.

86.) Defendant Papoosha is making the decision to designate and re-affiliate the Plaintiff as an SRG member prior to any formal hearing, and without any showing of Actual SRG activity and/or threat posed to Safety and Security.

87.) The Plaintiff chose to take the SRG DR to a formal hearing and asked for defendants Peracchio and Vargas to be present.

88.) on 3/15/19 the Plaintiff spoke to defendant Erfe when he toured RHU, about the unreasonable retalitory search, the plaintiffs authorization to possess historical books, religious literature and items and publications that were allowed into the facility after being reviewed by prison authorities. The Plaintiff then requested religious literature, mailing labELS, reciepts and historical materials from his property that were stored as TSP in the property room to be present at the hearing. Defendant Erfe said he would look into it and walked away, before the defendant left the unit the Plaintiff wrote and handed Defendant Erfe a request reguarding the same issues in an attempt to have the items at his hearing and to Remedy the improper SRG Affiliation and designation.

89. on 3/19/19 The Plaintiff went to the SRG hearing in the dr office with only defendants wright and cuzio present.

90.) Defendant Cuzio was the hearing officer and was suppose to conduct a fair and impartial hearing, Defendant wright was suppose to have all the evidence present at the hearing and both failed to do so, No witness's, and defendants Peracchio and Vargas were not present.

91.) Plaintiff told defendant Cuzio all the alleged SRG Items and material found during defendants Peracchio and Vargas's retalitory and calculated harrassment search on, 3/4/19 were not permitted to be in his possession per directives and that the SRG dr should be dismissed on the same Grounds defendant Cuzio dismissed the Contraband dr a week prior.

92.) Plaintiff further explained that per directive 9.5, 2 dr's cannot be issued relating to a single act, the search conducted on 3/4/19, Defendant Vargas issued the Contraband dr on 3/4/19 and defendant Peracchio issued the SRG dr on 3/11/19. Directive 9.5 also states a dr must be issued within 24 hours of the discovery of the alleged misconduct, that defendant Peracchio discovered the alleged SRG Items on 3/4/19 But waited until 3/11/19 to issue the dr 7 days later.

93.) Plaintiff told defendant Cuzio he had reciepts and mailing labels as proof the history and religious material was purchased and permitted into cheshire and if authorities reviewed it and let them in, it could not be SRG related and the Plaintiff does not have the ability to print, bind and publish any of these materials, so he did not make them while in prison.

94.) Defendant Cuzio told the plaintiff he understood the items were allowed into the facility and the actions of the defendants violated policy but the Plaintiff would be found guilty No matter what Because defendants Papoosha, santiago and magia already made the decision and decided what Phase of the Program the Plaintiff would be put in.

95.) The Plaintiff requested a Continuance in order to have all the evidence present and requested for a different and impartial hearing officer to conduct the hearing free from outside influence.

96.) Defendant Cuzio got mad and told the Plaintiff he was Guilty of the SRG or and was going to phase 2 at walker C.I. The defendant told the Plaintiff to leave the office, denying the plaintiffs request for a Continuance. Defendant Cuzio Could not know the Plaintiff would be going to phase 2 at a hearing, directive policy dictates only after a finding of guilty an inmate can be re-classified and transfered upon the approval of defendants Papoosha, Santiago and Magia. Defendant Cuzio's Knowledge of what phase and prison the Plaintiff would go to shows the denial of a fair and impartial hearing as the decision to designate the Plaintiff was made prior to the hearing.

97.) On 3/20/19 The Plaintiff recieved defendant Cuzio's guilty finding with an inadequate Reason for the Finding and transfer papers stating the plaintiff was going to be transfered to Phase 2 in Walker C.I. SRG Program.

98.) On 3/21/19 The Plaintiff filed his SRG appeal #SRG 6739.

99.) On 3/25/19 The Plaintiff Spoke to defendant Guadarrama in an attempt to remedy the wrongful designation stemming from publications and items permitted into the facility and defendants Peracchio and Vargas's unauthorized and unreasonable retalitory Search. Defendant Guadarrama told the Plaintiff he would not get involved or go against defendants Papoosha, Santiago, Erfe or Magia.

100.) on 4/3/19 the Plaintiff wrote to Secure South block 6 and property room camera footage pretaining to the date's of the threats, contraband and SRG Dr's. The South block 6 footage was secured but the property room footage was denied.

101.) on 4/4/19 the Plaintiff requested South block 6 and property room log book entries pretaining only to his dr's and date of alleged search and was denied.

102.) on 4/5/19 the Plaintiff after 37 days in cheshire RHU and 23 of them on transfer detention was transferred to walker C.I.. Directive 9.4 requires an inmate on transfer detention to be transfered within 72 hours, of being placed on transfer status.

103.) on 4/16/19 the Plaintiff filed a level 1 greivance on the SRG appeal filed on 3/21/19 because it was not responded to within the time frames.

104.) on 5/1/19 the Plaintiff filed a level 1 greivance on the unauthorized and unreasonable calculated harrassment search that resulted in the SRG DR.

105.) on 5/2/19 the Plaintiff recieved the SRG appeal response that was backdated to 4/11/19 by defendant Erfe, now the district administrator, denying the SRG appeal

106.) on 5/5/19 the Plaintiff wrote a Greivance on defendant Erfe's SRG appeal response for violation of directive policy and conflict of interest denying Plaintiff his due process and violating process integrity.

107. on 6/11/19 the Plaintiff told Defendant Papoosha he was not an SRG member and feared for his safety from the threat of violence by actual Gang members in walker C.I. SRG unit.

Defendant Papoosha told the Plaintiff to take him to court and walked away.

108.) on 7/14/19 the Plaintiff wrote defendant stanley concerning his fear for his safety and being forced to house with actual SRG members.

109.) on 7/15/19 the Plaintiff wrote defendant Barone about his attempt and reasons for using the Greivance process for the SRG appeal and process.

110.) on 7/16/19 the Plaintiff spoke to defendant stanley about the improper designation, and process integrity that was violated by defendants Papoosha, Santiago, magia, Erfe, Cozio, Peracchio, Vargas and wright in detail. Defendant Stanley told the Plaintiff he understands but it is over his head and he wont intervene to correct the SRG designation,

111.) on 8/1/19 the Plaintiff spoke to defendant Barone about the SRG appeal not being responded to within the time frames. Defendant Barone told the Plaintiff time frames in the directive dont matter youll get it when you get it.

112.) on 8/10/19 the Plaintiff filed a level 3 Greivance on the SRG appeal.

113.) on 8/21/19 the Plaintiff recieved a response about the level 3 Grievance stating all administrative remedies were exhausted.

114.) on 9/4/19 the Plaintiff spoke to defendant Papoosha showing him the reciepts for the religious materials used in the SRG DR. The defendant said I'll see you in court.

