## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
RICHARD NAU                   :    Civil No. 3:21CV00019(SALM)
                              :
v.                            :
                              :
DANIEL PAPOOSHA, SCOTT ERFE,  :    January 6, 2023
ANTONIO SANTIAGO, DAVE MAGIA, :
WILLIAM MULLIGAN, DONALD      :
BOYD, C.O. PERACCHIO, C.O.    :
VARGAS, C.O. WRIGHT,          :
R. TAYLOR, G. CUZIO, and      :
GUADARRANIA                   :
                              :
------------------------------X
```

**ORDER ON [DOC. #122] PLAINTIFF'S MOTION TO COMPEL**

Self-represented plaintiff Richard Nau, a sentenced inmate at Corrigan-Radgowski Correctional Center ("Corrigan"),[1] brings this action relating to events occurring during his incarceration in the custody of the Connecticut Department of Correction ("DOC").

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Nau entered DOC custody on August 12, 2013, and was sentenced on December 2, 2015, to a term of imprisonment that has not expired, and that he is held at Corrigan Correctional Center. See Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=398573 (last visited December 20, 2022).

Plaintiff has filed a Motion to Compel Discovery, see Doc. #122, to which defendants have filed a memorandum in opposition. See Doc. #127. For the reasons set forth herein, plaintiff's Motion to Compel [**Doc. #122**] is **GRANTED, in part, and DENIED, in part.**

## I.   Background

Plaintiff brought this action on January 4, 2021. See Doc. #1. The Court issued an Initial Review Order ("IRO") of plaintiff's original Complaint on May 13, 2021. See Doc. #11. The Court permitted plaintiff's original Complaint to proceed to service of process on multiple claims against multiple defendants. See generally id.

Plaintiff filed an Amended Complaint on August 19, 2021. See Doc. #37. On November 22, 2021, the Court issued an IRO of plaintiff's Amended Complaint. See Doc. #52. The Court's IRO permitted plaintiff's Amended Complaint to proceed on multiple claims against multiple defendants. See id. at 21-22.

On January 25, 2022, the parties filed a Joint Motion for Extension of Time, seeking to "extend the discovery deadline in this matter from February 9, 2022, until March 30, 2022," Doc. #80 at 6 (emphases omitted), in order to "hopefully resolve any discovery disputes" and to permit the defendants to depose plaintiff. Id. at 5.

The Court granted the parties' motion, in part:

The parties jointly seek an extension of the discovery deadline to March 30, 2022, to "hopefully resolve any discovery disputes" and to permit the defendants to depose the plaintiff. Doc. #80 at 5. The motion is GRANTED, for those purposes. **No new or additional written discovery requests may be served or propounded during this extended discovery period.**

All discovery shall be completed by **March 30, 2022**.

Doc. #82.

On January 25, 2022, plaintiff filed a motion requesting "to take depositions of defendants and others listed in his initial discovery request[.]" Doc. #81 at 1.

The Court denied plaintiff's motion, without prejudice, on January 28, 2022:

Plaintiff has filed a motion that he contends is his "second motion requesting depositions" of the defendants. Doc. #81. The Court has reviewed the docket and has not located any prior motion for depositions. The instant motion does not provide sufficient information to permit the Court to act. ....
If plaintiff wishes to conduct depositions of particular defendants, he may file a renewed motion stating:
(1) the name of each person whose deposition he seeks to take;
(2) what discoverable, relevant evidence he seeks in each deposition;
(3) the name and contact information of the officer before whom the depositions would be taken;
(4) the name and contact information of the person who would record the depositions; and
(5) that he has sufficient funds available to arrange for an officer and a recorder. ...

Any such renewed motion must be filed on or before **February 11, 2022**.

Plaintiff is advised that the Court is not authorized to pay the costs of a deposition, even for an indigent plaintiff. ...

~ 3 ~

> The Court notes that discovery has been extended to March 30, 2022, for two discrete purposes: "to 'hopefully resolve any discovery disputes' and to permit the defendants to depose the plaintiff." Doc. #82. The Court will therefore consider any motion by plaintiff to take depositions as also seeking to reopen discovery for that purpose.

Doc. #85.

On February 2, 2022, plaintiff filed a motion seeking to "reopen discovery for purposes of serving interrogatories and requests for admissions upon Defendants[.]" Doc. #86 at 1.

