**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------X
                             :
RICHARD NAU                  :    Civil No. 3:21CV00019(SALM)
                             :
v.                           :
                             :
DANIEL PAPOOSHA, SCOTT ERFE, :    January 6, 2023
ANTONIO SANTIAGO, DAVE MAGIA,:
WILLIAM MULLIGAN, DONALD     :
BOYD, C.O. PERACCHIO, C.O.   :
VARGAS, C.O. WRIGHT,         :
R. TAYLOR, G. CUZIO, and     :
GUADARRANIA                  :
                             :
-----------------------------X
```

<u>**ORDER ON [DOC. #136] PLAINTIFF'S RENEWED MOTION TO COMPEL**</u>

Self-represented plaintiff Richard Nau, a sentenced inmate at Corrigan-Radgowski Correctional Center ("Corrigan"),[1] brings this action relating to events occurring during his incarceration in the custody of the Connecticut Department of Correction ("DOC").

---

[1] The Court may take judicial notice of matters of public record. <u>See</u>, <u>e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Nau entered DOC custody on August 12, 2013, and was sentenced on December 2, 2015, to a term of imprisonment that has not expired, and that he is held at Corrigan Correctional Center. <u>See</u> Connecticut State Department of Correction, <u>Inmate Information</u>, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=398573 (last visited January 5, 2022).

Plaintiff has filed a Renewed Motion to Compel, <u>see</u> Doc. #136, to which defendants have filed a memorandum in opposition. <u>See</u> Doc. #142. For the reasons set forth herein, plaintiff's Motion to Compel [**Doc. #136**] is **GRANTED, in part, and DENIED, in part.**

## I.   <u>BACKGROUND</u>

Plaintiff brought this action on January 4, 2021. <u>See</u> Doc. #1. The Court issued an Initial Review Order ("IRO") of plaintiff's original Complaint on May 13, 2021. <u>See</u> Doc. #11. The Court permitted plaintiff's original Complaint to proceed to service of process on multiple claims against multiple defendants. <u>See</u> <u>generally</u> <u>id.</u>

The Court issued its Standing Order RE: Initial Discovery Disclosures on May 13, 2021. <u>See</u> Doc. #12 at 1. The Order stated, in part:

> Within 45 days from the appearance of a defendant, counsel for that defendant shall provide the following materials to the self-represented plaintiff:
>
> - A list of any witnesses believed to have relevant information regarding the claims in the Complaint.
>
> - Copies of any grievances, complaints, notices, reports filed by the plaintiff, or correspondence from the plaintiff, in the possession of any individual defendant or the DOC that relate to the claims in the Complaint.
>
> - Copies of any incident reports, reports of investigation, disciplinary reports, or similar reports relating to the claims in the Complaint.

- If the Complaint includes a claim relating to medical treatment, physical injuries, medication, mental illness, or other medical issues (whether physical or psychological), a copy of the plaintiff's DOC medical records for the relevant time period set forth in the Complaint and/or the Initial Review Order.

If redactions are made to any materials disclosed, the disclosure must be accompanied by a privilege log indicating the basis for the redactions.

Id. at 2-3.

Plaintiff filed an Amended Complaint on August 19, 2021. See Doc. #37. On November 22, 2021, the Court issued an IRO of plaintiff's Amended Complaint. See Doc. #52. The Court's IRO permitted plaintiff's Amended Complaint to proceed on multiple claims against multiple defendants. See id. at 21-22.

Discovery in this matter is now closed. On February 28, 2022, plaintiff filed a Notice informing the Court "of the ongoing discovery disputes that [the parties] have attempted to resolve through multiple phone calls and multiple letters in good faith." Doc. #95 at 1.

The Court issued the following Order on March 12, 2022:

Plaintiff has filed a Notice describing certain discovery disputes and "respectfully request[ing] these items to be produced[.]" Doc. #95 at 14. Defendants have filed a Response to Plaintiff's Notice RE: Discovery Disputes. See Doc. #96.

Plaintiff appears to assert that defendants have improperly failed to produce materials required by: (1) the Court's May 13, 2021, Standing Order Re: Initial Disclosure Discovery (Doc. #12); and (2) plaintiff's requests for production. See Doc. #95.

If plaintiff seeks an order requiring defendants to provide discovery materials, he must file a <u>motion</u> to compel the disclosure of such documents. **A motion to compel must be based on specific orders or requests already made for discovery**. A party may not simply list things he seeks, without establishing that a proper order or request for those things was already issued. A motion to compel must "include, as exhibits, copies of the discovery requests in dispute[,]" D. Conn. L. Civ. R. 37(b)1, along with copies of any objections provided by defendants to those requests.

If plaintiff claims that defendants failed to comply with their Initial Disclosure obligations, his motion must clearly and specifically identify which Initial Disclosure requirement requires production of an item, and the basis for his claim that defendants have failed to comply. He must cite to a requirement set forth in the Initial Disclosure Order. <u>See</u> Doc. #12.

If plaintiff claims that defendants failed to properly respond to a request for production, his motion must provide a complete copy of the request at issue, a complete copy of any objection to that request, and a clear and specific argument why defendants' response or objection is insufficient.

... Any motion to compel must be filed on or before **April 4, 2022. No extensions of this deadline will be granted.**

Doc. #98.

