**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RICHARD NAU,<br>　　　Plaintiff, | :<br>:<br>: | |
| v. | : | 3:21cv19 (OAW) |
| PAPOOSHA, et al.,<br>　　　Defendants. | :<br>:<br>: | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS ACTION** is before the court upon Defendants' First Motion for Summary Judgment Limited to the Issue of Exhaustion of Administrative Remedies and memorandum in support thereof (together "Motion").[1] *See* ECF Nos. 141 and 141-1. The court has reviewed the Motion, Defendants' Statement of Facts ("Defendants' SOF"), *see* ECF No. 141-2, Plaintiff's objection, which includes his Local Rule 56(a)(2) Statement of Facts and exhibits thereto, *see* ECF No. 155, Defendants' Reply in support of the Motion, *see* ECF No. 157,[2] and the record in this matter, and is thoroughly advised in the premises. After careful review, the Motion is **GRANTED in part and is DENIED in part**.

**I.　FACTUAL BACKGROUND[3]**

Mr. Nau is a sentenced prisoner who has been in the custody of the Connecticut Department of Correction ("DOC") since 2013. ECF No. 155 at 1–2.[4] Shortly after his

---

[1] In an order dated July 7, 2022, the court granted Defendants' Motion to Bifurcate Summary Judgment Practice re: Exhaustion. *See* ECF No. 135.
[2] Plaintiff also submitted a sur-reply, which the court did not accept as it was improperly filed. *See* ECF Nos. 158 and 159.
[3] This factual background is included to provide context for the procedural arguments presented herein. The facts in this section are taken from Plaintiff's opposition brief, and as such are treated as allegations.
[4] The court refers to Plaintiff's pagination when citing to the opposition brief.

1

incarceration, he was given a Security Risk Group ("SRG") designation. *Id.* at 2. After completing SRG programming, he was placed at Cheshire Correctional Institution in 2016. *Id.* Initially, he was permitted to possess literature and paraphernalia associated with his practice of the Asatru faith.[5] *Id.*

In February 2019, Plaintiff was accused of a disciplinary violation.[6] *Id.* He was instructed to remove his religious pendants, which were placed in storage along with other Asatru paraphernalia, and he was removed to the Restrictive Housing Unit ("RHU"). *Id.* At the time, DOC did not identify any of the items in storage as contraband. *Id.* at 3.

A few days later, Plaintiff was brought from the RHU to appear before Defendant Vargas (a disciplinary report investigator), and he proclaimed his innocence of the alleged violation. *Id.* at 2. Defendant Vargas became angry when Plaintiff tried to identify Defendant Peracchio, a correctional officer, as a witness, and escorted Plaintiff back to the RHU. *Id.* at 3. On the walk back to the RHU, Defendant Vargas told Plaintiff that officers would find something among Plaintiff's stored property that would keep him in the RHU for a longer period, in retaliation for calling a correctional officer as a witness. *Id.*

Defendants Peracchio and Vargas searched the property Plaintiff had placed in storage and issued disciplinary reports for possession of contraband and for possession of SRG-related items. *Id.* The allegation of possession of contraband was dismissed, *id.* at 4, but despite Plaintiff's repeated denial of any affiliation with an SRG and his affirmation that his practice of Asatru was sincere, Defendant Papoosha told Plaintiff that

---

[5] In the Amended Complaint, Plaintiff describes his practice of the Asatru faith as including the observance of the Nine Noble Virtues and the wearing of ancient Norse symbols. ECF No. 37 at ¶ 50.
[6] While the fact that the allegation was made is relevant to this action, the particulars thereof are not, and so the court will not describe the allegation further.

2

DOC does not recognize Asatru as a religion, and that anyone practicing Asatru would be deemed a member of the Aryan Brotherhood.  *Id.*

Plaintiff raised these, and other procedural arguments at a hearing on the allegation of possession of SRG paraphernalia.  *Id.* at 5.  Nevertheless, Plaintiff was adjudged guilty of the infraction.  *Id.*  Plaintiff was transferred to a different facility, where he was permitted to reacquire the items that had been the basis for his removal from Cheshire.  ECF No. 37 at ¶¶ 79–80.  Plaintiff's redesignation as a member of an SRG will lead to a lengthy stay in a far more restrictive facility.  *Id.* at ¶ 81.