115.) on 9/4/19 the Plaintiff recieved the Incedent reports for the threats, contraband and SRG dr's, after 6 months of requesting them from F.O.I.

116.) The plaintiff reviewed these incedent reports and noticed the information Provided in the dr's was not the same as the incedent reports, which denied the Plaintiff all the neccessary information to prepare and present a proper defense and/or rebutt any evidence against him at the hearing, thus denying him due process.

117.) on 11/26/19 the Plaintiff was transfered to Corrigan CC. B unit.

118.) The Plaintiff while in Corrigan SRG Program was re-approved to purchase another celtic cross and Thor's Hammer Pendant, multiple ASATRU Faith Books, Norse History Books, WWII History Books, Norse Rune Symbols and the Nine Noble virtues all of which were used in the improper SRG Designation by defendants Papoosha, Santiago, magia, Erfe, Cuzio, Boyd, Vargas Peracchio, and wright, and Taylor.

119.) AT Corrigan CC. in the SRG unit and Program The Plaintiff is Permitted to practice his faith, display religious symbols and information and study Historical Books freely in accordance with directive policies.

Part 4 - Conditions of Confinement

120.) But Not for defendants Peracchio, Vargas, wright, Boyd, Taylor, Erfe, Cuzio, PaPoosha and Santiago's Wanton and malicious actions and the gross Negligence and deliberate indifference to directive policy and state administrative regulations, directly resulted in the adverse conditions of confinement and injuries that follow:

121.) When the Plaintiff was taken to RHU on 2/27/19 at Cheshire, he was placed in 5cell in East 1 RHU. The cell was covered with chemical agent and bodily fluids on the walls, floor and bunk, Feces and sewer water were dripping from the air vent and ceiling, mold and rust was all around the base of the metal walls, No fire sprinklers were in the cell's and the unit and cells were kept cold.

122.) The Plaintiff informed defendants Taylor, Wright, Vargas, Boyd, Erfe Guadarrama and Papoosha when they toured the unit about the cold, unsanitary and unsafe housing conditions and requested his sweatshirt, sweatpants and/or thermals (permitted by directive) to keep warm, the defendants would not move the plaintiff and denied his request's for warm cloth's.

123.) The Plaintiff began to Cough and get a burning feeling in his chest from the cold and chemical agent, so he wrote medical about his symptoms. The Plaintiff remained in this cell for 19 days under these conditions and was then moved to another cell that had been freshly painted but was still cold, had mold and rust around the base of the walls, sewer water dripping from the vent, had no sprinklers, and continued to be denied cloths to stay warm.

124.) The Plaintiff was issued 14 days segregation time as punitive sanctions for his dr's and was then put on transfer detention remaining in the above mentioned conditions for 23 days until he was transfered out at the direction of then acting warden defendant Guadarrama due to emotional distress and an outburst of anger from the Plaintiff at approx 6:30 to 7AM on 4/5/19 when the defendant toured the unit.

125.) As a result of the Plaintiffs SRG designation he would be a two timer subjecting him to a minimum of 730 days in the SRG Program and unit's that the conditions of confinement are severely restricted, creating an atypical and significant hardship in the ordinary incedents

of prison life and denying him the ability to earn good time (rec)credits. As A Two timer the plaintiff would have to remain dr free for a minimum of 730 days and only then would be considered to return to the general population and after he returned to General population he would be on the blue card special management status for an additional 180 days subjecting him to constant search's and harrassment by Prison Staff.

126.) In walker C.I. the Plaintiff was put in the ticket group for 3 months and phase 2 for 2 months with 3 different cellmates affiliated as crip gang members. The plaintiff was denied all purchased electronics except for a battery operated radio, permitted 3 showers and phone calls per week, 5 hours of outdoor only recreation reguardless of inclimate weather, denied eletric shavers purchased on Commissary and a useable mirror forcing the plaintiff to shave blindly with a poor quality safety razor that injured the plaintiff, he was issued an inadequate mattress that aggravated his degenerative disc disease causing substantial pain and suffering, and the plaintiff had to strip, hand his cloths through the door trap to an officer, lift his testicles, bend at the waist and spread his buttocks for the officer to see his anus every time Before he could leave the cell. The Plaintiff was forced to eat all meals in the cell near a soiled toilet and sink, permitted only limited access to medical and/or mental health treatment, denied collective religious and/or educational opportunities, denied access to legal materials and reduced his law library access to a non-existant level which denied the Plaintiff the ability to research and assist with upcoming trial on state conviction, limited visits to non contact and imediate family only denying visits from maternal grand mother, neices, nephews, aunts and uncles stating they are not immediate family, denied the Plaintiff the ability to have a Job and restricted commissary to $35 per week of limited items only.

127.) When the Plaintiff Progressed to Phase 3 of the program he was housed with a latin King gang member and forced to Jump up to the top bunk because medical refused the Plaintiff a bottom bunk pass and there were no ladders to climb up to the top bunk, the only conditions that improved were that he was permitted to possess all of his electronics, Permitted 6 phone calls per week and permitted 7 hours per week of only outdoor recreation reguardless of weather in walker C.I., the other conditions previously mentioned remained until the Plaintiff was transfered to Corrigan C.C. on 11/26/19.

128.) At Corrigan C.C, was again issued an inadequate mattress aggravating an already painful existing inJury, the Plaintiff was still forced to house with a member of another affiliation, and to eat in the cell near a soiled toilet and sink, permitted limited access to medical and/or mental health treatment, denied the Collective religious and/or educational opportunities, denied access to legal materials and some non-existant level of law library access denying the plaintiff the ability to reesearch and assist on upcoming trial on state conviction. The conditions that improved were 3 phone calls per day, Pat searched everytime before leaving the cell, outdoor recreation twice a week in only good weather or once a week in the gym, he was permitted a Job. The SRG unit in Corrigan provides no access to programs and subjects the Plaintiff to constant punitive lockdowns for isolated incedents that occur within the SRG units and general population and have been more frequent since the corona virus pandemic began. The Plaintiff has now been diagnosed with a mood disorder, borderline personality disorder, institutionalized and Antisocial personality traits and suffers from P.T.S.D/P.T.S.S., Social sensory depravation and tardive dyskinesia.

129.) In General Population the plaintiff was permitted 6 phone calls per day, a minimum of 2 hours of rec per day, outside yard or gym time, Access to a law library and congregate school, programming and religious services, to eat all meals in the dayroom with other inmates, possession

of all electronics, art supplies and publications, he recieved medical and/or mental health treatment daily if needed, he was able to recieve visits from anyone (including friends and non-immediate family) approved on his visiting list and was permitted to purchase $75 per week of Non restricted commissary and $150 of non restricted commissary per week during the christmas holiday, and the plaintiff was permitted an in unit Job and/or the ability to work in one of D.O.C. Industries.