On February 22, 2022, the Court granted plaintiff's motion, in part:

> On or before **March 14, 2022**, plaintiff may serve up to **a total** of 25 interrogatories **or** requests for admission on specific defendants. Plaintiff may decide how to use such requests. ... The only limitation set by the Court as to quantity is that the total number of requests (which may be either requests for admissions or interrogatories) may not exceed 25. Each request must be directed to a specific defendant.

Doc. #94.

On March 10, 2022, plaintiff issued interrogatories directed to defendants Erfe, Peracchio, Papoosha, Cuzio, Maiga,[2] and Wright. See Doc. #122 at 2. Defendants Erfe, Peracchio, Papoosha, Cuzio, and Maiga responded to the interrogatories on April 11, 2022. See id. When plaintiff issued these

---

[2] The Court notes that plaintiff spells this defendant's last name "Magia" while defendants spell the name "Maiga". The Court uses the spelling Maiga.

interrogatories, counsel had not yet appeared on behalf of
Wright, and thus "[n]o responses were provided on behalf of
defendant Wright" with the other responses, on April 11, 2022.
Doc. #127 at 2 n.2. "Wright has [since] appeared and has
provided responses to the plaintiff's interrogatories directed
to him." Id.

On April 18, 2022, plaintiff filed a motion for extension
of time "to file a response to the defendants objections to the
plaintiffs interrogatories he received on 4-14-22[.]" Doc. #102
at 1 (sic). The Court granted plaintiff's motion, in part, on
April 26, 2022:

> It appears that plaintiff's motion concerns the filing
> of a potential motion to compel relating to these
> interrogatories.
>
> On or before **May 17, 2022,** plaintiff and counsel for
> defendants shall meet and confer by telephone or
> videoconference to attempt to resolve any disputes
> relating to the discovery responses and objections
> plaintiff received on April 14, 2022. See Doc. #102. ...
> If the parties remain unable to resolve their discovery
> disputes after they meet and confer, plaintiff may file
> a motion to compel relating exclusively to this set of
> interrogatories on or before **May 30, 2022. No extensions
> of this deadline will be granted.**
>
> Plaintiff is reminded that any motion to compel must
> comply fully with the Local and Federal Rules. ...
> **Plaintiff is advised that any motion to compel may be
> summarily denied if it is not timely filed, or if it
> does not comply with the Federal and Local Rules, and
> with the Court's Orders.**

Doc. #106.

On June 1, 2022, plaintiff filed the instant motion to

compel seeking additional responses to the interrogatories he served on defendants Erfe, Peracchio, Papoosha, Cuzio, and Maiga. See Doc. #122.

## II.  Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of permissible discovery is broad." Croom v. W. Conn. State Univ., No. 3:00CV01805(PCD), 2002 WL 32503667, at *1 (D. Conn. Mar. 20, 2002). "[T]he burden of demonstrating relevance remains on the party seeking discovery." Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016) (citation and quotation marks omitted), as amended (June 15, 2016); see also Republic of Turkey v. Christie's, Inc., 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (same). A "threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Marchello v. Chase

Manhattan Auto Fin. Corp., 219 F.R.D. 217, 218 (D. Conn. 2004)
(citation and quotation marks omitted); see also Wilson v.
Cheng, No. 15CV00023(CBA)(MMH), 2022 WL 985823, at *7 (E.D.N.Y.
Mar. 31, 2022) ("The party seeking discovery must make a prima
facie showing that the discovery sought is more than merely a
fishing expedition." (citation and quotation marks omitted)).

Once the party seeking discovery has demonstrated
relevance, the burden then shifts to "[t]he party resisting
discovery" to show "why discovery should be denied." Cole v.
Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn.
2009).

The Court notes that it exercises particular caution when
it addresses cases involving self-represented litigants, and is
cognizant of the limitations necessarily imposed on incarcerated
litigants. "Though a court need not act as an advocate for pro
se litigants, in pro se cases there is a greater burden and a
correlative greater responsibility upon the district court to
insure ... that justice is done." Davis v. Kelly, 160 F.3d 917,
922 (2d Cir. 1998) (citation and quotation marks omitted).

## III. Discussion

Plaintiff seeks to compel further responses to the
interrogatories that he served on defendants (A) Erfe, (B)
Peracchio, (C) Papoosha, (D) Cuzio, and (E) Maiga.

## A.   Erfe

Plaintiff objects to each of the five interrogatory responses by defendant Erfe.