Plaintiff filed a Motion to Compel relating to the discovery requests identified in his February 28, 2022, Notice, on April 12, 2022. <u>See</u> Doc. #101. Defendants filed an objection to plaintiff's Motion to Compel on April 20, 2022, asserting that the motion "must be summarily denied as it is untimely and not in compliance with the Court's March 12, 2022 Order, (ECF No. 98), it fails to comply with the applicable Local and Federal Rules, and the purported issues raised in this motion

are without merit." Doc. #103 at 1.

The Court took plaintiff's Motion to Compel under

advisement on April 26, 2022:

> Plaintiff has filed a motion seeking "an order
> compelling the Defendants to produce documents in
> accordance with the courts initial discovery order and
> the plaintiffs request's to produce documents." Doc.
> #101 at 1 (sic). As defendants correctly note,
> plaintiff's motion was filed eight days after the April
> 4, 2022, deadline, and offers no explanation for the
> delay. See Doc. #98 (setting deadline); see also Doc.
> #103 at 2.
>
> Plaintiff's motion also fails to comply with the Court's
> specific instructions. ...
>
> Plaintiff has not provided copies of defendants'
> objections, nor has he identified the specific request
> for production or initial disclosure obligation that
> requires defendants to produce each document that
> plaintiff seeks.
>
> In light of plaintiff's pro se status, the Court will
> permit him an additional opportunity to meet these
> requirements.
>
> Accordingly, on or before **May 17, 2022,** plaintiff shall
> file a supplement to his Motion: (1) identifying the
> specific initial disclosure obligation or request for
> production that plaintiff believes requires defendants
> to produce each document or category of documents
> requested; and (2) providing "copies of any objections
> provided by defendants" to the discovery requests at
> issue in plaintiff's motion. Doc. #98.
>
> Failure to comply with this Order may result in the
> motion to compel being summarily denied.

Doc. #104.

The Court did not receive any supplement from plaintiff. As

a result, the Court entered an Order on June 8, 2022:

> The May 17, 2022, deadline [for plaintiff to supplement his motion to compel] has long since passed. Plaintiff has been given multiple opportunities to file an adequate motion, and has failed to do so. As a result, the Court does not have the information necessary to resolve his motion. Accordingly, plaintiff's motion is **DENIED**.

Doc. #123.

On June 22, 2022, plaintiff filed a Motion for Information. See Doc. #129. Plaintiff's motion stated that he "does not know if the Court has or is considering his Motion to Compel filed on 4-12-2022[.]" Id. at 1.

The Court granted plaintiff's Motion for Information on June 29, 2022:

> The Court entered an Order taking plaintiff's April 12, 2022, motion under advisement on April 26, 2022. See Doc. #104. That Order stated: "[O]n or before **May 17, 2022**, plaintiff shall file a supplement to his Motion[.] ... The Court warned plaintiff: "Failure to comply with this Order may result in the motion to compel being summarily denied." Doc. #104.
>
> Plaintiff did not file any supplement to his motion. As a result, the Court entered an Order denying plaintiff's motion on June 8, 2022. ...
>
> Plaintiff now asserts that he supplemented his motion "on 5-12-22 with all exhibits attached." Doc. #129 at 1. However, despite receiving numerous other filings from plaintiff throughout the month of May, see Doc. #107, Doc. #108, Doc. #112, Doc. #115, Doc. #118, Doc. #119, Doc. #122, the Court did not receive any supplement to plaintiff's Motion to Compel.
>
> Accordingly, plaintiff's Motion for Information is granted, to the extent it seeks "information regarding the motion to compel filed on 4-12-2022[.]" Doc. #129 at 2. The Clerk of Court shall mail a copy of Doc. #123 to plaintiff at his address of record.

Doc. #130.

Plaintiff filed a Motion for Reconsideration on July 5, 2022, asserting that he filed the supplement to his motion to compel on or before May 17, 2022. See Doc. #131 at 1.

The Court granted plaintiff's Motion for Reconsideration on July 7, 2022, stating in part:

> [W]hile the Court did not <u>receive</u> plaintiff's supplement to his Motion to Compel, plaintiff has provided a document reflecting that he in fact prepared a timely supplement to his motion to compel, which was scanned for filing by DOC staff on May 16, 2022. <u>See</u> Doc. #131 at 2. Because the Court denied plaintiff's Motion to Compel solely based on his failure to file his supplement to that motion, plaintiff's Motion for Reconsideration is **GRANTED.**
>
> The Clerk of Court shall separately docket plaintiff's supplement to his Motion to Compel as a Renewed Motion to Compel. The Court will consider Doc. #101 and Doc. #103, the original April 12, 2022, motion to compel and response, in conjunction with the Renewed Motion to Compel.

Doc. #134. Plaintiff's renewed Motion to Compel is now before the Court. See Doc. #136.

## II.  <u>LEGAL STANDARD</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of permissible discovery is broad." Croom v. W. Conn. State Univ., No. 3:00CV01805(PCD), 2002 WL 32503667, at *1 (D. Conn. Mar. 20, 2002). "[T]he burden of demonstrating relevance remains on the party seeking discovery." Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016) (citation and quotation marks omitted), as amended (June 15, 2016); see also Republic of Turkey v. Christie's, Inc., 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (same). A "threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Marchello v. Chase Manhattan Auto Fin. Corp., 219 F.R.D. 217, 218 (D. Conn. 2004) (citation and quotation marks omitted); see also Wilson v. Cheng, No. 15CV00023(CBA)(MMH), 2022 WL 985823, at *7 (E.D.N.Y. Mar. 31, 2022) ("The party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition." (citation and quotation marks omitted)).

Once the party seeking discovery has demonstrated relevance, the burden then shifts to "[t]he party resisting discovery" to show "why discovery should be denied." Cole v.

Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

The Court notes that it exercises particular caution when it addresses cases involving self-represented litigants, and is cognizant of the limitations necessarily imposed on incarcerated litigants. "Though a court need not act as an advocate for pro se litigants, in pro se cases there is a greater burden and a correlative greater responsibility upon the district court to insure ... that justice is done." Davis v. Kelly, 160 F.3d 917, 922 (2d Cir. 1998) (citation and quotation marks omitted).

## III. **DISCUSSION**

Plaintiff's Renewed Motion seeks to compel defendants to: (1) produce additional documents in accordance with their Initial Disclosure obligations; and (2) produce additional documents in response to plaintiff's Requests for Production. See Doc. #136.

### A.   **Initial Disclosures**

Plaintiff identifies thirteen pieces of information that he asserts should have been produced under the Court's Standing Order on Initial Disclosures (Doc. #12). See Doc. #136. Specifically, plaintiff contends that defendants failed to adequately disclose "[a] list of any witnesses believed to have relevant information regarding the claims in the Complaint[,]" and "[c]opies of any incident reports, reports of investigation,

disciplinary reports, or similar reports relating to the claims in the Complaint." Doc. #12 at 2-3.

### i.   Witness, Justin Bonner

Plaintiff contends that he "knows the name of a witness that should have been identified that the defendants failed to identify." Doc. #136 at 3. Specifically, plaintiff appears to assert that another inmate -- Justin Bonner -- was identified in an incident report but was not named by defendants in their initial disclosures. See id. In response, defendants assert that they "listed witnesses with relevant information in their initial discovery disclosures[.]" Doc. #142 at 4.

> The failure to identify a witness under Rule 26 can result in exclusion of that witness from offering evidence under Rule 37(c)(1). If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

3DT Holdings LLC v. Bard Access Sys. Inc., No. 17CV05463(LJL), 2022 WL 1569493, at *2 (S.D.N.Y. May 17, 2022) (citation and quotation marks omitted).

"The purpose of [Rule 37(c)] is to prevent the practice of sandbagging an opposing party with new evidence." Haas v. Delaware & Hudson Ry. Co., 282 F. App'x 84, 86 (2d Cir. 2008) (citations and quotation marks omitted). There is no risk of that here. Plaintiff is aware of Bonner, and if plaintiff

believes Bonner has relevant information, may identify him as a witness himself.

The mere fact that plaintiff has identified a person that he believes has relevant information does not mean that defendants failed to comply with their obligation to provide "[a] list of any witnesses believed to have relevant information regarding the claims in the Complaint." Doc. #12 at 12. Defendants are not required to supplement their initial disclosures to list Bonner.

ii.  "Numerous" Other Witnesses

Plaintiff also contends that an incident report states "that numerous inmates have identified plaintiff as either a leader or an Aryan brotherhood member," but that defendants failed "to identify these witnesses as having relevant information[.]" Doc. #136 at 5. Defendants respond that "there were no witnesses identified[]" in the incident reports. Doc. #142 at 5.

As previously noted, "[t]he failure to identify a witness under Rule 26 can result in exclusion of that witness from offering evidence under Rule 37(c)(1)." 3DT Holdings LLC, 2022 WL 1569493, at *2. Defendants may be precluded from calling a witness at trial that they failed to identify in their initial discovery disclosures. The failure to disclose particular individuals as "witnesses," however, does not mean defendants

failed to comply with the Initial Disclosure Order. The Court will not require defendants to supplement this initial disclosure.

iii. <u>Incident Reports</u>

Plaintiff asserts that defendants failed to comply with the requirement that they provide "copies of incedent reports, reports of investigation or similar reports relating to the claims in the complaint[.]" Doc. #136 at 7 (sic); <u>see also</u> Doc. #12 at 2-3 (requiring disclosure of "[c]opies of any incident reports, reports of investigation, disciplinary reports, or similar reports relating to the claims in the Complaint[]").

Defendants assert that they provided "copies of two incident reports and several disciplinary reports that related to the claims in the instant suit." Doc. #142 at 3 (citation omitted).

Plaintiff asserts that this disclosure was insufficient in numerous ways. For example, plaintiff contends that defendants were required to create (and produce) a CN 9511 Witness Form for <u>every</u> inmate that was interviewed in relation to events underlying plaintiff's claims. <u>See</u> Doc. #136 at 4. Plaintiff further asserts that defendants were "required to obtain authorization from supervisory officials before conducting any facility or area search, [and] this authorization should have been disclosed as part of the defendants incedent, investigation

and/or disciplinary reports[.]" Id. at 8 (sic). Plaintiff's
motion appears to argue that, in fact, no such authorization was
sought or granted. See id.

These examples are illustrative. Plaintiff seeks a host of
documents that he believes defendants were required to create
under various provisions of the Administrative Directives
governing prison life. See id. at 7-8. Defendants contend that
they have "produced the reports related to the incidents
underlying the plaintiff's instant claims, including the
relevant disciplinary and incident reports." Doc. #142 at 4. To
the extent such reports were redacted for security reasons,
defendants informed plaintiff that he could review the
unredacted reports by contacting defense counsel "when he is
ready to review these materials and DOC staff will facilitate
the plaintiff's review of these materials." Doc. #142-1 at 3.

Defendants are not required to supplement this portion of
their initial disclosures.

iv.  Signing of Initial Disclosures

Initial disclosures "must be signed by at least one
attorney of record in the attorney's own name[,]" and by so
signing, counsel certifies that the disclosure was "complete and
correct as of the time it is made[.]" Fed. R. Civ. P. 26(g)(1).