While awaiting transfer to his new facility, Plaintiff apparently continued to be housed in the RHU, on "transfer detention."  ECF No. 155 at 6.  Plaintiff alleges that his cell in the RHU was covered with a chemical agent and bodily fluids, that feces and sewer water dripped from the vents, and that the cell was kept very cold.  *Id.* at 5–6.  Despite this, he was denied warm clothing.  *Id.*  Plaintiff asserts that he lived in this condition for 37 days, 23 of which were time in transfer detention, which far exceeded the maximum permitted by DOC policies.  *Id.*

Plaintiff commenced this action on January 4, 2021, *see* ECF No. 1, and amended his complaint on August 19, 2023, *see* ECF No. 37.  After initial review of the operative Amended Complaint, the court permitted this action to proceed on the following claims:

> (1) a First Amendment retaliation against Correction Officers Vargas and Peracchio, Lieutenant Boyd, and Captain Taylor, related to Plaintiff's allegations of a retaliatory search and disciplinary reports charging possession of contraband and SRG status.
>
> (2) a First Amendment Free Exercise violation against Lieutenant Boyd for ordering Plaintiff to remove his religious pendants.

(3) a First Amendment Free Exercise violation against Correction Officers Peracchio, Vargas, and Wright, Lieutenants Boyd and Cuzio, Captain Papoosha, Director Maiga, Director Santiago, and Warden Erfe, for designating Plaintiff as a SRG inmate based on his Asatru beliefs.

(4) a First Amendment Establishment Clause violation against Captain Papoosha, for his failure to recognize the Asatru faith.

(5) a Fourteenth Amendment procedural due process violation arising from Plaintiff's SRG designation and placement in a new facility against Lieutenant Cuzio, Captain Papoosha, Director Santiago, Direct Maiga, Warden Erfe, and District Administrator Mulligan.

(6) an Eighth Amendment conditions of confinement violation against Correction Officers Vargas and Wright, Lieutenant Boyd, Captain Taylor, Deputy Warden Guadarrama, Warden Erfe, and Captain Papoosha related to the time Plaintiff spent in RHU at Cheshire in a cell that was cold; covered in a chemical agent and bodily fluids; and had sewer water and feces dripping from the ceiling.

(7) a state law intentional infliction of emotional distress against Correction Officers Wright, Vargas, and Peracchio, Lieutenants Cuzio and Boyd, and Captains Taylor and Papoosha.

ECF No. 52 at 21-22.[7]

## II. ADMINISTRATIVE BACKGROUND

### A. Administrative Remedies Under Administrative Directive 9.6[8]

Administrative Directive 9.6 states that the DOC shall "provide a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." A.D. 9.6(1).

---

[7] Defendants' Motion for Summary Judgment indicates the proper spelling of Defendant Maiga's name. ECF No. 141 at 1.

[8] This discussion will reference the DOC administrative directive Defendants have submitted as an exhibit, which is the version of the directive relevant to Plaintiff's remedy exhaustion for his claims in this matter. *See* ECF No. 141-9. Since that time, DOC has issued an updated Directive 9.6 effective April 30, 2021, which is publicly available on the DOC's website, but which will not be referenced herein.

Administrative Directive 9.6(6) provides the grievance procedure for "any issue relating to policy and procedure, and compliance with established provisions." A.D. 9.6(1).[9] It requires an aggrieved inmate to "submit a written request via CN 9601, Inmate Request Form." A.D. 9.6(6)(A). The grievance must be filed within thirty calendar days of the date of the events giving rise to the grievance and should include a copy of the response to the Inmate Request Form or explain why the response is not attached. A.D. 9.6(6)(C).

The Unit Administrator then performs a Level 1 review of the grievance and responds to it in writing within thirty business days of receiving it. *See* A.D. 9.6(6)(I). A grievance may be rejected, denied, compromised, upheld, or withdrawn. A.D. 9.6(6)(D). The inmate usually may appeal the Unit Administrator's disposition of the grievance, with some exceptions that are not relevant here. A.D. 9.6(6)(G), (I) & (K).

The appeal receives a Level 2 review. A.D. 9.6(6)(K). An appeal for Level 2 review must be filed within five calendar days of the inmate's receipt of the result of the Level 1 review. *See id.* Level 2 reviews are performed by the appropriate District Administrator. A.D. 9.6(6)(K)(1). The District Administrator's Level 2 response must be completed within thirty business days of receipt of the appeal and must include a statement indicating the reasoning behind the Level 2 determination. A.D. 9.6(6)(K).