## Part 5 - Head Injury

130.) As a direct result of defendants Peracchio, Vargas, wright, Boyd, Taylor, Erfe, MAGIA, Papoosha and Santiago actions in the unreasonable retalitory search, the improper SRG designation and transfer to the SRG unit in walker C.I. the Plaintiff was deprived of his commissary mirror and 2 electric shavers and the use of a useable mirror in the SRG unit cells in order to shave his head to maintain a proper and clean physical apperence required by directive and unit policies. Plaintiff has been shaving his head due to thinning and patchy hair for over 21 years.

131.) Plaintiff was transfered and housed in cell 76 in the B-2 Walker SRG unit for 3 months in the ticket group and then was moved to cell 50 in the same unit As A phase 2 inmate in the SRG program. The mirror's in these cells were scratched, unmaintained and unuseable. 3 times per week the Plaintiff was permitted the use of a safety razor, each time the Plaintiff requested to use a mirror and was denied by unit officers at the direction of defendants Barone and Stanley.

132.) Defendants Barone and stanley had a policy not to allow eletric shavers to inmates in the ticket group and phase 2 of the SRG program thus forcing the Plaintiff to use the poor quality safety razor without a mirror.

133.) Plaintiff suffered cuts and scrapes causing bleeding, open wounds, and pain each time he would shave because he could not see. Each time the Plaintiff sustained the cuts he requested medical attention, and medical staff refused to treat him due to his housing status in the SRG unit.

134.) Plaintiff requested unit officers to put a work order to change and/or fix the mirrors so they were useable on multiple occasions and the mirrors were never fixed or changed and on 5/16/19 the Plaintiff wrote defendant stanley about his injuries and to change the mirrors.

135.) on 5/21/19 the Plaintiff wrote maintinence requesting mirrors to be changed and recieved no response.

136.) on 6/23/19 the Plaintiff finally saw medical for his injuries But medical staff would not take photo's of them as the Plaintiff requested.

137.) on 6/27/19 the Plaintiff spoke to a maintinence officer about the need to change the mirrors, and he told the Plaintiff he would speak to a supervisor.

138.) on 7/10/19 the Plaintiff wrote a greivance about his injuries caused by the unuseable mirrors.

139.) on 7/14/19 the Plaintiff wrote to defendant stanley requesting the ability to purchase a mirror from commissary and about his injuries.

140.) on 7/15/19 the Plaintiff showed defendant Bafone his injuries and explained how they were caused by the unuseable mirrors and requested the be changed.

141.) on 7/15/19 shortly following speaking to defendant Barone the Plaintiff spoke to Captain Ogando and showed him the injuries caused by the inability to use the mirrors, Captain ogando immediately called maintinence who later came to the unit. maintinence told the Plaintiff that defendant Roach is supposed to make the decision to change the mirrors out and thats what the delay was and that maintinence never had replacement mirrors since the Unit was built.

142.) on 7/16/19 the Plaintiff was called to defendant stanley's office because medical contacted him about the plaintiffs requests and injuries. Defendant Stanley gave the Plaintiff a Commissary mirror to use to prevent further injury.

143.) on 7/21/19 the Plaintiff was called to medical to document the cuts but medical told the Plaintiff they would not photograph them so the Plaintiff could use them in court.

144.) The Plaintiff was denied his electric shavers and mirrors purchased on Commissary, and suffered the constant cuts, Pain and risk of infection for 4 months. The Plaintiff now has permanant scars from the cuts sustained from the defendants Stanley, Barone and Roach to provide a useable mirror to shave. The Plaintiff was not the only one who was denied the use of a mirror and electronics, all inmates in the ticket group and phase 2 are subject to this treatment.

# Part 6 - Back Injury

145.) In may of 2017 the Plaintiff was diagnosed with degenerative disc disease in the L4-L5 and L5-S1 area of the spine, the Plaintiff experience's chronic and substantial pain to his back, hip, knee, leg and into his foot.

146.) Plaintiff was recieving treatment at cheshire in general Population, he was issued a bottom bunk pass, given a brand-new mattress every 6 months, and was sent to Uconn hospital to recieve a Cortizone injection to help alleviate his chronic and substantial pain and suffering.

147.) As a result of the improper SRG designation by defendants Peracchio, Vargas, Boyd, Wright, Taylor, Erfe, Papoosha, Santiago and Magia, the Plaintiff was transfered to the Walker SRG Unit, where he was denied a bottom bunk pass, and issued an inadequate wornout mattress, And Due to his housing status He was provided limited access to medical treatment.

148.) On 4/14/19 The plaintiff was taken to see medical where he requested a bottom bunk pass, a new mattress and to recieve a cortizone shot and was denied.

149.) The Plaintiff requested a new mattress on multiple occasions from defendant Stanley and was denied. The plaintiff was forced to Jump up to the top bunk because the bunks do not have ladders and he was not given a bottom bunk pass.

150.) On 6/6/19 and 7/15/19 the Plaintiff continued to request medical treatment for the chronic and substantial pain he was suffering.

151.) on 7/15/19 The Plaintiff informed defendant Barone of his injuries, about the denial of a bottom bunk pass and denial of an adequate mattress, Defendant Barone told the Plaintiff to write medical.

152.) on 7/16/19 the Plaintiff was issued a brand-new mattress at the direction of defendant stanley, but no bottom bunk pass was issued so the Plaintiff continued to be forced to Jump up and down from the top bunk causing his back and leg extreme Pain.

153.) on 7/21/19 The Plaintiff was seen by medical and was told he would have to speak to the doctor to get a bottom bunk pass which never happened.

154.) on 10-20-19 The Plaintiff fell off of the top bunk and sustained a laceration on his fore head approx. 2 cm Long and back pain. He was taken to medical to dress the wound but continued to be denied a bottom bunk Pass so the plaintiff continued to be forced to Jump up to the top bunk because there were no ladders or safety rails on the bunks to protect the Plaintiff from falling.

155.) on 11/26/19 the Plaintiff was transfered to Corrigan CC, He was issued a bottom bunk pass but issued an inadequate mattress.

156.) Plaintiff requested medical treatment due to continued Back and leg Pain from the inadequate mattress issue to him.

157.) Plaintiff recieved a response from medical on 1/30/20, issuing him tylenol and a topical gel to try for 2 months and it did not alleviate the pain.

158.) Plaintiff wrote several requests to medical about his pain and requested a new mattress and recieved a response stating mattress' are a custody issue.

159.) Plaintiff wrote numerous requests to the unit manager, and defendant Martin about the pain he was suffering due to the inadequate mattress, requesting that he be issued a new one, and the Plaintiff never recieved a response.

160.) on 5/7/20 the Plaintiff wrote a level 1 Greivance that went unresponded to, defendant King failed to provide the reciept that it was recieved and processed.