### i.   Interrogatory #1

Interrogatory #1 requests Erfe to indicate how certain items were identified as "Aryan Brotherhood identifiers, the name and title of the individual who approved them to be identifiers and the date in which they were approved as identifiers[.]" Doc. #122 at 6. After setting forth a number of objections to this interrogatory, Erfe responds that he has "no involvement in the SRG designation process or determining SRG identifiers, as this is done through the DOC Security Division and DOC's SRG Coordinator." Id. at 7.

While a party is not required "to provide information that is unknown and unknowable to that party[] ... a party is under a duty to make a reasonable inquiry concerning the information sought in interrogatories[.]" Zanowic v. Reno, No. 97CV05292(JGK)(HBP), 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000); see also In re Auction Houses Antitrust Litig., 196 F.R.D. 444, 445 (S.D.N.Y. 2000) (holding that a party "is obliged to respond to the interrogatories not only by providing the information it has, but also the information within its control or otherwise obtainable by it[]"); Richard v. Dignean, 332 F.R.D. 450, 459 (W.D.N.Y. 2019) (requiring the responding

party to "make an inquiry and obtain information to answer the interrogatories" (citation and quotation marks omitted)).

A party's "failure to describe his efforts to obtain the information sought by plaintiff[] renders his responses insufficient." Braham v. Perelmuter, No. 3:15CV01094(JCH)(SALM), 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016) (citation and quotation marks omitted); see also 7 James Wm. Moore, et al., Moore's Federal Practice §33.102[3] (3d ed. 2017) ("If a party is unable to reply because it lacks knowledge or information, the party may not simply refuse to answer. Rather, the party must respond in a way that lets the requesting party know the information is unavailable. ... Simply stating that a party does not know the answer to legitimate questions is unacceptable; a party has a duty to inquire or find the answer.").

Here, there is no indication that Erfe made any attempt to obtain the information sought by this interrogatory. Although "it is permissible for an interrogated party to respond under oath as to his lack of knowledge[,]" Nicholson v. United Techs. Corp., 697 F. Supp. 598, 608 (D. Conn. 1988), Erfe "has a duty to furnish any and all information available to him." Braham, 2016 WL 1305118, at *3. Accordingly, Erfe shall make a reasonable effort to respond to this interrogatory. If he is unable to provide a response, he should describe his efforts to obtain the information. See id. If Erfe's response remains that

he does not know the answer to the interrogatory posed, he will be "bound by his responses claiming no knowledge and any later attempt to ... introduce evidence on the subject of the interrogatories at issue may be grounds for sanctions." Nicholson, 697 F. Supp. at 608.

    ii.  Interrogatory #2

Interrogatory #2 asks Erfe to identify the justification documented by defendant Cuzio to "exclude witness's and/or the administrative policy, procedure, directive or attachment that elucidates witness's can be excluded and/or exempted without giving a documented reason." Doc. #122 at 7-8 (sic). Erfe's response to this interrogatory raises a number of objections, before stating: "I cannot speak for Lt. Cuzio; however, based on Lt. Cuzio's March 19, 2019 Disciplinary Process Summary Report, you did not identify or request any witnesses at your hearing." Id. at 8.

Plaintiff does not appear to take issue with the substance of Erfe's response. Rather, plaintiff asserts that defendants violated Administrative Directive 9.5 by failing to provide certain notices related to the disciplinary hearing. See Doc. #122 at 14-15. The purpose of a motion to compel is to address allegedly insufficient responses to discovery requests. It is not to argue the merits of a party's claims. See Fed. R. Civ. P. 37(a)(3)(B) ("A party seeking discovery may move for an order

compelling an answer, designation, production, or inspection. This motion may be made if: ... a party fails to answer an interrogatory submitted under Rule 33[.]"). Plaintiff has not shown that Erfe's answer to Interrogatory #2 is insufficient; the Court will require no further response.

   iii. Interrogatory #3

   Interrogatory #3 requests Erfe to provide

   the name, title of the individual and reason provided
   for intelligence to seize my property and conduct an SRG
   Shakedown of my property, after the initial search by
   c/o Howes & the property officer when nothing was found
   (ergo who & why was the Plaintiffs property shaken down
   after it was packed and inventoried and stored in the
   property storage room).

Doc. #122 at 8 (sic). Erfe objects to this interrogatory on numerous grounds, before stating: "I cannot speak for other officials, including the Cheshire intelligence staff; however, property inventory searches are for the purposes of inventorying your property, while the intelligence staff may perform searches for specific reasons or looking for specific materials." Id.