Inherent in this certification of completeness is that counsel
must have made a reasonable inquiry of each defendant before

making disclosures. See, e.g., Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 428 (W.D.N.Y. 2017). Attorney Rowley signed the initial disclosures. See Doc. #142-1 at 4. The Court presumes that such an inquiry was conducted in this case. The Court further notes that defendants elected to provide their Initial Disclosures collectively, rather than individually, and the Court therefore presumes that each defendant was consulted in the preparation of those disclosures.

**B.  Requests for Production**

Plaintiff seeks to compel defendants to produce additional documents in response to eight of his Requests for Production ("RFPs").

i.  Sworn Certification of Objections and Responses

Defendants objected "to the form of [plaintiff's] production request as it [was] not addressed or directed to a particular defendant, despite there being multiple defendants in the case. Production requests must be individualized and directed to a specific defendant, not a collective group of defendants[.]" Doc. #142-3 at 2. Defendants are correct that RFPs must be directed to individual defendants. See, e.g., Card v. Coleman, No. 3:14CV00830(SRU)(WIG), 2014 WL 6884041, at *2 (D. Conn. Dec. 4, 2014) ("The plaintiff's request for production of documents is addressed to the defendants generally. Because it is not addressed to a specific defendant, the Request for

Productions of Documents is deficient."); see also Fed. R. Civ. P. 34(a) ("A party may serve" an RFP "on any other party[.]").

Despite this objection defendants responded to plaintiff's requests for production, collectively, through counsel. Counsel for defendants signed the responses and objections to the RFPs. See Docs. #142-2 at 8; 142-3 at 7.

Every discovery "response, or objection must be signed by at least one attorney of record in the attorney's own name[.]" Fed. R. Civ. P. 26(g)(1). By signing a response or objection, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the response or objection is, among other things, consistent with the Federal Rules and existing law. Fed. R. Civ. P. 26(g)(1). Where a party responds to a request or a motion to compel a supplemental response by asserting that all responsive documents have been disclosed, or that a diligent search has been conducted and no responsive documents exist, the party must certify that response under oath. See, e.g., Napolitano v. Synthes USA, LLC, 297 F.R.D. 194, 200 (D. Conn. 2014) ("[A] response that all documents have been produced does require attestation.").

Here, defendants have responded to a number of RFPs by asserting that the responsive materials had already been disclosed. See, e.g., Doc. #142-2 at 4 ("Subject to and without

waiving the foregoing objections, two religious designation
forms are being produced in response to this request. <u>See</u>
Production at Bate Stamped pages ("BS") 127-128. If any
additional responsive materials are located, they will be
produced accordingly." (sic)); Doc. #142-3 at 4 ("Subject to and
without waiving the foregoing objections, incident reports and
disciplinary reports, which contain responsive material to this
request, were previously produced in the defendants' initial
disclosures. <u>See</u> Initial Disclosures at BS 35, 42, 44, 51-53,
59-64, 68, 71-80, 83-84, & 106-107."). Defendants also responded
to certain RFPs by asserting that requested materials do not
exist or were not located. <u>See</u>, <u>e.g.</u>, Doc. #142-3 at 5 ("[T]he
undersigned is informed that there are no logbooks for the
Cheshire property room."); Doc. #142-2 at 6 ("Subject to and
without waiving the foregoing objections, no discipline records
were located concerning the above-named individuals.").

These responses and objections require at least one
defendant to provide a sworn certification. Because plaintiff
did not direct his RFPs to any particular defendant, the Court
will not direct which defendant must provide the sworn response.
However, at least one defendant, who has knowledge of the search
conducted for the relevant material and the results of that
search, must certify each RFP response and objection that
includes any representation that no responsive documents exist,

or that all responsive documents have already been produced.
See, e.g., Prezio Health Inc. v. Schenk, No.
13CV01463(WWE)(HBF), 2014 WL 4980855, at *1 (D. Conn. Oct. 3,
2014) (requiring defendants who asserted that they had
"'produced the only responsive, non-privileged email in their
possession'" to "each provide a sworn statement that after a
diligent search, all documents responsive to Request No. 4 have
been produced[]").

ii.  Request #7 in the Second Set of RFPs

Plaintiff seeks to compel defendants to supplement their
response to RFP #7, Second Set of RFPs. See Doc. #136 at 21.
This RFP seeks copies "of the training policies for officers in
the facility intel units as disciplinary investigator, hearing
officer, and D.O.C security division unit." Doc. #142-2 at 6
(sic). Defendants object to this RFP, asserting that the request

> is overly broad and burdensome, is not reasonably
> limited in time, and is not proportional to the needs of
> the case. More specifically, this request fails to set
> forth a time frame to reasonably limit the request to
> time periods relevant to the claims in this lawsuit.
> Additionally, this request is objected to on the grounds
> that it is vague and ambiguous, as it is unclear whether
> this request seeks formal policies, directives, actual
> training materials, training records, or some other type
> of information.

Id.

Plaintiff contends that the "request is not overly broad or
burdensome the defendants have access to these documents as it

is their job to act in accordance with these training policies[.]" Doc. #136 at 21 (sic). The Court agrees that the RFP is overbroad as to time; as a result, the Court will limit the request to the time period of January 1, 2019, through January 4, 2021. See Thompson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 3:14CV00259(WWE)(HBF), 2015 WL 753721, at *3 (D. Conn. Feb. 23, 2015) (finding "the requested timeframe is over broad and" limiting responses to a specific time period). The RFP is also vague as to the meaning of "training policies" and overbroad by including "security division" in its scope. Doc. #142-2 at 6.