A Level 2 determination then may be appealed for Level 3 review. A.D. 9.6(6)(L). Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, and appeals for Level 2 review to which the District Administrator has not issued a timely response. *Id.* An appeal for Level 3 review must be filed within

---

[9] In the interest of efficiency, only those points of procedure relevant to this action will be described herein. It should be noted that this is not a comprehensive description of the grievance process.

five calendar days from the inmate's receipt of the determination of the Level 2 review. *Id.* A Level 3 Appeal is reviewed by the Commissioner or their designee. A.D. 9.6(6)(L).

### B. SRG Appeal Procedures

A claim related to an inmate's designation as a Security Risk Group inmate is subject to the grievance procedures set forth in Directive 9.6(9). *See* A.D. 9.6(4)(D); 9.6(9). Administrative Directive 9.6(9) provides that an inmate or detainee may appeal the decision to designate them as a member of an SRG, by completing and filing an Inmate Administrative Remedy Form (CN 9602) within fifteen calendar days of the notice of designation. *Id.* The appropriate District Administrator shall respond in writing within fifteen business days of their receipt of the appeal. *Id.* The decision of the District Administrator is final, and there is no other avenue to appeal their decision. *Id.*

### C. Plaintiff's Administrative Remedies Under Directive 9.6[10]

Plaintiff is familiar with the DOC grievance procedures under Directive 9.6, and he has filed three grievances under Directive 9.6(6) and one appeal of his SRG designation under Directive 9.6(9). ECF No. 141-2 at ¶¶ 20-22; ECF No. 155 at ¶¶ 20–22.[11] The record shows the following undisputed facts relevant to Plaintiff's administrative remedies.

---

[10] Because Plaintiff generally does not object to the relevant facts in Defendants' SOF, and because his Local Rule 56(a)(2) Statement does not reproduce the facts alleged in Defendants' SOF, the court primarily will cite to Defendants' SOF in this section.

[11] Plaintiff objects to much of Defendants' SOF on the ground that he does not have the full transcripts referenced therein, but generally he does not deny the factual allegations. The court has reviewed the depositions cited in Defendants' SOF, and concludes that the provided excerpts give a full and accurate understanding of the relevant testimony to support the Defendants' undisputed facts. Plaintiff also claims that the court reporter had a "financial interest" in the matter. ECF No. 155 at p. 19 of the Local Rule 56(a)(2) Statement, ¶ 59. This unsubstantiated claim provides no basis to reject his sworn deposition testimony. A party is bound by the facts to which they testify in a deposition, and cannot defeat a motion for summary judgment by claiming a revised version of events. *Perma Research & Dev. Co. v. Singer Co.*,

### *a. Appeal of the SRG Designation*

Plaintiff filed an appeal dated March 22, 2019, under Directive 9.6(9) for his SRG designation ("SRG Appeal"). ECF No. 141-2 at ¶ 24; ECF No. 141-5. In the SRG Appeal, Plaintiff complained of several alleged procedural defects from his hearing, including that he could not present certain evidence, that the items used to justify the SRG designation had been approved by the Director of Religious Services, and that certain items used to designate him as an SRG-affiliated inmate were not found in his possession. ECF No. 141-2 at ¶ 25; ECF No. 141-5 at 3-4. Defendant Erfe upheld Plaintiff's SRG designation, stating, "A review of the appeal documents indicates that the Hearing Officer's finding is reasonable based on the evidence provided by the Cheshire Intelligence unit, to include outgoing letters authored by you that contained SRG identifiers, 'The Black Book' found that contained Thule Society vow and numerous other items that would affiliate you with the SRG Aryan Brotherhood. This information does support your designation as a member of the Aryan Brotherhood." ECF No. 141-10.

As noted above, this determination was final. There is no additional appeal process for SRG designations.