161.) On 6/7/20 the Plaintiff wrote a level 2 Greivance about his pain from the inadequate mattress that was denied on 6/30/20 by defendant Mulligan.

162.) on 6/24/20 the Plaintiff recieved a response for his level 1 Greivance from defendant Martin, so the Plaintiff immediately filed a level 2 appeal that was denied on 8/14/20 by defendant Mulligan. Both level 1 and 2 remedies stated mattress' were a medical issue not custody.

163.) on 7/20/20 the Plaintiff recieved the results of Xrays taken at Corrigan C.C. which showed degenerative changes but the radiologist did not feel they were significantly worse, reguardless of how significant the changes the Plaintiff still experiences chronic and substantial pain severely affecting his walking, Bending, Breathing, Sleeping, excercize, and further daily activities.

164) The Plaintiff has exhausted all remedies available and Continues to Seek treatment for the Pain and requesting a new mattress from both medical and custody.

165.) IN November of 2020 the Plaintiff was told by Nurse mark that Dr. Fedor approved the plaintiff to have a medical mattress, as of the date filed the plaintiff has not recieved A medical or new mattress and he continues to seek treatment for the pain, he was also told he would return to Uconn hospital for another cortizone shot but that aswell has not happened. The Plaintiff still suffers chronic and substantial back, hip, knee, leg and foot pain that severely affects major life and daily activities.

Part 7 - Mental & Emotional injuries

166.) When Plaintiff was first incarcerated in august of 2013, he did not have depression, mood or any other mental health disorders that required him the need to seek assistance and treatment from a mental health diagnosis.

167.) when Plaintiff was falsely designated as an SRG member in 2013 without any actual showing of SRG AryanBrotherhood involvement, he Spent over 3 months in Bridgeport RHU as a pretrial detainee before being transfered to Corrigan and walker SRG Units.

168.) Plaintiff was harrassed by actual SRG members for not being part of a gang on a daily basis and unit officer's for arguing and resisting the extreme restictions compared to general population.

169.) Plaintiff became a target by Staff, they placed the unsentenced plaintiff in the cell with a Sentenced Violent member of the Aryan Brotherhood from oklahoma. The unit officer's caused conflict between the Plaintiff and his cellmate until the Plaintiff was assaulted suffering facial contusions and a laceration to his lip. The Plaintiff continued to be a target of Numerous false discipline reports that one of the female counselor's she told him she would dismiss if he showed her his privates so the Plaintiff filed a Prea. claim that was ultimately dismissed. The plaintiff endured the harrassment as he eventually progressed through the Phases to complete the program. What should have been 9 months in these restrictive conditions took 2½ years to complete, 2 of which the Plaintiff was a pretrial detainee under the conditions of confinement outlined in part 4 of this complaint.

170.) During this time the Plaintiff Began to seek mental health treatment for Depression, Anxiety and mood issues, he was placed on medication and met with mental health monthly and was improving his mental condition's. He was transferred to Cheshire C.I. general population in march of 2016 where he met with mental health monthly and whenever needed to further improve his mental health.

171.) when the Plaintiff was put in Segregation, improperly re-designated as an SRG member as a two timer and transferred to the SRG program by defendants Peracchio, Vargas, wright, Boyd, Taylor, Erfe, Papoosha, Santiago and magia he began to have flashback of the trauma and harrassment he experienced from staff and other inmates and began to have mental health episodes, Antisocial and institutionalized personality disorder symptoms.

172.) Since being re-designated and progressing through the phases the Plaintiff recieved treatment with a few minor episodes and outbursts.

173.) In Corrigan C.C. the MEntal Health Prescriber diagnosed the Plaintiff with a Borderline Personality disorder in addition to the already diagnosed mood disorder.

174.) The Plaintiff experiences anxiety, depression, repressed rage, outburst's of anger, passive acceptance, helplessness, inability to concentrate, inability to plan beyond the moment, impaired impulse control, dissassociation, avoidance of anything that would trigger a memory of a traumatic event, flashbacks of abuse and moments of intense psycological distress, out of control obsessive thinking, hypervigilance, paranoia, an exaggerated startle response, constant fear, a reduced capacity to trust, memory loss and unmasked tardive dyskinesia.

175.) The Plaintiff developed these symptoms as a coping response for the chronic state of helplessness from the deprevations in the extremely restricted living conditions in SRG and the prolonged exposure to solitary confinement and extremely restricted conditions on social contact and sensory stimulation.

176.) The Plaintiff continues to seek mental health treatment, he was meeting with mental health personell monthy but was now told he would have to meet with mental health in a group setting of 5 or more inmates completely eliminating any confidentiality and trust that would allow the Plaintiff to express his feelings in that group setting.

177.) In preparing for this complaint the Plaintiff requested documents pretaining to his diagnosis', the mood and borderline personality disorder's were listed, the Plaintiff was wrongfully diagnosed with opiate use disorder which was removed by mental health official shirley watson in Walker C.I. in 2019. The corrigan mental health officials re-diagnosed the plaintiff with opiate use disorder as well as alcohol use disorder in 1998, 21 to 22 years prior to even meeting this mental health official he diagnoses Plaintiff with these substance use disorders an lists them as active disorders when the Plaintiff has been incarcerated a little over 7 years without any intoxication or contraband substance use and/or possession disciplinary reports. The Plaintiff believes the mental health official's diagnosed him with these substance use disorders intending to defame his Charachter at any Parole, early release and/or sentence modification hearings, as well as to obtain State and federal funding for substance use programming while he is incarcerated and after his release.

## VI.) Claims for Relief

### Count 1

178.) Defendant Peracchio, acted with wanton Negligence and deliberate indifference to directive policies by retaliating against the Plaintiff for expressing his freedom of speach to his mother. The Defendants action was an exaggerated response to prison concerns and violated the Plaintiffs first amendment under the United States constitution and article first sections 4 and 5 of the Connecticut Constitution and resulted in the tort of negligence.

179.) Defendant Boyd neglected his duty to supervise and enforce directive policy to remedy the retaliation by defendant Peracchio in the issuance of the threats dr that violated the Plaintiffs free speech. Defendant Boyd's actions were wanton and deliberately indifferent to the plaintiffs rights and directive policy, violating the Plaintiffs right to due process under the fourteenth amendment of the united states constitution, Article first section 8 of the Connecticut constitution and resulted in the tort of negligence.

180.) Defendant Vargas, action in the wanton and malicious threat to conduct a calculated harrassment search unrelated to prison concerns. The defendant was deliberately indifferent in the wanton disreguard to directive policy in the threat and in conducting the retalitory search. The defendant violated the Plaintiffs rights to be free from unreasonable search and seizures, due process and equal protection of the law under the Fourth and fourteenth amendments of the united states constitution and article first sections 7, 8, and 20 of the Connecticut Constitution, and constitutes the tort of intentional infliction of emotional distress.