   Erfe "has a duty to furnish any and all information available to him." Braham, 2016 WL 1305118, at *3. If Erfe lacks the knowledge necessary to answer a specific interrogatory, he is required to "make a reasonable inquiry concerning the information sought in interrogatories, and [his] failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient." Zanowic, 2000 WL

1376251, at *3 n.1. Accordingly, Erfe shall make a reasonable effort to respond to this interrogatory. If Erfe is unable to provide a response, he should describe his efforts to obtain the information. See Braham, 2016 WL 1305118, at *3.

     iv.  Interrogatory #4

Interrogatory #4 asks Erfe to "state where the photograph's and/or lists of alleged S.R.G. identifiers were located for inmates to see[.]" Doc. #122 at 9 (sic). Erfe objects to this interrogatory "to the extent that it implies that a specific list[] of SRG identifiers are required to be posted for the inmate population to view[,]" before responding that "a list of the SRGs recognized by DOC was posted in various areas throughout the facility, including in the inmate housing units." Id.

Erfe's response that Security Risk Group ("SRG") identifiers recognized by DOC were posted in "various areas throughout the facility[]" is "limited at best, and at worst, ... vague and evasive." Richard, 332 F.R.D. at 460. Erfe shall supplement his response to provide the specific places in the facility, if any, where lists or photographs of SRG identifiers were located.

     v.  Interrogatory #5

Interrogatory #5 asks Erfe to "explain the procedure for officers to obtain authorization to search non-inmate housing

areas and secure storage areas of the facility." Doc. #122 at 9.
Erfe objects to this interrogatory on numerous grounds, before
responding that "officers do not need authorization to conduct
searches of different areas of the facility. In fact, it is part
of the duties/responsibilities of certain posts that
correctional staff conduct searches of different areas of the
facility for safety and security." Id.

Plaintiff asserts that this response is insufficient,
arguing that "any corrections staff can go take anyones property
and remove it from the property room because they want to and
its their 'duties/responsibilities' yet defendant Erfe does not
state exactly where it can be found[.]" Id. at 17 (sic). Despite
plaintiff's argument to the contrary, Erfe has specifically
responded to this interrogatory, stating: "[O]fficers do not
need authorization to conduct searches of different areas of the
facility." Id. at 9. No further response to this interrogatory
is required.

**B.  Defendant Peracchio**

Plaintiff objects to each of the four interrogatory
responses by defendant Peracchio.

i.   Interrogatory #1

Interrogatory #1 seeks information regarding Peracchio's
authority to issue plaintiff a disciplinary report based on
"compil[ing] and/or combin[ing] two separate sentences, from two

separate phone calls and make them a threat and/or state the plaintiff has any type of role in any S.R.G." Doc. #122 at 19. Peracchio raises multiple objections to this interrogatory, before stating, in part: "The 'Threats' disciplinary report ('DR') issued to you on February 27, 2019, #CCI-2019-03-002, lays out the basis for why you received this DR, which was issued pursuant to Administrative Directive 9.5, Code of Penal Discipline. Administrative Directive 6.14, Security Risk Groups, provides information regarding Security Risk Groups." Id. at 19-20.

Peracchio responds to this interrogatory by citing documents not attached to his response. To properly respond to this interrogatory using documents produced during discovery, Peracchio must provide the specific Bates numbers for the documents he contends provide the response. Peracchio shall supplement his response to this interrogatory by providing the Bates numbers for the responsive documents.

ii.   Interrogatory #2

Interrogatory #2 asks Peracchio to "state the exact events and timeline that lead up to the plaintiff being under investigation for being 'A.B.'" Doc. #122 at 20 (sic). Peracchio raises numerous objections to this interrogatory, before stating that "the information used to designate you as an Aryan Brotherhood in 2019 is set forth in Disciplinary Report package

#CCI-2019-03-052, as well as in Incident Report #CCI-2019-03-031." Id.

Peracchio responds to this interrogatory by citing documents not attached to his response. As noted above, to properly respond to an interrogatory using documents produced during discovery, Peracchio must provide the specific Bates numbers for the documents he contends provide the response. Peracchio shall supplement his response to this interrogatory by providing the Bates numbers for the responsive documents.

   iii. Interrogatory #3

Interrogatory #3 seeks information concerning whether certain listed materials were declared to be Aryan Brotherhood identifiers; which document was utilized to identify the items as identifiers; and which individual(s) approved those materials as identifiers. See Doc. #122 at 20-21. Peracchio's response sets forth a number of objections to this interrogatory, before stating: "[T]he items used in your 2019 SRG Aryan Brotherhood designation were based on my training, experience, and knowledge of SRG groups, SRG identifiers/symbols, and SRG activities, including those related to the Aryan Brotherhood. I do not need any items to approved by the Commissioner as SRG identifiers." Id. at 22 (sic).