At least one defendant shall provide a response to this RFP, limited as follows: **Copies of all formal, written training policies for investigators and hearing officers in "intel units" of DOC, in effect from January 1, 2019, through January 4, 2021.**

### iii. Request #10 in the Second Set of RFPs

Plaintiff seeks to compel defendants to supplement their response to Request #10, Second Set of RFPs. See Doc. #136 at 22-23. This request seeks "[c]opies of D.O.C recognized symbols and information and how it is specifically, directly and only associated to the Aryan Brotherhood and not symbols and info loosely associated to any/all white separatist or supremacist organizations in general." Doc. #142-2 at 7 (sic). Defendants object to this request:

> [T]his request is objected to on the grounds that it is vague and ambiguous, as it is unclear what this request is specifically seeking. More specifically, it is unclear what "recognized symbols and information" is referring to in this request, what "loosely associated" means in this request, and what is constitutes "white separatist or supremacist organizations in general." Additionally, this request is also overly broad and not proportional to the needs of the case as this request fails to set forth a time frame to reasonably limit the request to time periods relevant to the claims in this lawsuit, Finally, this request is objected to on safety and security grounds to the extent it seeks materials or symbols of recognized SRGs.

Id. (sic).

Plaintiff argues that the "request is not overly broad or burdensome the defendants should have this information as it should have been used to affiliate the plaintiff and is required to affiliate individuals as SRG's under" specific sections of the Directive. Doc. #136 at 22. Plaintiff contends that "in no directive, handbook or policy does it state what is or what is not specifically an Aryan Brotherhood Identifier," and that Administrative Directive 9.5 states that the rules should "be published in inmate handbooks and posted in housing units and in inmate libraries so inmates can know specifically what the rules are before they can be punished for violating them[.]" Doc. #136 at 22.

Plaintiff proceeds on a "First Amendment Free Exercise claim" against certain defendants "for designating plaintiff SRG based on plaintiff's Asatru beliefs." Doc. #52 at 21. Plaintiff

alleged that "all of the symbols that had been identified as SRG material were actually religious symbols from books that had been previously reviewed and permitted into Cheshire." Doc. #11 at 9-10.

To the extent that this request seeks a list of symbols that DOC has identified as being associated with the Aryan Brotherhood, it seeks relevant information, and is neither vague nor overbroad.

Defendants also objected to this request "on safety and security grounds to the extent it seeks materials or symbols of recognized SRGs." Doc. #142-2 at 7.

> In reviewing documents withheld for this reason, the Court bears in mind that the Department of Correction is likely to have a better understanding of security risks than a prisoner. As to _relevant_ documents, however, defendant, as the party resisting discovery, bears the burden of showing why discovery should be denied.

Ayuso v. Butkiewieus, 3:17CV00776(AWT)(SALM), 2019 WL 1110794, at *4 (D. Conn. Mar. 11, 2019) (quotation marks and citations omitted). Here, defendants have not met their burden of showing why discovery of the symbols DOC has identified as Aryan Brotherhood identifiers should be denied on safety and security grounds.

At least one defendant shall provide a response to this RFP, limited as follows: **A list of symbols that DOC has identified as being associated with the Aryan Brotherhood.** The

symbols may be described, and the actual depictions redacted, if possession of materials bearing such symbols is prohibited in DOC facilities, and plaintiff shall be provided an opportunity to review the unredacted list. If there are no such identified symbols, the responding defendant must provide a certified response to that effect.

### iv.   Request #1 in the Fourth Set of RFPs

Plaintiff seeks to compel defendants to supplement their response to Request #1, Fourth Set of RFPs. See Doc. #136 at 23-24. This RFP seeks "[a]ny and all grievances, complaints or other documents recieved by prison staff at Cheshire C.I. concerning the mistreatment of inmates and/or misconduct of defendants Wright, Cuzio, Erfe, Peracchio, Vargas, Boyd, Taylor and Papoosha, any memoranda, investigative files or other documents created in response to such since August 13, 2013." Doc. #142-3 at 3 (modifications removed) (sic).

Defendants object to this request, stating in part:

[T]his request is burdensome and not proportional to the needs of the case as grievances and complaints are tracked and organized by inmate, not by the subject of their grievance or complaint, or by the staff member subject of the complaint. Further, this request seeks unsubstantiated and easily fabricated complaints and/or grievances by inmates, and not formal discipline or sustained findings of wrongdoing or misconduct by the defendants.

Subject to and without waiving the foregoing objections, grievances and written complaints filed by the plaintiff concerning the claims in this case, which contain

responsive material to this request, were previously produced in the defendants' initial disclosures.

Id.

Plaintiff asserts that "if the Defendants have nothing to hide or no complaints there would be no objections to producing any reports, grievances or complaints made or their employee file showing any reprimands or violations of policy[.]" Doc. #136 at 24.

Plaintiff seeks to compel two distinct types of documents: "grievances" and "complaints or other documents against prison staff ... concerning mistreatment of inmates or misconduct of prison officials[.]" Doc. #136 at 23. Plaintiff states that "this information should be maintained by the department in an official record and employee file[.]" Id. The Court construes this motion to seek (a) any grievances or complaints filed against each defendant and (b) the disciplinary record of each defendant.