### *b. Grievance Regarding Confinement in the RHU*

In Level 1 Grievance #125-19-237, dated April 2, 2019, Plaintiff complained about being confined in the RHU for longer than permitted under DOC policy. ("RHU Grievance"). ECF No. 141-2 at ¶ 30; ECF No. 141-6. However, apparently, he was

---

410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

7

removed to a different location shortly after filing this grievance, because it was rejected on May 15, 2019, noting that Plaintiff was transferred on April 5, 2019. ECF No. 141-6. Plaintiff did not further appeal rejection of the RHU Grievance. ECF No. 141-2 at ¶ 36.[12]

### c. Grievance Regarding SRG Appeal

Plaintiff filed another Level 1 grievance (Grievance #125-19-264) dated May 5, 2019, asserting a due process challenge to Defendant Erfe's ruling on his SRG appeal ("SRG Appeal Grievance") because Defendant Erfe, as the warden at Cheshire, was involved with Plaintiff's SRG disciplinary proceedings and designation.[13] ECF No. 141-2 at ¶ 38; ECF No. 141-7. Plaintiff essentially argues this was a conflict of interest, asserting that he had verbally apprised Defendant Erfe of the several improprieties he was experiencing at Cheshire (including the characterization of his religious items as SRG paraphernalia, harassment by prison staff, his prolonged confinement in the RHU, and the unsanitary conditions of his housing), and that Defendant Erfe allegedly committed to investigate these issues. ECF No. 141-7. Further, Plaintiff asserted that Defendant Erfe was involved in initiating the SRG designation. *Id.* Thus, Plaintiff objected to someone adjudicating the SRG Appeal when they also were involved in its underlying investigation. *Id.* This Level 1 grievance was denied on June 7, 2019, for the stated reasons that Plaintiff's "guilty finding was concluded by DHO Lieutenant Cuzio who is an impartial adjudicator." *Id.*

---

[12] Plaintiff objects to this fact, arguing that the rejection indicates that he had exhausted his administrative remedies. But the form clearly shows that the appropriate box is not checked, and that the mark near to that box is a signature. *See* ECF No. 141-6. Thus, the court rejects this argument.

[13] Defendant Erfe became the Unit Administrator between Plaintiff's SRG redesignation and his appeal thereof. ECF No. 141-7.

8

On June 10, 2019, Plaintiff filed his Level 2 grievance to appeal this denial. ECF No. 141-2 at ¶ 45; ECF No. 141-7. This appeal was denied on June 25, 2019, for the stated reason that "[d]ue process was rendered by DHO Lieutenant Cuzio an impartial adjudicator[.]" *Id.*

Plaintiff filed a Level 3 appeal from the denial of his Level 2 appeal, but it was returned to him on grounds that it did not meet the criteria laid out in Directive 9.6(6)(L). ECF No. 141-2 at 49; ECF No. 141-7 at 6; ECF No. 141-9. Specifically, Directive 9.6(6)(L) only permits Level 3 review of grievances that challenge departmental policies or the integrity of the grievance procedure.[14] ECF No. 141-9. This grievance did neither.

### d. Grievance Regarding Fourteenth Amendment

Plaintiff filed his Level 1 Grievance #125-19-275, dated May 8, 2019, to complain of Fourteenth Amendment due process and equal protection violations in connection with the retaliatory search of his property while it was in storage ("Fourteenth Amendment Grievance"). ECF No. 141-2 at ¶¶ 50-51; ECF No. 141-8. He asked for his continued confinement in RHU to be stopped and for his SRG designation to be removed, asserting that the search was unreasonable and that he was unable to possess any property because he was housed in RHU at the time of the search. ECF No. 141-8. On May 30, 2019, this grievance was rejected as untimely under Directive 9.6(6)(c), which requires a grievance to be filed within 30 calendar days of the occurrence giving rise to the grievance or the discovery of the cause of the grievance. *Id.* Plaintiff testified in a deposition that

---

[14] Level 3 reviews also may result in denial if the appeal is not timely, but that is not the case here.

9

he was aware of the March 4, 2019, search of his property on that same day.  ECF No. 141-2 at ¶ 56; ECF No. 141-4 at 50:19-25.

On June 3, 2019, Plaintiff filed a Level 2 appeal of the denial of the Fourteenth Amendment Grievance.  ECF No. 141-2 at ¶ 58; ECF No. 141-8 at 4.  This Level 2 appeal was rejected for the stated reason that "[g]rievances must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance[,]" but Plaintiff "filed [his] grievance dated 5/8/19, beyond 30 calendar days."  ECF No. 141-2 at ¶ 58.

Plaintiff made no further appeal of the denial of his Fourteenth Amendment Grievance.