181.) Defendant Boyd, Taylor and Erfe had a duty to supervize defendant Vargas and neglected that duty when defendant Vargas conducted his search without authorization, in retaliation against the Plaintiff, of property he was not permitted to possess by directive policy. These defendants further wanton and deliberate indifference to the Plaintiffs rights and directive policy by authorizing the contraband dr for the retalitory search denied the Plaintiffs right to be free from unreasonable search and seizures and due process under the Fourth and fourteenth amendments of the United States Constitution, Article first section's 7 and 8 of the Connecticut constitution and resulted in the tort of negligence.

182.) Defendant Peracchio was wanton and deliberately indifferent by issuing a discipline report without any actual evidence of a threat to the safety and security of the Prison and insufficient information denying the Plaintiff the ability to prepare and present a proper defense at a hearing violated the Plaintiffs right to Due process under the fourteenth amendment of the United States Constitution and article first section 8 of the Connecticut Constitution.

183.) Defendant Wright has a duty to show any/all evidence at minimum 24 hours prior to a hearing to allow the Plaintiff to prepare and present a proper defense and to have the evidence and witness' present at the hearing to allow the Plaintiff to present a defense, witness' and rebutt the evidence against him. Defendant Wright Neglected this duty and violated the Plaintiffs Right to due process under the fourteenth amendment of the United States constitution, article first section 8 of the Connecticut Constitution and constitutes the tort of Negligence.

184.) Defendant Cuzio has a duty to conduct fair and impartial discipline hearings and base his decision on evidence and witness' present at the hearing and to issue a detailed report on his reason for the decision. Defendant Cuzio Neglected that duty with wanton and deliberate indifference to the Plaintiffs rights and directive policies by conducting the disciplinary hearings without the reporting officer's, witness' and evidence present, basing his decision on a partial officers perception, not his own, not on witness' or evidence present and with pressure and outside influence from other Prison authorities and in issuing the Plaintiff an inadequate report of Defendant Cuzio's reason for the findings. The Defendants actions violated the plaintiffs right to due process under the fourteenth amendment of the United States constitution and Article first section 8 of the Connecticut Constitution and constitutes the tort of negligence.

185.) Defendant Cuzio was wanton and deliberately indifferent to directive policy by threatening and intimidating the Plaintiff into pleading guilty to a dr in order to avoid enhanced sanctions and loss of privileges. The defendant's actions denied the plaintiffs right to due process violating the Plaintiffs right under the fourteenth amendment of the United States Constitution and article first section 8 of the Connecticut Constitution.

186.) Defendant Peracchio was wanton and malicious when he issued a second discipline report for the same search he conducted with defendant Vargas, retaliating against the Plaintiff for taking dr's to hearings and asking for the defendants to be witness'. The defendant was further wanton and deliberately indifferent to directive policy by failing to issue the dr within the 24 hours upon discovery of the plaintiffs alleged misconduct; the search was conducted on 3/4/19 and the dr was issued on 3/11/19, and that the defendant issued a second dr when only 1 dr can be issued arising from the same act (the search). Defendant Peracchio's actions violated the Plaintiffs Right to be free from unreasonable search and seizures and due process under the Fourth and fourteenth amendments of the United States Constitution, article 7 and 8 of the Connecticut Constitution and constitutes the intentional infliction of emotional distress tort.

187.) Defendant Boyd acted with wanton negligence and deliberate indifference to directive policy and the Plaintiffs right to freely exercize his ASATRU faith when he instructed the Plaintiff to remove his Thor's Hammer and Celtic Cross without a reasonable safety and/or security reason showing a threat to the plaintiff or others or the facility, and without approval from a higher official or religious director present to authorize the removal of

religious articles and to ensure the are respectfully and properly secured, prior to the Plaintiff's RHU Placement. Defendant Boyd's actions were wanton an malicous in the depravation of Plaintiffs religious articles used in the free exercize of his ASATRU Faith and created an a-typical and significant hardship on Plaintiff's religious practice. Defendant Boyd showed gross negligence and deliberate indifference to directive policy and the Plaintiffs first amendment right under the united states Constitution, Article First section 3 and article seventh of the Connecticut Constitution and constitutes the tort of negligence.

188.) Defendant Taylor and Erfe's wanton and malicious actions in the deliberate indifference to the Plaintiff's request's for documents, mailing labels, literature and reciepts of history and religious publications and religious articles, permitted into the facility, to use as evidence in defense of defendant Peracchio's SRG dr, By ignoring Plaintiffs written and oral requests for these Items that proved all the evidence alleged was permitted by prison officials for the Plaintiff to posess. Defendant Taylor and ERFE's actions showed gross negligence and deliberate indifference to the Plaintiffs rights to free speech and due process under the first and fourteenth amendments of the united states constitution, article first section's 3, 4, and 8 of the Connecticut constitution and constituted the tort of negligence.

189.) Defendant Papoosha's wanton and malicious actions in the depravation of the Practice of Plaintiffs ASATRU faith because he attended congregate catholic services were deliberately indifferent to the Plaintiffs free exercize under the first amendment of the united states Constitution and article first section 3 and article seventh of the Connecticut Constitution and constitutes the intentional infliction

of emotional distress tort.

190.) Defendant Papoosha's wanton and malicious actions in denying to recognize the Plaintiffs ASATRU faith, and tell the plaintiff he may only practice one of the religions the D.O.C. recognizes with the intent to advance recognized religions and inhibit the Plaintiffs faith fosters excessive Government entanglement with recognized religions violating the establishment clause of the first amendment of the united states constitution.

191.) Defendants Papoosha, Santiago, magia, Cuzio and Erfe wanton and malicious negligence and deliberate indifference to the Plaintiffs safety by improperly designating him as an SRG member based on his ASATRU faith, knowingly and willingly placed the Plaintiff in a unit and in the cell with actual GanG members places the plaintiffs first, eighth, and fourteenth amendments of the united states constitution and article first sections 3, 8, 9 and 20 of the Connecticut constitution.

192.) Defendant Papoosha, Santiago, magia, Cuzio and Erfe acted with wanton and deliberate indifference in the negligent decision to designate the Plaintiff as an SRG member prior to any formal hearing violated the Plaintiffs right to due process under the fourteenth amendment of the United States Constitution and article first section 8 of the Connecticut Constitution.

193.) Defendants Papoosha, Boyd, Vargas, Peracchio, Taylor and Erfe's wanton and malicious confiscation and use of Plaintiffs approved ASATRU Religious materials to designate the Plaintiff as an SRG member based on race and previous designation denied the Plaintiff equal protection of the law under

the fourteenth amendment of the united states Constitution and article first section 20 of the Connecticut Constitution.