Plaintiff does not appear to dispute the adequacy of this response, but instead argues that Peracchio was acting "outside

the scope of his job duties, responsibilities and titles." Id. at 29. The purpose of a motion to compel is to address allegedly insufficient responses to discovery requests. It is not to argue the merits of plaintiff's claims. See Fed. R. Civ. P. 37(a)(3)(B). Plaintiff has not shown that Peracchio's response to Interrogatory #3 is insufficient; the Court will require no further response.

      iv.  Interrogatory #4

Interrogatory #4 asks Peracchio to "state how the plaintiff was approved to purchase the Thors Hammer, Celtic Cross by the Director of religious services, yet you were able to use it as an 'A.B.' identifier in his S.R.G. DR." Doc. #122 at 22 (sic). Peracchio objects to this interrogatory on a number of grounds, before responding, in part:

> The information used to designate you as an Aryan Brotherhood in 2019 is set forth in Disciplinary Report package #CCI-2019-03-052, as well as in Incident Report #CCI-2019-03-031. Just because an item may be approved or permitted for a particular purpose, does not mean that it cannot be considered in affiliating you with an SRG given the way such an item is used or displayed, or the item may, in combination with other information, constitute identifiers of an SRG.

Id.

Plaintiff moves to compel a supplemental response, arguing, in part, that Peracchio's response "goes as proof that the Celtic cross and Thor's hammer is not an approved SRG and/or AB Identifier." Id. at 30. As previously noted, the purpose of a

motion to compel is to address allegedly insufficient responses to discovery requests. It is <u>not</u> to argue the merits of plaintiff's claims. <u>See</u> Fed. R. Civ. P. 37(a)(3)(B). Plaintiff has not shown that the substance of Peracchio's response to Interrogatory #4 is insufficient.

However, Peracchio responds to this interrogatory by citing documents not attached to his response. To properly respond to this interrogatory using documents produced during discovery, Peracchio must provide the specific Bates numbers for the documents he contends provide the response. Peracchio shall supplement his response to this interrogatory by providing the Bates numbers for the responsive documents.

### C.  Defendant Papoosha

Plaintiff objects to each of the eight interrogatory responses by defendant Papoosha.

#### i.   <u>Interrogatories #1, #2, #3</u>

The first three interrogatories request information regarding the process by which certain groups, including the Aryan Brotherhood, are designated as SRGs. <u>See</u> Doc. #122 at 32-35. Papoosha sets forth a number of objections to these interrogatories, before stating that he "was not involved in the AB's placement on the SRG list" and that "[s]ince becoming the SRG Coordinator in April 2019, DOC has not added any groups to the list of SRGs." <u>Id.</u> at 34.

If Papoosha lacks the knowledge necessary to answer a specific interrogatory, he is required to "make a reasonable inquiry concerning the information sought in interrogatories, and [his] failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient." Zanowic, 2000 WL 1376251, at *3 n.1. Accordingly, Papoosha shall make a reasonable effort to respond to these interrogatories. If Papoosha is unable to provide a response, he should describe his efforts to obtain the information. See Braham, 2016 WL 1305118, at *3.

ii.   Interrogatory #4

Interrogatory #4 asks Papoosha to "list/identify the chain of command for the 'A.B.' directly associated to the State of Connecticut and/or CT D.O.C." Doc. #122 at 35 (sic). Papoosha sets forth a number of objections to this interrogatory, including that the interrogatory "seeks information that is not relevant to the plaintiff's claims as ... any purported 'list' of Aryan Brotherhood members in Connecticut has no bearing on the claims in this case, which revolve around the plaintiff's specific designation in 2019." Id. Papoosha also objects to this interrogatory on the grounds that "it seeks information that cannot be disclosed to the plaintiff for safety, security, and/or privacy reasons, and which is not proportional to the needs of the case." Id.

For purposes of discovery, relevance is broadly and liberally construed. See Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 52 (D. Conn. 2005). Information may be relevant if it "bears on or might reasonably lead to information that bears on any material fact or issue in the action." Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 72-73 (D. Conn. 2010) (citation and quotation marks omitted). Courts have generally been reluctant to define discovery relevance in the abstract; rather, courts tend to "ground their decisions on the particular facts of the case." Id. at 73. Discovery is limited, however, to information related to any party's "claim or defense[.]" Breon, 232 F.R.D. at 52; see also Fed. R. Civ. P. 26(b)(1).