### a.   Grievances and Complaints

Defendants contends that producing grievances and complaints would be unduly burdensome because DOC maintains records of such materials only by the name of the complainant, rather than the respondent.[2] Some courts have denied similar

---

[2] The Court notes that DOC's own affirmative decision to maintain its records in this way is not an adequate basis on which defendants may refuse to provide responses to this type of request in every case. The frequency with which this objection

requests as "overbroad and unduly burdensome" where the relevant agency "does not index grievances, complaints and lawsuits according to the name of the corrections officer named, but does so by the name of the complaining inmate." Diaz v. Goord, No. 04CV06094(CJS)(MWP), 2007 WL 2815735, at *1 (W.D.N.Y. Sept. 25, 2007); see also Melendez v. Falls, No. 06CV06198(CJS)(MWP), 2010 WL 811337, at *4 (W.D.N.Y. Mar. 3, 2010) (the Court denied plaintiff's motion to compel "all grievances filed over a four-year period complaining about excessive use of force" because the request was "overbroad and unduly burdensome."); Russell v. Scott, No. 5:20CV00184(GWC)(KJD), 2022 WL 3084339, at *9 (D. Vt. Aug. 3, 2022) (denying plaintiff's motion to compel because plaintiff had "not demonstrated that the balancing of relevant factors favors production of the requested documents[]" in light of "the significant burden" of production.).

But the target of this RFP is not the DOC; it is each individual defendant. It is entirely possible that each individual defendant has records of receiving notice of a complaint or grievance, copies of such complaints or grievances, or the ability to request copies of such complaints or grievances. While asking DOC itself, as an entity, to conduct

---

is lodged leads the Court to harbor some concern that the system was chosen -- or is at least continued -- with an eye to avoiding disclosures.

this search may be overly burdensome, the defendants have made no representation as to the burden such a search would impose on each of them individually.

The request as written, however, is overbroad, as to both time and subject matter. The Court therefore limits the request as follows, reflecting a two-year period prior to the filing of the instant Complaint, and limiting the requests to the subject matter of the claims permitted to proceed in this action. "[T]he scope of a request [for production] must be limited to the production of items in the responding party's possession, custody, or control." Brockman v. NAES Corp., No. 3:19CV0006(JAM)(RMS), 2019 WL 6606459, at *2 (D. Conn. Dec. 5, 2019) (citations and quotation marks omitted). The Court will not require each defendant to search all DOC records. However, each defendant shall conduct a diligent search of his or her own files, including electronic records, to determine whether that defendant has any of the following materials, and shall provide those materials if they are located:

Defendants Vargas, Peracchio, Boyd and Taylor: **Any formal, written grievances or complaints filed against that defendant, between January 1, 2017, and January 4, 2019, relating to allegations of retaliation.**

Defendants Boyd, Peracchio, Vargas, Wright, Papoosha, Maiga, Santiago, Cuzio, and Erfe: **Any formal, written grievances**

or complaints filed against that defendant, between January 1, 2017, and January 4, 2019, relating to allegations of interference with the free exercise of religion, or failure to recognize a belief system as a religion.

Defendants Cuzio, Papoosha, Santiago, Maiga, Erfe, and Mulligan: **Any formal, written grievances or complaints filed against that defendant, between January 1, 2017, and January 4, 2019, relating to allegations of interference with the free exercise of religion, or failure to recognize a belief system as a religion.**

Defendants Vargas, Wright, Boyd, Taylor, Guadarrama, Erfe and Papoosha: **Any formal, written grievances or complaints filed against that defendant, between January 1, 2017, and January 4, 2019, relating to allegations of unsanitary conditions of confinement.**

Each defendant shall provide a certified response to the relevant requests, indicating that he or she has conducted a diligent search of his or her own files, both paper and electronic, and has provided any responsive materials located. If no responsive materials are within the possession, custody, or control of the defendant, the defendant shall so certify.

### b.  Disciplinary Records

Courts in the Second Circuit have taken varying approaches to the production of disciplinary records. See Johnson v.

Miller, No. 9:20CV00622(LEK)(ATB), 2021 WL 4803647, at *2-4 (N.D.N.Y. Sept. 2, 2021) (collecting cases). Some courts order "the production of documents contained in the personnel file of an officer only if the documents are relevant and involved disciplinary action taken against the officer." Id. at 2 (citation and quotation marks omitted). Others "have articulated a more liberal standard for discovery of the personnel and disciplinary records of defendant Correction Officers in prisoner civil rights cases." Id. The undersigned has previously held: "Generally, in a section 1983 case such as this, disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable." Harnage v. Barrone, No. 3:15CV01035(AWT)(SALM), 2017 WL 3448543, at *6 (D. Conn. Aug. 11, 2017) (citation and quotation marks omitted).

The Court must always consider whether such discovery is proportional to the needs of a particular case.

> [D]iscovery of evidence of prior or subsequent misconduct by Defendants must be determined on a case-by-case basis, considering the need and likely relevance of the discovery as well as the practical difficulties in producing the information. In addition, the courts are mindful not only of the needs of the Plaintiff but also of the particular issues and concerns involving correctional facilities. Ultimately, courts must fashion discovery orders that are not only reasonable, but also promote the efficient, just, and speedy determination of the case.

Hyatt v. Rock, No. 9:15CV00089(DNH)(DJS), 2016 WL 6820378, at *4 (N.D.N.Y. Nov. 18, 2016).