## II.  STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*  This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).  Put another way, "'[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party,' summary

judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002)).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## III. DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997e *et seq.*, for all of his claims except his Fourteenth Amendment procedural due process claim.[15] Plaintiff argues that he did exhaust his administrative remedies prior to filing this action, or, in the alternative, he argues that his administrative remedies were unavailable.

The PLRA, which governs actions brought by prison inmates, requires a prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. 42 US.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), and "defendants have the burden

---

[15] Defendants concede that Plaintiff's SRG Appeal exhausted his Fourteenth Amendment procedural due process claim. ECF No. 141-1 at 11.

of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment," *Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012). Although a defendant bears the burden on this affirmative defense at all times, the plaintiff still may have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once a defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability).

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks, *see Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). Similarly, it is not sufficient for a plaintiff to exhaust his administrative remedies after filing his complaint; a plaintiff must exhaust his administrative remedies prior to filing the action

in federal court.  *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*; *Porter*, 534 U.S. 516 at 524–25.

An inmate's failure to exhaust administrative remedies is excusable only if the remedies are in fact unavailable, even if they are "officially on the books."  *See Ross v. Blake*, 578 U.S. 632, 642-643 (2016).  This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* (quoting *Booth*, 532 U.S. at 738).  The Supreme Court of the United States has established three circumstances under which an administrative procedure is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–644.  "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

### A.   State Law Claim

It is well established that the PLRA's exhaustion requirement applies only to federal claims.  *Santana v. Quiros*, No. 3:21-CV-376 (SVN), 2022 WL 16706959, at *8 (D. Conn. Nov. 4, 2022); *Alston v. Daniels*, No. 3:15-CV-669 (CSH), 2015 WL 7257896, at *10 (D. Conn. Nov. 17, 2015) (noting that the PLRA's exhaustion requirement "does

not apply to state law claims"); *Nunez v. Goord*, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) ("As [the plaintiff's] cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement."). Thus, the court must deny the Motion as to Plaintiff's state law claim for intentional infliction of emotional distress.

### B. Federal Claims

Plaintiff must have exhausted his administrative remedies as to each of his remaining claims for relief. *See Stimpson v. Comm'r of Correction*, No. 3:16-CV-00520 (SRU), 2017 WL 3841646, at *3 (D. Conn. Sept. 1, 2017) (stating that the plaintiff "was required to exhaust all available administrative remedies with respect to each claim before filing a civil rights complaint or amended complaint in federal court."). This means, in accordance with DOC policy, that he must have filed a grievance and have followed all procedures for successive review as to each alleged violation.

It is apparent that none of the four grievances described *supra* alleges any violation of Plaintiff's religious freedom. The only grievance that even mentions Plaintiff's faith is the SRG Appeal, but the complaint there clearly was of a procedural nature, not a constitutional nature. Thus, the Motion must be granted as to all of Plaintiff's First Amendment claims.

This leaves only Plaintiff's Eighth Amendment claim. But here again, none of the grievances described herein complains about the unsanitary conditions in the RHU. The RHU Grievance specifically complains about the duration of Plaintiff's stay in transfer detention, not the conditions of his RHU cell. And his SRG Appeal Grievance notes that

he told Defendant Erfe about the conditions of his cell, but he only employs this alleged fact as evidence that Defendant Erfe was involved in the underlying investigation into Plaintiff's conduct, not as an independent basis for his grievance. Accordingly, the Motion must be granted as to the Eighth Amendment claim as well.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff first asserts that all of his "claims presented . . . are inherently subsumed by [his] filing of the [SRG] Appeal[.]" ECF No. 155 at 18-19. But a litigant must have exhausted administrative remedies as to each distinct claim. The Supreme Court has explained:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).

*Woodford*, 548 U.S. at 90 (citation and internal quotation marks omitted). Thus, a prisoner must allege facts sufficient to alert corrections officials "to the nature of the claim," and "provide enough information about the conduct" at issue "to allow prison officials to take appropriate responsive measures." *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004) (internal quotation marks omitted).