194.) Defendants Peracchio, Vargas, Boyd, Taylor, Erfe and Papoosha acted with wanton and Deliberate indifference to directive and state administrative regulation policies by Confiscating and issueing a discipline report for publications and materials that were obtained in accordance with D.O.C. Policies violated the plaintiffs right to due process under the fourteenth amendment right of the united states constitution and article first section 8 of the Connecticut constitution.

195.) Defendant's Erfe and Guadarrama have a duty to supervise subordonite prison officials, protect the plaintiffs rights and remedy any wrongs committed by his subordonites against the plaintiff, and to ensure protection of procedural due process, to ensure adequate evidence management to afford the plaintiff a fair and impartial hearing. The defendants Neglected that duty denying the plaintiffs right to due process under the fourteenth amendment of the united states constitution and article first section 8 of the connecticut constitution and constitutes the tort of Negligence.

196.) Defendants wright and Cozio's actions were wanton and malicious in the deliberate indifference to the plaintiffs Ability to introduce and/or submit documentary evidence, failing to show the submission would be unduly hazardous to institutional safety violating the plaintiffs right to due process under the fourteenth amendment of the united states constitution and Article first section 8 of the connecticut constitution.

197.) Defendants wright, cuzio, Vargas, Peracchio, Boyd, Taylor and Papoosha, acted with wanton, negligent and malicious intent in neglecting their duty to ensure adequate and accurate management of evidence that must be accessable to the plaintiff for purposes of demonstrating he was not guilty. The defendant's deliberate indifference to the plaintiffs right to due process violated the fourteenth amendment of the united states Constitution, article first section 8 of the Connecticut Constitution and constitutes the torts of negligence and the intentional infliction of emotional distress.

198.) Defendants Peracchio, wright, Boyd, Taylor, Erfe, cuzio, Papoosha, Santiago, and Magia acted with wanton and malicious deliberate indifference to administrative policies and plaintiffs rights because there was no evidence of plaintiff knowledge of or intent to commit an infaction or participate in any SRG violating the plaintiffs free excersize of his religion and due process under the first and fourteenth amendments of the united states constitution and article first section's 3, and 8 of the connecticut Constitution.

199.) Defendant cuzio negligent, wanton and deliberate indifference in the failure to establish the reliability of the evidence at the hearing, showing bias by failing to see any supporting evidence and basing his conviction, of the plaintiff as an SRG member, on heresay evidence of influencing officers, by denying the plaintiff A continuance of the hearing and an alternative and impartial hearing officer violated the plaintiffs right to due process under the fourteenth amendment of the united states Constitution and Article first section 8 of the connecticut constitution.

200.) Defendant Cuzio neglected his duty and showed wanton and deliberate indifference to directive policy by failing to provide the plaintiff the specific evidence, current activity and/or reason relied upon for his dr conviction violated the plaintiffs right to due process under the fourteenth amendment of the united states constitution and article first section 8 of the connecticut constitution and constitutes the tort of negligence.

201.) Defendants Wright, Boyd, Taylor, Erfe, Papoosha, Santiago, Magia, and Guadarrama acted with wanton and deliberate indifference to the plaintiffs health and wellbeing by their failure to follow directive policy and transfer the plaintiff within the 72 hours keeping him confined in cheshire RHU for 23 days without punitive sanctions or the plaintiff posing a threat to the safety and security. The Defendants wanton and malicious intent to inflict the intentional infliction of emotional distress tort and violating the plaintiffs right to be free from cruel and unusual punishment under the 8th amendment of the united states constitution and article first section 9 of the connecticut constitution.

202.) Defendant's Peracchio, Vargas, Wright, Boyd, Taylor, Guadarrama, Erfe, Cuzio, Papoosha, Santiago and Magia were wanton and deliberately indifferent to the plaintiffs liberty interest in avoiding a misconduct conviction that would result in re-classification, transfer, placement in SRG segregatet special management unit and denial of earning good time rrec.

203.) Defendants Erfe and Mulligan have a duty to follow and enforce directive policies and neglected that duty when the acted with wanton and deliberate indifference to process integrity by supervising and participating in

the investigation and designation of the Plaintiff as an SRG member and then participating in the resolution of Plaintiffs administrative appeal then failing to conduct an impartial investigation adequately of Plaintiffs appeal denying the Plaintiffs right to due process under the fourteenth amendment of the United States Constitution and article first section 8 of the Connecticut Constitution.

204.) Defendant's Peracchio, Vargas, Boyd, Erfe and Papoosha were wanton and malicious in the confiscation of religious, historical and legal literature, which was authorized by directive and mail room policies, and not involved in any disciplinary proceeding without showing evidence that materials posed a threat to safety and security. The Defendants actions created an A-typical and significant hardship that substantially burdened the Plaintiffs liberty interest in the Plaintiffs free exercize of his ASATRU faith violating the Plaintiffs first, fourth, eighth and fourteenth amendments of the united states Constitution and Article first section's 3, 4, 5, 7, 8, 9 and 20 of the connecticut constitution.

205.) Defendants Peracchio, Vargas, Wright, Boyd, Taylor, Erfe and Papoosha were wanton, negligent and deliberately indifferent in denying the Plaintiff written notification of what Property is confiscated and denied the Plaintiff the opportunity to mail the property home, donate it, and/or discard it, violating the Plaintiffs right to due process under the fourteenth amendment of the United states Constitution and article first section 8 of the Connecticut Constitution.

206.) Defendant's Peracchio, Vargas, Boyd, Erfe and Papoosha were wanton, malicious and deliberately indifferent to the Plaintiffs right and liberty intrest in the possession of property By Committing the tort of Conversion by using approved publications and religious items to designate him Violating plaintiffs right to due process and to be free from cruel and unusual Punishment under the Eighth and fourteenth amendments of the United States Constitution and Article first Sections 3, 8, 9 and 11 of the Connecticut Constitution.

207.) Defendant's Peracchio, Vargas, Boyd, Taylor, wright, cuzio, Erfe, mulligan, Papoosha, mugia and Santiago were wanton, malicious and deliberately indifferent to the Plaintiffs health and safety by the improper SRG designation, Transfer and placement in a segregated and extremely restricted conditions of Confinement causing psycological injury for fear of harm absent physical injury Violated the Plaintiffs eighth and fourteenth amendment rights under the united states Constitution and article first section's 8 and 9 of the connecticut Constitution, and Constituted the intentional infliction of emotional Distress Tort.

208.) Defendants Taylor, wright, Vargas, Boyd, Erfe and Guadarrama have a duty to protect the Plaintiffs health and Safety, the defendants Knowingly neglected that duty by housing the Plaintiff in cheshire RHU for 37 days in unsafe and unsanitary conditions violating the Plaintiffs right to be free from cruel and unusual punishment under the eighth amendment of the United states Constitution and article first section 9 of the Connecticut Constitution.