The remaining claims against defendant Papoosha in this action, after Initial Review of the Amended Complaint, are: (1) a First Amendment Free Exercise claim; (2) a First Amendment Establishment Clause claim; (3) a Fourteenth Amendment procedural due process claim arising from plaintiff's SRG designation and placement; (4) Eighth Amendment conditions of confinement claims related to a cell at Cheshire that was alleged to be cold and contaminated with a chemical agent, bodily fluids, and sewer water; and (5) Intentional Infliction of Emotional Distress claims related to an allegedly retaliatory search, an effort to prolong plaintiff's stay in the Restricted Housing Unit, and an effort to coerce plaintiff to plead guilty

to certain disciplinary reports. See Doc. #52 at 21-22.
Plaintiff's claims invoke the First Amendment, related to his
Asatru beliefs, and include a procedural due process claim based
on his 2019 SRG designation; however, plaintiff has not
articulated how a list of the chain of command for the Aryan
Brotherhood is relevant to any of his claims or defenses.

Plaintiff has not shown that the information sought by this
interrogatory is relevant to any claim or defense in this
action, and the Court can see no way in which it would be. No
further response to this interrogatory is required.

       iii. <u>Interrogatory #5</u>

Interrogatory #5 seeks information concerning the "exact
sequence of events that led to the Five Percenters, i.e. Nations
of Gods and Earth became or was considered: (a) A. S.R.G. (b)
Disruptive Group (c) Removed from S.R.G. status (d) Removed from
a Disruptive Group (e) Recognized by D.O.C. as a religion". Doc.
#122 at 36 (sic).

Papoosha sets forth a number of objections to this
interrogatory, including that the interrogatory "seeks
information that is not relevant to the plaintiff's claims as
there ... is no claim in this case concerning the Nations of
Gods and Earth, as the claims in this case revolve around the
plaintiff's Aryan Brotherhood designation in 2019." <u>Id.</u>
Plaintiff asserts that Interrogatory #5 seeks information that

is relevant "to show prior bad acts of making inmates faith an SRG because they dont like them." Doc. #122 at 46 (sic).

The party seeking discovery bears "the burden of demonstrating relevance[.]" Bagley, 315 F.R.D. at 144 (citation and quotation marks omitted). For purposes of discovery, relevance is broadly and liberally construed. See Breon, 232 F.R.D. at 52. However, information is relevant only if it "bears on or might reasonably lead to information that bears on any material fact or issue in the action." Dongguk Univ., 270 F.R.D. at 72-73 (citation and quotation marks omitted).

Plaintiff has failed to explain how the information sought by this request is relevant to the claims or defenses in this action. Papoosha is not required to provide any additional response to Interrogatory #5.

      iv.  Interrogatory #6

Interrogatory #6 asks Papoosha to "state all information used to affiliate the Plaintiff as an S.R.G. 'A.B.' affiliate[.]" Doc. #122 at 36 (sic). Papoosha objects to this interrogatory on numerous grounds, before responding: "[T]he information used to designate you as an AB in 2019 is contained in the Process Summary Report for your SRG hearing on March 19, 2019 where you were found guilty, as well as in Incident Report #CCI-2019-03-031." Id. at 37.

Papoosha responds to this interrogatory by citing documents

not attached to his response. To properly respond to this interrogatory using documents produced during discovery, Papoosha must provide the specific Bates numbers for the documents he contends provide the response. Papoosha shall supplement his response to this interrogatory by providing the Bates numbers for the responsive documents.

v.   Interrogatory #7

Interrogatory #7 asks Papoosha to "state the difference between the 'A.B', the B.O.W.S., Skinheads, White Separatists, White Supremacist, White Nationalists, Asatru followers and how you designate all these separate and distinct organizations as 'A.B.'" Doc. #122 at 37 (sic). Papoosha sets forth a number of objections to this interrogatory, including that the interrogatory "seeks information that is not relevant to the plaintiff's claims as ... the claims in this case relate to the plaintiff's specific SRG designation in 2019 as a member of the Aryan Brotherhood." Id. Plaintiff responds that it "is the Defendants duty and responsibility to know the difference when affiliating people like in this case they run the risk of wrongly affiliating people placing them in a program with actual gang members putting their lives, safety and well being at risk[.]" Doc. #122 at 48 (sic).