Defendants assert in their memorandum that they have previously "indicated that they had no disciplinary records within DOC." Doc. #142 at 10. Defendants are required to supplement their response to this RFP, as follows: **Each defendant must provide his or her disciplinary record related to the type of claims set forth above, see section III.B.iv., from January 1, 2017, through January 4, 2019.** If no such disciplinary record exists for a defendant, that defendant must provide a certified response to that effect.

v.  Request #3 in the Fourth Set of RFPs

Plaintiff seeks to compel defendants to supplement their response to Request #3, Fourth Set of RFPs. See Doc. #136 at 24. This request seeks "[a]ny logs, lists or other documents relating to search's conducted by Cheshire Intel Unit in RHU or the property room from 3-1-16 to 4-5-19." Doc. #142-3 at 4 (modification removed) (sic). Defendants responded:

> [T]his request is objected to on the grounds that it is overly broad, is not reasonably limited in scope, seeks information that is not relevant to the claims in this lawsuit and is not proportional to the needs of the case. More specifically, this request seeks materials related to any searches conducted by the Cheshire intel unit in RHU or the property room, not just searches related to the plaintiff or the searches that are subject to the claims in this lawsuit. This request is further objected to the extent that it seeks information, documents, or

materials that cannot be disclosed for safety, security, or privacy reasons.

Subject to and without waiving the foregoing objections, incident reports and disciplinary reports, which contain responsive material to this request, were previously produced in the defendants' initial disclosures. <u>See</u> Initial Disclosures at BS 35, 42, 44, 51-53, 59-64, 68, 71-80, 83-84, & 106-107.

<u>Id.</u>

In his motion to compel, plaintiff appears to limit this RFP to documents that pertain to the search of <u>his</u> property. <u>See</u> Doc. #136 at 24 (sic) ("[A]ny history of any defendants interaction with the plaintiff or his property while he was housed at Cheshire is relevant as it elucidates the history[.]").

Plaintiff's request seeks logs for the time period between "3-1-16 and 4-5-19[.]" Doc. #142-3 at 4. The Complaint relates to events allegedly occurring in 2019; plaintiff has not articulated any basis on which he seeks information on the subject of searches of his property from 2016, 2017, and 2018. The time period requested is overbroad; as a result, the Court will limit the RFP to the period of January 1, 2019, through April 5, 2019. <u>Cf.</u> <u>Thompson</u>, 2015 WL 753721, at *3 (limiting time period of RFP).

At least one defendant shall provide a response to this RFP, limited as follows: **Any logs or other documents related to searches of plaintiff's cell or property by the Cheshire Intel**

**Unit or property room staff from January 1, 2019, though April 5, 2019.** If there are no responsive documents, or all responsive documents have already been produced, the responding defendant must provide a certified response to that effect.

      vi.  Request #4 in the Fourth Set of RFPs

Plaintiff seeks to compel defendants to supplement their response to Request #4, Fourth Set of RFPs. See Doc. #136 at 25-26. This request seeks "[a]ny and all logbook entries for south block 6 on 2-27-19 and property room on 3-4-19 at Cheshire C.I." Doc. #142-3 at 5 (sic). Defendants respond, in part:

> [T]his request seeks any and all logbook entries on specific dates, not just entries made related to the plaintiff or to issues or claims in this lawsuit. This request is further objected to the extent that it seeks information, documents, or materials relating to other inmates or to activities or entries that cannot be disclosed for safety, security, or privacy reasons.
>
> Subject to and without waiving the foregoing objections, a copy of the logbook entries for South Block 6 at Cheshire from February 27, 2019 is being produced, which is responsive to this request. See Production at BS 203-205. Entries regarding the plaintiff have been left unredacted. A privilege log is also being provided. Additionally, the undersigned is informed that there are no logbooks for the Cheshire property room.

Id.

Plaintiff's motion seeks additional materials related only to logbooks from the property room. Doc. #136 at 25 ("Defendants have disclosed the logbooks entries for southblock 6 for 2-27-19, no documents were disclosed for the property room[.]").

Defendants have responded that "there are no logbooks for the Cheshire property room." Doc. #142-3 at 5. Plaintiff has not pointed to any evidence that would cause the Court to doubt the truthfulness of this representation. Defendants are not required to supplement their response to this request; however, at least one defendant must provide a certified response, indicating that he or she conducted a diligent inquiry, and providing the results of that inquiry.

### vii. Request #5 in the Fourth Set of RFP

Plaintiff seeks to compel defendants to supplement their response to Request #5, Fourth Set of RFPs. See Doc. #136 at 25-26. This request seeks: "Any and all documents relating to any SRG Aryan Brotherhood activities, investigations, inmate or staff assaults, etc. between March 1, 2016 and 4-5-19, at Cheshire C.I." Doc. #142-3 at 5 (sic). Defendants object to this request:

> [T]his request is objected to on the grounds that it is overly broad, is not reasonably limited in time or scope, seeks information that is not relevant to the claims in this lawsuit and is not proportional to the needs of the case. More specifically, this request seeks any and all documents pertaining to SRG Aryan Brotherhood during a three-year period of time, not just the period of time during the underlying incidents in this case, and also seeks information that is not related to the plaintiff's SRG designation or information pertaining to his SRG activities or investigations. This request is further objected to the extent that it seeks information, documents, or materials that cannot be disclosed for safety, security, or privacy reasons, including documents or materials pertaining to SRGs,

investigations, or other inmate's information.
Id.

Plaintiff contends: "Defendants allege the Plaintiff continued to be involved in SRG activity while at Cheshire C.I., surely the plaintiffs name or a reference to him would have been made in any SRG Aryan Brotherhood activities, investigations, assaults, etc. while he was housed there[.]" Doc. #136 at 25-26 (sic).