The court cannot find that the SRG Appeal addressed Plaintiff's First and Eighth Amendment claims such that prison officials would have been alerted to the need to respond to more than just the SRG designation itself. The arguments raised in the SRG Appeal are, again, procedural in nature, not constitutional. There is no hint that the

confiscation of the Asatru articles violates his right to free exercise of religion, or even any mention of his Asatru faith in the first instance. The only allusion to religion is reference to the Director of Religious Services, and it is used to make the point that Plaintiff's pendants had been approved by prison officials. The entire SRG Appeal appears to build toward reversing the SRG designation, not safeguarding any religious practice. Thus, the SRG Appeal cannot be read to encompass any of Plaintiff's First or Eighth Amendment claims.

Plaintiff argues next that his SRG Appeal Grievance satisfied the exhaustion requirement. ECF No. 155 at 19–20. The court grants that Plaintiff did apply for all available levels of successive review for this grievance, but the grievance itself is unrelated to Plaintiff's First and Eighth Amendment claims.[16] Notably, the SRG Appeal Grievance included no mention of his asserted religious deprivations in violation of the First Amendment. Nor does it specify that the search of his personal property and the disciplinary charges were retaliatory in nature. *See Gomez v. Dep't of Correction*, No. 3:20-CV-958 (JAM), 2022 WL 788261, at *5 (D. Conn. Mar. 15, 2022) (explaining that a grievance that fails to identify a prison official's retaliatory reason for an adverse action is not adequate to satisfy the PLRA with respect to a court action alleging a claim for First Amendment retaliation); *Munger v. Cahill*, 792 F. App'x 110, 112 (2d Cir. 2020) ("But

---

[16] To the extent that Plaintiff's grievance indicates that he verbally informed Defendant Erfe of his unsanitary conditions in the RHU, the court notes that verbal complaints that may put prison officials on notice of Plaintiff's grievance do not satisfy the PLRA exhaustion requirement. *See Macias*, 495 F.3d at 44; *see also Vidro v. Erfe*, No. 3:18-CV-00567 (CSH), 2019 WL 4738896, at *5 (D. Conn. Sept. 26, 2019) ("Even if the verbal complaints had put prison officials on notice of the subject matter of Plaintiff's grievance, notice, in and of itself, cannot satisfy the exhaustion requirement.").

Munger did not specify that his medication was taken away because of a lie a nurse told in retaliation against him for an earlier complaint ... [b]ecause Munger's grievances did not mention retaliation, Appellees were not on notice of Munger's complaint of retaliation by Nurse White."); *Baltas v. Rivera*, 2020 WL 6199821 at *10 (D. Conn. 2020) (none of plaintiff's prior grievances had "alerted prison officials that the plaintiff was complaining that [defendants] had taken some action against him ... because he had previously filed a grievance or engaged in other First Amendment-protected activity ... [a]ccordingly, the plaintiff has failed to exhaust his First Amendment retaliation claim"); *accord Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) ("Retaliation is a separate claim, and therefore must be separately grieved."). Thus, here again, Plaintiff's SRG Appeal Grievance did not match the First Amendment claims presented here such that the grievance could satisfy the exhaustion requirement for any of those claims.

Nor does it serve to exhaust Plaintiff's Eighth Amendment claims. Although the SRG Appeal Grievance referred to "severe conditions of confinement" and his conversations with Defendant Erfe about his unsanitary conditions, it is doubtful that these references could satisfy the exhaustion requirement. Even assuming they were sufficient to implicate Plaintiff's Eighth Amendment claim, though, the record shows that Plaintiff's Level 2 appeal addressed only his complaint about Defendant Erfe's conflict of interest in adjudicating his SRG Appeal, not the state of hi RHU cell. *See* ECF No. 141-1 at 5. Thus, to the extent his Level 1 grievance raised issues about his unsanitary confinement conditions, Plaintiff did not properly appeal those issues.

17

Furthermore, Plaintiff could not have exhausted his retaliation, conditions of confinement, and religious deprivation claims through the SRG Appeal Grievance for the additional reason that Directive 9.6 does not permit an inmate to raise multiple requests for administrative remedies in one grievance.[17] *See Cosby v. Tawana*, No. 3:19-CV-401 (MPS), 2020 WL 4284561, at *5 (D. Conn. July 27, 2020) (noting multiple requests were "not in proper form as each request for administrative remedy must be submitted on a separate form.").