Count 2

209.) Defendant STanley has a duty to protect the Plaintiff From risk of harm, and neglected that duty by housing the Plaintiff in a cell with SRG members of opposite affiliations, all of which were involved in SRG related altercation's in the SRG units, placing the Plaintiffs life and safety at risk violating the plaintiffs right to be free from cruel an unusual punishment from the psycological injury for fear of harm absent physical injury under the eighth amendment of the united states Constitution and article first section 9 of the Connecticut Constitution.

210.) Defendant's stanley and Barone instituted their own Policy to deny the Plaintiff his purchased property and in, certain items are restricted to purchase and/or possess violating the plaintiffs liberty interest and Causing physical injury in the denial to use purchased electric razors and a Useable mirror to shave with poor quality safety razor was cruel and unusual Punishment under the eighth amendment of the united states Constitution and article first section 9 of the connecticut constitution.

211.) Defendants PaPoosha, Barone and STanley were wanton and malicious in creating and instituting a Strip Search Policy that Humiliates and causes the intentional infliction of emotional distress tort and Violates the Plaintiffs Right to be free from cruel and unusual punishment under the eighth amendment of the United States Constitution and article first Section 9 of the Connecticut Constitution.

212.) Defendants Barone, Roach and Stanley have a duty to protect the Plaintiffs Safety and maintain housing fixtures to ensure safe housing Conditions and neglected that duty by failing to fix and/or replace the mirrors attached to the wall in the cells and/or issue a mirror to use when Using State issued Safety razors failed to protect the Plaintiff from risk of Harm, The Plaintiff suffered Pain and discomfort, fear of infectious disease due to open wounds and unsanitary conditions, and Permanent Scar's and marring to the Plaintiffs head violating the Plaintiffs right to be free from cruel and unusual punishment under the eighth amendment of the United States Constitution and article first section 9 of the connecticut Constitution.

213.) Defendant Barone has a duty to provide Adequate and Qualified medical staff, available when an injury occurs, Defendant Barone neglected that duty when Plaintiff requested medical attention when he suffered cuts and scrapes from shaving without a mirror and medical Staff denied to see the Plaintiff at that time of injury, and when Plaintiff was called to medical the staff would not Photograph and document the actual injury. When Plaintiff spoke to Defendant Barone, the defendant told the plaintiff to write medical and that they wont take pictures of the injuries incase of a lawsuit (plausable deniability). The defendants wanton and deliberate indifference to the Plaintiffs injuries and failure to provide adequate and Qualified medical officials violated the Plaintiffs right to be free from cruel and unusual punishment under the eighth amendment of the united States Constitution and Article first section 9 of the Connecticut Constitution.

214.) Defendant Stanley had full knowledge of the Plaintiffs serious medical need and chronic and substantial pain from the inadequate mattress' provided in the SRG unit; The defendant was wanton and deliberately indifferent for over 3 months and failed to Protect the Plaintiff from harm until the plaintiff began the remedy process to initiate court proceedings. The defendant failed to protect the Plaintiff from further deterioration and degeneration of his pre existing serious medical needs, causing extreme pain and discomfort affecting the Plaintiffs daily activities violating the Plaintiffs right to be free from cruel and unusual punishment under the eighth amendment of the united States Constitution and article first section 9 of the Connecticut Constitution.

215.) Defendant's Barone and Stanley have a duty to provide safe and adequate housing conditions to Protect the Plaintiffs Safety. The defendants neglected that duty when the Plaintiff was not issued a bottom bunk pass he requires for his preexisting injury and forcing him in the cell with another inmate to sleep on the upper Bunk which has no ladder to get up or down from and No safety rail to stop the Plaintiff from rolling and/or falling from the top bunk. The Defendants failed to protect the Plaintiff when he fell from the Top bunk causing a laceration to his head, headaches and leaving a permanent scar on his forehead. The Defendants tour these units on a weekly/Daily Basis and are fully aware of the housing conditions and the Plaintiff made the defendants fully aware of his preexisting condition and difficulties with being on the upper bunk, The defendants were wanton and deliberately indifferent to the Plaintiffs serious medical need and the risk to his health and safety and failed to protect the Plaintiff violating his right to be free from cruel and unusual punishment under the eighth amendment of the united States Constitution and Article first section 9 of the Connecticut Constitution.

Count 3

216.) Defendant Martin has a duty to protect the health and safety of inmates Corrigan C.C., defendant Martin neglected this duty in his deliberate indifference to the Plaintiffs multiple request's for an adequate mattress to alleviate the chronic pain and suffering from Plaintiff pre-existing serious medical needs and further failed to protect the plaintiff from further injury to his pre existing condition by denying the Plaintiffs greivances about the inadequate mattress', stating they are a medical issue. The defendant's wanton negligence and deliberate indifference caused the plaintiff to suffer pain and discomfort affecting his walking, breathing, sleeping, bending, moving and other daily activities violating the Plaintiffs right to be free from cruel and unusual punishment under the eighth amendment of the united states constitution and article first section 9 of the Connecticut Constitution.

217.) Defendant Martin has a duty to provide adequate and qualified medical staff available to provide treatment to his serious medical needs when the plaintiff cannot move or breath properly and unit officers call medical they say to write a request and they will see you in a week to two weeks. The Plaintiff writes medical about a mattress and they state it is a custody issue then a couple months later approve him for a medical mattress that a couple months after that he still has not seen. the Plaintiff writes medical reguarding the mattress and gets called to get his blood pressure checked. Defendant martins neglect of duty to provide adequate and qualified medical staff falling below the standard of care causing the Plaintiff chronic and substantial pain affecting his daily

activities in the ordinary incedents of prison life, violating the plaintiffs right to be free from cruel and unusual punishment under the eighth amendment of the united states constitution, and article first section 9 of the Connecticut Constitution and Constitutes the tort of negligence.

218.) Defendant King has a duty to process administrative remedies within the time frames by directive Policy to afford the plaintiff his due process rights, defendant King has neglected that duty in her deliberate indifference to the time frames set forth by directive Policy violating the Plaintiffs Right to due process under the fourteenth amendment of the united states constitution, article first section 8 of the connecticut constitution and constitutes the tort of negligence.

219.) Defendant's mulligan and Rodriguez Have a Duty to follow and enforce directive policies and to ensure these policies were excersized in the proper manner, within the required time frames, to ensure due process protections of administrative remedies and the defendants are to conduct investigations into any misconduct or denial of due process of prison officials and be impartial decision makers in level 2 Administrative remedies. The Defendants neglected this duty by failing to conduct independant investigation, and basing their decision on prior Staff's remedy decision failing to be an impartial decision maker and violating the Plaintiffs right to due process under the fourteenth amendment of the united states Constitution and article first section 8 of the connecticut Constitution.