As previously noted, plaintiff, as the party seeking discovery, bears "the burden of demonstrating relevance[.]"

Bagley, 315 F.R.D. at 144 (citation and quotation marks omitted). Plaintiff brings a First Amendment Free Exercise Claim based on certain defendants having "designat[ed] plaintiff SRG based on plaintiff's Asatru beliefs." Doc. #52 at 21. To the extent this interrogatory seeks information about how Papoosha designates Asatru followers as Aryan Brotherhood affiliates, and thus SRG affiliated, such information is relevant and the interrogatory is proper.

However, plaintiff has not met his burden as to the remainder of the information sought by this interrogatory. Plaintiff has failed to establish the relevance of the differences among various groups designated by DOC as "A.B." or "Aryan Brotherhood" affiliates, and how DOC has determined that groups other than Asatru should be treated as A.B. affiliates. See Doc. #122 at 37.

This interrogatory seeks relevant information only to the extent that it seeks information about "how you designate [Asatru followers] as 'A.B.'" See id. Papoosha shall supplement his response to this interrogatory by providing a response to this aspect of the interrogatory. If Papoosha elects to respond to this interrogatory, in any part, by directing plaintiff to documents not attached to his interrogatory response, he must provide the Bates number of the responsive document(s).

vi.   Interrogatory #8

Interrogatory #8 asks Papoosha to "state each & every incedent the 'A.B.' was identified as causing a safety and security issues that was in CT. D.O.C. and involved" assaults on DOC staff, assaults on DOC inmates, riots, drugs, or protests. Doc. #122 at 38 (sic). Papoosha objects to this interrogatory on numerous grounds, including that it seeks information that is not relevant because "there is no claim in this case concerning the propriety of the Aryan Brotherhood's inclusion on the DOC's list of SRG, as the claims in this case revolve around the plaintiff's specific designation in 2019." Id.

Plaintiff has failed to meet his burden of establishing that the information sought by this interrogatory is relevant to any claim or defense. Accordingly, Papoosha need not respond further to Interrogatory #8.

**D.  Defendant Cuzio**

Plaintiff objects to two of defendant Cuzio's interrogatory responses.

i.   Interrogatory #2

Interrogatory #2 requests that Cuzio "state each item that was used in Plaintiff's Disciplinary/S.R.G. hearing to affiliate him[.]" Doc. #122 at 53. Cuzio sets forth numerous objections to plaintiff's request, before responding:

[T]he information used to designate you as an SRG Aryan

> Brotherhood in 2019 is contained in the SRGA
> Disciplinary Report your received, #CCI-2019-03-052, as
> well as in my Process Summary Report for your SRG hearing
> on March 19, 2019 where you were found guilty. As set
> forth in your disciplinary report, numerous AB
> identifiers were found in your property, and photographs
> of these items were identified as physical evidence
> tracking #CPR 19-011 and were contained in Incident
> Report #CCI-2019-03-031.

Id.

Cuzio responds to this interrogatory by citing documents
not attached to his response. To properly respond to this
interrogatory using documents produced during discovery, Cuzio
must provide the specific Bates numbers for the documents he
contends provide the response. Cuzio shall supplement his
response to this interrogatory by providing the Bates numbers
for the responsive documents.

        ii.   Interrogatory #3

Interrogatory #3 asks Cuzio to "explain who told you S.R.G.
items were found, what they were, to find him guilty of the
S.R.G. DR. and what phase of the S.R.G. program the plaintiff
would be going to." Doc. #122 at 54 (sic). Cuzio's response sets
forth a number of objections, before stating:

> [T]he basis for your guilty finding of SRG Aryan
> Brotherhood is set forth in Disciplinary Report package
> #CCI-2019-03-052, including documentation submitted by
> staff. No one told me to find you guilty, as I based my
> decision off the documentation submitted, as well as
> considering the defense you presented at the hearing. I
> do not decide the phase of the SRG unit you would be
> assigned to, as the SRG unit makes recommendations for
> the phase of the SRG program you will be placed in the

event you are found guilty at the SRG hearing. The SRG
unit recommended your placement in phase II of the SRG
program if you were found guilty, which you were after
your hearing on March 19, 2019.

Id. at 54 (sic).

Cuzio responds to this interrogatory by citing documents
not attached to his response. To properly respond to this
interrogatory using documents produced during discovery, Cuzio
must provide the specific Bates numbers for the documents he
contends provide the response. Cuzio shall supplement his
response to this interrogatory by providing the Bates numbers
for the responsive documents.