Plaintiff bears the burden of demonstrating relevance. See Bagley, 315 F.R.D. at 144. To the extent that plaintiff seeks documents relating to plaintiff's own alleged "SRG Aryan Brotherhood activities, investigations, inmate or staff assaults," such materials are relevant. Doc. #142-3 at 5. However, plaintiff has failed to demonstrate how documents relating to "SRG Aryan Brotherhood activities, investigations, inmate or staff assaults" not involving plaintiff are relevant to any party's claim or defense. Id.

Defendants further object that the request is "not reasonably limited in time." Doc. #142-3 at 5. Having limited the request to materials relating to plaintiff only, the Court finds that the three-year time frame requested is neither overbroad or unduly burdensome.

At least one defendant shall provide a response to this RFP, limited as follows: **Any and all documents relating to**

**alleged Aryan Brotherhood activities, investigations into such activities, or assaults connected to such activities, allegedly involving plaintiff in any way, from March 1, 2016, through April 5, 2019.** If there are no responsive documents, or all responsive documents have already been produced, the responding defendant must provide a certified response to that effect.

      viii.     <u>Request #6 in the Fourth Set of RFPs</u>

Plaintiff seeks to compel defendants to supplement their response to Request #6, Fourth Set of RFPs. <u>See</u> Doc. #136 at 26. This request seeks: "Any and all SRG DR's with identifying information relating to the Aryan Brotherhood between 3-1-16 and 4-5-19 at Cheshire C.I." Doc. #142-3 at 6. Defendants object to this request:

> [T]his request is objected to on the grounds that it is overly broad and burdensome, is not reasonably limited in time or scope, seeks information that is not relevant to the claims in this lawsuit and is not proportional to the needs of the case. More specifically, this request seeks any and all SRG DRs during a three-year period of time, not just the period of time during the underlying incidents in this case, and also seeks information that is not related to the plaintiff's SRG designation or disciplinary report. ...
>
> Subject to and without waiving the foregoing objections, the defendants previously produced in their initial disclosures a disciplinary report received by the plaintiff that is responsive to this request. <u>See</u> Initial Disclosures at BS 106-108.

<u>Id.</u>

Plaintiff contends that the requested materials are

relevant and discoverable because they "would show a history of defendants using deficient information and tactics in violation of directive policies and procedures as the defendants did in this case showing a history of misconduct and bad acts by the defendants[.]" Doc. #136 at 26 (sic).

Plaintiff bears the burden of demonstrating the relevance of the information sought. See Bagley, 315 F.R.D. at 144. To the extent that plaintiff seeks documents relating to plaintiff's own SRG designation, defendants assert that they have already produced such documents. See Doc. #142-3 at 6. To the extent that plaintiff seeks documents that have no relation to plaintiff's SRG designation the request does not seek relevant information.

At least one defendant shall provide a response to this RFP, limited as follows: **Any and all SRG Disciplinary Reports relating to plaintiff's alleged connection to or involvement with the Aryan Brotherhood or its affiliated groups from March 1, 2016, through April 5, 2019.** If there are no responsive documents, or all responsive documents have already been produced, the responding defendant must provide a certified response to that effect.

ix.   Request #7 in the Fourth Set of RFPs

Plaintiff seeks to compel defendants to supplement their response to Request #7, Fourth Set of RFPs. See Doc. #136 at 27.

This request seeks: "Any and all documents relating to SRG identifiers from when the Aryan Brotherhood was designated an SRG to the present, what identifiers were removed, what identifiers were added and why." Doc. #142-3 at 6. Defendants object to this request:

> [T]his request is objected to on the grounds that it is overly broad and burdensome, is not reasonably limited in time or scope, seeks information that is not relevant to the claims in this lawsuit and is not proportional to the needs of the case. More specifically, this request seeks any and all SRG identifies but does not provide a timeframe to reasonably limit the scope of this request, nor does this request reasonably limit the scope to documents, materials, or identifies used to designate the plaintiff in this case. Additionally, this is an improper production request as it seeks a response that includes and explanation as to certain aspects of the requested materials, which is not appropriate in a request for production, which seeks documents and other tangible items, not a defendants explanation or rationale for something. Finally, this request is objected to on safety and security grounds to the extent it seeks materials or symbols of recognized SRGs.

Id. at 6-7 (sic).

The Court has ordered defendants to provide a supplemental response to plaintiff's RFP seeking a list of symbols identified by DOC as being associated with the Aryan Brotherhood. See supra at section III.B.iii. This RFP adds only the request for documents indicating the addition or removal of such identifiers.

At least one defendant shall provide a response to this RFP, limited as follows: **Any and all documents showing changes**

**to the list of symbols that DOC has identified as being associated with the Aryan Brotherhood, and why the changes were made, from March 1, 2016, through April 5, 2019.** Any symbols may be described, and the actual depictions redacted, if possession of materials bearing such symbols is prohibited in DOC facilities, and plaintiff shall be provided an opportunity to review the unredacted list. If there are no such identified symbols, the responding defendant must provide a certified response to that effect.

**IV.   CONCLUSION**

For the reasons stated, plaintiff's Renewed Motion to Compel [**Doc. #136**] is **GRANTED, in part, and DENIED, in part.** Defendants shall supplement their discovery responses, in full compliance with this Order, on or before February 6, 2023.

It is so ordered at Bridgeport, Connecticut, this 6th day of January, 2023.

_/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES CIRCUIT JUDGE
Sitting by Designation