The Fourteenth Amendment Grievance also was insufficient to exhaust Plaintiff's First or Eighth Amendment claims in this matter. Although Plaintiff argues that Fourteenth Amendment Grievance was filed within thirty days of his becoming aware of the search, the record clearly contradicts this assertion. Plaintiff admitted in deposition testimony that he was aware of the search and removal of his property when he received his contraband disciplinary report on March 4, 2019. ECF No 141-2 at ¶ 56; ECF No. 141-4 at 50:19-21. In addition, the record reflects that he received a disciplinary report for SRG affiliation on March 11, 2019, that informed him about items with Aryan Brotherhood identifiers confiscated from his property as a result of the search on March 4, 2019. ECF No. 155 at 3.[18] Plaintiff even admits speaking to Warden Erfe about the search on March 15, 2019. ECF No. 155 at 5. Thus, Plaintiff's submission of the Fourteenth Amendment

---

[17] Plaintiff argues that his SRG Appeal Grievance included additional claims that were raised in five attached inmate requests. ECF No. 155, Plaintiff's Local Rule 56(a)(2) Statement of Facts at 13, ¶ 39; *see also* pp. 138-142. However, these requests did not satisfy exhaustion in compliance with the PLRA. Inmate requests provide only informal notice, which is not sufficient to establish exhaustion. *See Macias*, 495 F. 3d at 43. In addition, Plaintiff's inclusion of multiple claims in one grievance contravenes *Woodford*'s direction that he "us[e] all of the steps" and "do[] so properly," as Directive 9.6 permits only one claim in a grievance. *See Woodford*, 548 U.S. at 90-91; A.D. 9.6(5)(E)(2).

[18] Plaintiff attached the disciplinary report to his opposition at CM/ECF page 130. The report states that the SRG-related property was confiscated.

18

Grievance in May 2019 was well beyond the thirty-day deadline. Furthermore, even if it were timely, the Fourteenth Amendment Grievance did not sufficiently alert DOC officials to his complaints concerning religious deprivations and unsanitary conditions of confinement; nor did it specify that the property search and disciplinary charges were retaliatory in nature. ECF No. 141-8.

In his deposition, Plaintiff indicated that there were no other grievances than his SRG Appeal and his three other grievances filed under Directive 9.6(6), and that there were no other grievances that he was "unable to file" relevant to his claims in this action. *See* ECF No. 141-4 at 101:22–25; 102:17–19; 104:2–6. Thus, the court concludes that there is no genuine issue of fact that Plaintiff failed to exhaust his administrative remedies for his First and Eighth Amendment claims prior to filing this action.

Nevertheless, Plaintiff argues that he should be excused from PLRA exhaustion due to the unavailability of his administrative remedies. Plaintiff contends that he was "impeded" from "meaningful review" because Defendant Erfe adjudicated his SRG Appeal. ECF No. 155 at 23–27. But the SRG Appeal is the grievance that *does* reflect adequate exhaustion. Defendants even concede that Plaintiff's SRG Appeal serves to exhaust his Fourteenth Amendment procedural due process claims. And even assuming Plaintiff was denied "meaningful review" of the SRG Appeal, that could not serve to render administrative remedies unavailable with respect to any of his other claims.

Plaintiff next argues that his lack of access to a CN 61002 Form (an Inmate Property Status and Receipt form, *see* ECF No. 155 at 24) prevented him from exhausting his First Amendment free exercise claims. ECF No. 155 at 27–29. As no provision of

19

Directive 9.6 requires an inmate to submit his CN 61002 Form, Plaintiff's asserted lack of access to his CN 61002 Form did not render his administrative remedies unavailable.

In sum, Plaintiff has failed to raise any inference that his administrative remedies under Directive 9.6 were unavailable as contemplated by *Ross*. Accordingly, the court must grant the Motion with respect to all Plaintiff's claims of First and Eighth Amendment violations.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, ECF No. 141, is **GRANTED in part and is DENIED in part.**

    a. The Motion is GRANTED as to Plaintiff's claims of First and Eighth Amendment violations.

    b. The Motion is DENIED as to the state law claim of intentional infliction of emotional distress.

    c. Defendants may file a motion for summary judgment on the merits of Plaintiff's remaining claims on or before **January 29, 2024.**

2. Given this ruling, Plaintiff's Motion for Expedited Ruling, ECF No. 173, and his Motion for Status Conference, ECF No. 176, are **DENIED as moot.**

IT IS SO ORDERED at Hartford, Connecticut, this 30th day of November, 2023.

_____/s/_____
Omar A. Williams
United States District Judge