220.) Defendant Quiros has a duty to respect and protect the rights, health and safety of inmates and to remedy any violations of rights and directive policies violated by Prison officials to ensure protection of inmates and proper due process protections in level 3 remedies, by conducting independant and adequate investigations in order to be an able and impartial decision maker of these remedies. Defendant Quiros is responsable for the directive policies and the conditions of confinement in reguards to the SRG program described in this complaint because the defendant assisted in making and instituting these policies in 2013 and he has been subject of many lawsuits reguarding the SRG program and units. Defendant Quiros is now Commissioner responsable to oversee all programs in DOC and he has the power to remedy these policies and conditions and fails to do so. The Plaintiff wrote a long and detailed letter mailing it directly to the defendant reguarding these issues and the Defendant has failed to respond. Defendant Quiros's actions were wanton, negligent and deliberately indifferent to the Plaintiffs safety and wellbeing and violated the Plaintiffs first, fourth, eighth and fourteenth amendments of the United States constitution, article first sections 3, 4, 5, 7, 8, 9 and 20 of the Connecticut Constitution and constitutes the tort of negligence.

221.) Defendant Papoosha and Santiago are required to conduct meaningfull periodic reviews, to show why the Plaintiffs continued confinement in SRG is neccessary, to show what if any reasons why the Plaintiff is responsable for the length of confinement in the SRG unit, to show how the Plaintiff is a continued threat to safety and security, to show the reasons why the Plaintiff SRG Placement existed and/or why the Plaintiff should not be released back into general population. The Plaintiff while in Cheshire C.F. was never involved in ANY violence or SRG acts prior to and in his SRG status,

that would show he posed a threat to the Safety and Security of the inmate population. Defendant Papoosha and Santiago's reviews are supposed to reflect recent Discipline reports taken into account for their decisions, All the Plaintiffs reviews show no discipline reports while the Plaintiff was in SRG but the Plaintiff did recieve 1 class b discipline report that the defendants failed to show on the reviews. The Defendants fail to show any actual SRG activity and/or involvement of the Plaintiffs independantly and/or in a group related to SRG, the reviews further fail to show any reason why the plaintiff should not be released due to his inactivity and posing no threat to safety and security. The Defendants reviews are made up of ready made language with only the name of the inmate, address(if) different and if they want to show any Discipline reports, No individual Reviews and reports of inmates in SRG. The Defendants are to conduct reviews at 6 month intervals, The Plaintiff has recieved no notice of these reviews and is not given a chance to be heard. The reviews are often more than 6 months apart when the Plaintiff recieves them approx. 8 months apart, but the reviews are backdated by the defendants to within the 6 months, and when the Plaintiff does recieve a review he is denied the ability to appeal it. Defendant's Papoosha and Santiago Solely rely on directive policy that a two timer, some one who completed the program previously and gets redesignated such as the Plaintiff, must remain in SRG for a minimum of 730 days DR Free followed by a 6 month special monitoring period essentially making it a 2½ year period of harsh conditions and officer harrassment, it is not based on the Plaintiffs actions. Defendants Papoosha and Santiago were wanton and malicious in denying the Plaintiffs liberty interest in his length of Confinement in SRG, and were further negligent and deliberately indifferent to the plaintiffs first, fourth, eighth, and fourteenth amendments under the united states constitution, article first sections 3,4,5,7,8,9 and 20 of the Connecticut Constitution, and constituted the torts of Negligence and the intentional infliction of emotional Distress.

222.) The Plaintiff re-affirms and alleges paragraphs 1 through 221.

Request for Relief

Wherefore the Plaintiff respectfully requests that this court grant the following relief:

1.) A Declaration that the defendants violated the Plaintiffs Constitutional rights, and

2.) A Declaration that the defendants denied the establishment and exercise of the Plaintiffs ASATRU Faith, and

3.) Issue an injunction requiring the defendants to arrange to recieve medical treatment and physical therapy for his injuries and access to a qualified Doctor outside of the facility to treat his injuries as needed, and

4.) Issue an injunction ordering the defendants to issue the Plaintiff A new And/or medical mattress every 6 months, and

5.) Issue an injunction ordering the defendants to issue the Plaintiff a permanant Bottom bunk pass, and place the plaintiff on Single cell status with a choice to have a cellmate, and

6.) Issue an injunction ordering the defendants to remove Plaintiff from SRG and place him back in general population with the restoration of all privileges, and

7.) Issue an injunction ordering the defendants to remove all SRG Designation And/or affiliation information from the Plaintiffs master file and/or Seal this information so officials cannot use it to re-affiliate, Retaliate, harrass, etc. against the Plaintiff, and

8.) Issue an injunction ordering defendants to video and AUDIO record all disciplinary and SRG hearings, as well as any interactions with the security division officials and facility intel unit officials and inmates reguarding anything related to SRG, to ensure proper due process, and

9.) Issue an injunction ordering defendants to arrange for Plaintiff to recieve proper mental health diagnosis' and treatment by qualified mental health officials as needed, and

10.) Issue an injunction ordering the defendants to permit Plaintiff to Possess all electronics, (Ie. TV, Shavers, CD player, adapter, etc.), reguardless of Phase, housing assignment and/or location, and

11.) Issue an injunction ordering the defendants to permit the Plaintiff to order Commissary, electronics and art supplies from outside Vendors, and

12.) Issue an injunction ordering the defendants to recognize the Plaintiffs ASATRU FAITH, TO PERMIT Groups for religious education, and practices indoors and outside, for all inmate members in Connecticut D.O.C, as was done with the 5percenters group the nations of Gods and earth, and

13.) Award Compensatory damages against all defendants Jointly and Severally in the amount of $350.00 per day the Plaintiff is confined in SRG and subject to special monitoring status related to the SRG program,

14.) Award Punitive damages against all defendants Jointly and Severally in the amount of $233,500.00,

15.) Plaintiffs costs in this case,

16.) Any other relief the court deems Just and proper

Respectfully submitted on 1-1-2021

By, [signature]
Richard Nau
Corrigan-Radgowski CC,
986 Norwich-New London tpke.
Uncasville, CT. 06382

[signature] 12-30-2020
Notary Date

NOTARY PUBLIC
MICHAEL T. LYLE
My Commission Expires 10/31/2023

# Declaration

I the Plaintiff, Richard Nau, swear that the facts stated in this complaint are true to his knowledge, and the facts stated on information and belief are true to the best of his knowledge and belief.

# VERIFIcation

Pursuant to 28 U.S.C. 1746, I Richard Nau, verify under the penalty of perjury that the forgoing complaint is true and correct.

Submitted on this 1st day of January, 2021

Respectfully,

Richard Nau
986 Norwich-Newlondon Tpke.
Uncasville, CT. 06382

Notary 12-30-2020
Date

NOTARY PUBLIC
MICHAEL T. LYLE
My Commission Expires 10/31/2023