   **E.   Defendant Maiga**

Plaintiff objects to each of the three interrogatory
responses by Maiga.

      i.   Interrogatory #1

Interrogatory #1 states: "Defendant MAGIA in as much detail
as possible explain the reclassification process for an inmate
that is found guilty of an S.R.G. Affiliation D.R. such as the
Plaintiffs, identify who was involved and how much time and/or
how many days it takes and when you began this process." Doc.
#122 at 62 (sic).

Maiga sets forth a number of objections to this
interrogatory, before stating: "I do not play a role in this
process, other than my office being notified if an inmate's SRG

level changes. SRG affiliations are facility based and designations are made by the DOC Security Division." Id.

If Maiga lacks the knowledge necessary to answer a specific interrogatory, he is required to "make a reasonable inquiry concerning the information sought in interrogatories, and [his] failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient." Zanowic, 2000 WL 1376251, at *3 n.1. Accordingly, Maiga shall make a reasonable effort to respond to this interrogatory. If Maiga is unable to provide a response, he should describe his efforts to obtain the information. See Braham, 2016 WL 1305118, at *3.

ii.  Interrogatory #2

Interrogatory #2 asks Maiga to "explain what policy or Directive's were used and why/how when reclassifying the Plaintiff, his level (overall) was raised after being found guilty of 2 class A DRs between 2-27-19 and 3-19-19." Doc. #122 at 62 (sic). Maiga responds that he "did not play a role in this as this is done at the facility level." Id.

As noted above, if Maiga lacks the knowledge necessary to answer a specific interrogatory, he must "make a reasonable inquiry concerning the information sought in interrogatories, and [his] failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient." Zanowic, 2000 WL 1376251, at *3 n.1. Accordingly,

Maiga shall make a reasonable effort to respond to this
interrogatory. If Maiga is unable to provide a response, he
should describe his efforts to obtain the information. <u>See</u>
<u>Braham</u>, 2016 WL 1305118, at *3.

      iii. <u>Interrogatory #3</u>

     Interrogatory #3 asks Maiga to "in as much detail as
possible explain the process for denying an inmate Good
time/RREC earning status and the effect the denial of Good
time/RREC earning status has on an inmates overall Sentence, if
this process is described in any Administrative policy,
procedure and/or Directive please provide it." Doc. #122 at 63
(sic).[3]

     Maiga objects to this interrogatory, asserting that it is
"vague, confusing, and unclear as there are no time frames or
parameters to frame this request and it seeks information about
separate types of credits. Additionally, it is unclear as to
whether this request seeks information about the plaintiff's
earning of credits or general information[.]" <u>Id.</u> Maiga
nonetheless provides the following response: "RREC is not
'denied' as RREC is either forfeited as a disciplinary sanction

---

[3] "RREC" is an initialism for Risk Reduction Earned Credit, which
is a system of discretionary credit, effectively reducing the
total time an inmate may spend in custody. DOC may award RREC if
an inmate complies with programming and exhibits good behavior.
<u>See</u> <u>Green v. Riffo</u>, No. 3:18CV00960(CSH), 2019 WL 2302412, at
*10 (D. Conn. May 29, 2019).

per Administrative Directive 9.5, or an inmate may be ineligible to earn RREC based on their sentence or crime of conviction, and/or if they are in a restrictive status, such as the SRG program." Id.

"The scope of permissible discovery is broad." Croom, 2002 WL 32503667, at *1. However, some "threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Id. (citations and quotation marks omitted). No such showing has been made as to the information sought in this interrogatory.

Plaintiff's original Complaint asserted a Fourteenth Amendment due process claim related to loss of RREC or "good time" credits. See Doc. #1-1 at 12. However, that claim has been dismissed. See Doc. #11 at 41; Doc. #52 at 9-10. Thus, the loss of RREC or good time credit is not at issue in this case. Plaintiff has not met his burden of showing that the information sought by this interrogatory is relevant to any currently pending issue in the case. Maiga is not required to supplement his answer to Interrogatory #3.

## IV.  Conclusion

For the reasons stated, plaintiff's Motion to Compel [**Doc. #122**] is **GRANTED, in part, and DENIED, in part**. Defendants shall provide supplemental interrogatory responses, in full compliance

with this Order, on or before February 6, 2023.

It is so ordered at Bridgeport, Connecticut, this 6th day of January, 2023.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES CIRCUIT JUDGE
Sitting by Designation