UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD NAU, <br>     Plaintiff, | : <br> : <br> : |
| v. | :     3:21-cv-19 (OAW) |
| | : |
| DANIEL PAPOOSHA, et al., <br>     Defendants. | : <br> : |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the court upon Defendants' Motion for Summary Judgment and memorandum in support thereof (together "Motion").[1] *See* ECF 178 and 178-1. The court has reviewed the Motion, Defendants' Statement of Facts, *see* ECF No. 178-2, Plaintiff's responses thereto, *see* ECF No. 196, Defendants' Reply in support of the Motion, *see* ECF No. 198,[2] all supporting exhibits, and the record in this matter, and is thoroughly advised in the premises. After careful review, the Motion is **GRANTED**.

**I.    BACKGROUND[3]**

At all times relevant to this action, Plaintiff Richard Nau was a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"), housed at Cheshire

---

[1] The court permitted Defendants to submit successive motions for summary judgment, the first relating to the issue of exhaustion. ECF No. 135. The instant motion argues the merits of all remaining claims.
[2] The court acknowledges that Plaintiff's responsive brief contains a motion for extension of time. It is not clear whether this was included in error, as the court finds the response clear, comprehensive, and well-drafted, so there is no apparent deficiency to correct or information to add. Further, no addendum to the response ever was filed. Accordingly, the court finds any request for more time to be moot.
[3] Unless otherwise noted, all facts are taken from Plaintiff's responses to Defendants' Statement of Facts and his additional facts thereto. ECF No. 196.

1

Correctional Institution ("Cheshire"). In February 2019, the Cheshire Intelligence Unit ("IU") began investigating Plaintiff's potential affiliation with the Aryan Brotherhood, which DOC recognizes as a Security Risk Group ("SRG").

DOC defines an SRG as a "group of inmates, designated by the Commissioner, possessing common characteristics, which serve to distinguish them from other inmates or groups of inmates and which as a discrete entity, jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility." *See* ECF No. 196-1 at 64; [4] A.D. 9.5(3)(T) (effective 2/1/2016). [5] "Security Risk Group Affiliation" is recognized as an infraction by the DOC, and is defined as "[p]ossessing or displaying any materials, symbols, colors or pictures of any identified security risk group; or behaviors uniquely or clearly associated with a security risk group." *Id.* at 72; A.D. 9.5(12)(Z) (effective 2/1/2016). Inmates affiliated with an SRG are subjected to stricter prison conditions than those without such an affiliation. *Id.* at 177; A.D. 6.14(11) (effective 6/7/2013). For example, such affiliates are subject to being housed at higher-security facilities, they are enrolled in an SRG program, and they are prohibited from earning certain credits toward the satisfaction of their sentence. *Id.*

In March 2019, as part of its investigation into Plaintiff, the IU conducted a search of Plaintiff's property (which at that time was housed in a property room while Plaintiff himself was in restricted housing), and discovered several items that it considered to be

---

[4] The court cites to Plaintiff's opposition and exhibits thereto by the pagination assigned by the electronic case filing system.
[5] This version of Administrative Directive 9.5 was the version that was effective during the relevant period. Defendants' Local Rule 56(a) statement cites to a superseding version of this directive, which went into effect on October 1, 2019, and thus is not relevant to this discussion.

2

Aryan Brotherhood identifiers. S*ee* ECF No. 178-6 at 6–7.[6]  It also reviewed Plaintiff's correspondence and discovered letters sent by Plaintiff which contained racist comments and other Aryan Brotherhood identifiers.  *Id.* at 8.

Plaintiff was issued a disciplinary report ("DR") for the offense of SRG Affiliation on March 11, 2019.  The DR described the incriminating materials found during the IU's investigation, including, *inter alia*:[7] (1)"The Black Book," which at its center contained a note (containing a coded alphabet and a racist quote from John Wilkes Booth[8]) and a red "Thule Society Vow" card (which displayed a swastika and averred, "The signer hereby swears to the best of his knowledge and belief that no Jewish or colored blood flows in either his or in his wife's veins, and that among their ancestors are no members of the colored races."); (2) "The Nine Noble Virtues," which on numerous occasions uses the word "kindred," a purportedly common reference to members of the Aryan Brotherhood; (3) a plastic coffee mug displaying several anti-Semitic and racist phrases and pictures (*inter alia,* "White Working Class," "SS,"[9] a picture of Adolph Hitler with the word "Weiss,"[10] "White Rage," and Confederate flags); (4) magazine cutouts of the Confederate flag; (5) a necklace containing the Celtic Cross and Thor's Hammer (also

---

[6] Citations to this exhibit refer to the pagination assigned by the electronic filing system.
[7] Plaintiff disputes that any of the following shows an affiliation with the Aryan Brotherhood, but he does not dispute that they all belonged to him, and they all were as described.
[8] The DR reproduces the quote as follows: "This country was formed for the white not for the black man. And looking upon African slavery from the same stand point [sic], as held by those Noble framers of our constitution, I for one, have ever considered it, one of the greatest blessings (both for themselves and us) that God ever Bestowed upon a favored nation."  ECF No. 178-6 at 6.
[9] The IU interpreted this as a Nazi symbol for the Schutzstaffel, a military arm of Hitler's Third Reich.
[10] The IU took this as a reference to Martin Weiss, who is noted in the DR as a Nazi official and commander of a notorious killing squad.

3

purportedly common Aryan Brotherhood identifiers), and (6) an "Honor Loyalty Respect" drawing with Norse rune symbols (which the DR connects to the Third Reich).   Id. at 7.

The DR also described two letters sent by Plaintiff to recipients outside Cheshire in which he made several racist comments.[11]   Id. at 8.   Both letters were directed to former inmates who had been "tracked" as members of the Aryan Brotherhood while they were incarcerated.[12]   In one letter, Plaintiff referenced other inmates who were designated as members of the Aryan Brotherhood and advised the recipient to "[s]tay on the [w]hite path."   Id.   In the other, he referred to another inmate affiliated with the Aryan Brotherhood and stated, "Be superior," which the Intelligence Unit staff considered to be a reference to white supremacy.   Id.   In that letter, Plaintiff signed as "Bones," a purported alias of his, but the "S" was made to look like half of a swastika.   Id.

Other inmates also apparently identified Plaintiff as a member (or even a leader) of the Aryan Brotherhood, but Plaintiff was not provided with the specifics of these informants' accusations.   The DR does not mention these informants.

Based on these discoveries, the IU recommended that Plaintiff be designated as an active affiliate of the Aryan Brotherhood and that he be placed in the SRG program.

Plaintiff does not dispute that he received a copy of the DR on March 11, 2019, that he understood the allegations against him, and that he received notice of a hearing on the charge, which was scheduled for March 19, 2019.

---

[11] Again, Plaintiff disputes that these comments are Aryan Brotherhood identifiers, but he does not dispute that he wrote them, or that they are racist.
[12] One letter was explicitly addressed to such an inmate, and the other appeared to have been routed indirectly to its recipient through a different address.   Plaintiff does not contend that either letter was intended for a different recipient than the IU suspected.

4

On March 14, 2019, Plaintiff met with Officer Wright, who advised him of the hearing process. During this meeting, Plaintiff was offered, but declined, the services of an advocate, and he identified no witnesses he wished to call to the hearing. Plaintiff asserts, though, that a few days later he changed his mind and told prison officials that he wanted to call a prison chaplain (to testify to the fact that the Norse iconography were approved to purchase and to possess as Asatru religious items), and certain corrections officers (to testify that they found the incriminating property in the property room or the phone room while Plaintiff was in restricted housing, and that such items were not on Plaintiff's person at the time, nor were they within his custody and control).

The hearing proceeded as scheduled on March 19, 2019. Lieutenant Cuzio served as the Disciplinary Hearing Officer ("DHO"), and had neither met Plaintiff before then, nor been involved in the investigation into Plaintiff's suspected affiliation or the decision to issue the DR. As DHO, Lieutenant Cuzio had the authority to include any person as a witness at the hearing, to limit the testimony of any witness at the hearing, and to order the presentation of any relevant documents or evidence that was necessary to conduct the hearing and reach a determination.

No witnesses were present, apparently because the DHO was unaware of Plaintiff's late request, and Plaintiff did not specifically request at the hearing that the witnesses he had identified be produced. It also appears that no physical evidence was presented at the hearing, but only documents describing such evidence. Plaintiff was given an opportunity to speak at the hearing, and he requested a continuance for the presentation of evidence, but he was informed that the evidence did not need to be there.

5

Plaintiff also alleges that he was told he would be found guilty of the charged conduct regardless of what he said at the hearing, but he still argued, that the incriminating items were not in his possession when they were found, and that they were not affiliated with any SRG, though Plaintiff never denied owning any of the property listed in the DR.

Ultimately, Plaintiff's arguments were unsuccessful, and Lieutenant Cuzio concluded that he was guilty of the charged offense. In a report summarizing the hearing ("Summary Report"), Lieutenant Cuzio stated that he found Plaintiff guilty "based on staff [o]bservation and [d]ocumentation," specifically citing the "large amount of SRG material relating to the Aryan Brotherhood" which the IU found in Plaintiff's property. ECF No. 178-6 at 3. Plaintiff was provided with a copy of the Summary Report.

As a result of Lieutenant Cuzio's determination, Plaintiff was designated a member of the Aryan Brotherhood and was placed in the SRG Program, which he completed in March 2021.

Plaintiff filed an appeal of his SRG designation, which was denied by District Administrator Scott Erfe on April 11, 2019. He initiated this action on January 4, 2021.

## II.  **STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to

resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see also Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."). Thus, "'[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party,' summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002)).

But a party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). Where there is no evidence upon which a jury properly could return a verdict for the party producing it, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010) ("[The] preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.   DISCUSSION

After initial review and disposition of Defendants' first motion for summary judgment, there are two claims remaining: a Fourteenth Amendment procedural due process claim, and a state tort claim.   The court first turns to the former.

#### A.   Fourteenth Amendment Procedural Due Process

Plaintiff asserts his procedural due process claim against Lieutenant Cuzio, Captain Papoosha, Directors Santiago and Maiga, Warden Erfe and District Administrator Mulligan.   He asserts that he was designated as an SRG affiliate and placed in the SRG program absent the procedural safeguards mandated by the Fourteenth Amendment. Defendants argue that they are entitled to judgment as a matter of law on this claim because:  (1) Plaintiff cannot establish that Captain Papoosha, Directors Santiago and Maiga, Warden Erfe, and District Administrator Mulligan were involved personally with any procedural due process violation; (2) Plaintiff was afforded all of the process due him; (3) any procedural due process violation that did occur constituted harmless error; and (4) Defendants are entitled to qualified immunity.

The Fourteenth Amendment's Due  Process  Clause  protects  persons  against deprivations of "life, liberty, or property, without due process of law . . . ."   U.S Const. amend. XIV.   Courts analyze procedural due process claims by asking whether the claim implicates a liberty or property interest, and if so, whether the procedures followed by the state were constitutionally sufficient.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).   There is no dispute that Plaintiff's SRG designation implicates a liberty interest, so the court moves directly to considering whether Plaintiff received adequate process.

8

When evaluating the processes used in prison decision making, courts may not substitute the judgment of the prison officials, and they must be mindful of the deference owed to those officials in the performance of their duties. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The level of procedural protection required depends on whether the action is administrative or disciplinary. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For an administrative matter, an inmate is guaranteed only "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding" it. *Hewitt v. Helms,* 459 U.S. 460, 476 (1983). For a disciplinary hearing, though, an inmate is entitled to the more robust protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). These include "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001).

The parties disagree as to whether Plaintiff's designation as an SRG affiliate was an administrative or punitive matter. If the former, Plaintiff's own admissions establish that there was no due process violation. It is undisputed that Plaintiff received notice of the SRG charge on March 11, 2019, that he understood the charge against him and that his SRG designation and placement would be determined at the hearing scheduled for March 19, 2019. Similarly, it is undisputed he had an opportunity to speak on his own behalf prior to the DHO's determination. Thus, all the *Hewitt* safeguards were observed.

But even assuming, without deciding, that the *Wolff* safeguards should attach in circumstances such as these, the court still would conclude that the undisputed facts reveal no constitutional violation.

9

### 1. *Notice of Disciplinary Charge*

To satisfy *Wolff*, an inmate must receive written notice of the charges against him at least twenty-four hours prior to the hearing. *Elder v. McCarthy*, 967 F.3d 113, 128 (2d Cir. 2020). "[N]otice is constitutionally adequate when it is sufficiently 'specific as to the misconduct with which the inmate is charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report.'" *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004)). Here, it is undisputed that Plaintiff received the DR over a week before his hearing, and that he understood the charge therein enough to prepare a defense. Accordingly, this requirement clearly is satisfied.

### 2. *Adequate Time to Prepare a Defense*

"At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before" the hearing officer. *Wolff*, 418 U.S. at 564 (1974). As noted supra, the parties agree that Plaintiff received the requisite notice on March 11, 2019, and that his hearing was held on March 19, 2019. Thus, Plaintiff had eight days to review the DR and related materials. In addition, Plaintiff admits that on March 14, 2019, five days prior to his hearing, Officer Wright advised him about the hearing process and offered him the services of an advocate. Thus, the undisputed facts appear to show that this requirement was satisfied.

Plaintiff claims a deprivation, though, in that he was not permitted to review any evidence prior to the hearing. Specifically, he objects that he was not given any information about the confidential informants who told officials that he was a member of

10

the Aryan Brotherhood, and because he was never presented with the physical objects that had been found in his property.  But the Summary Report does not indicate that Plaintiff's designation was based upon the information provided by any confidential sources; it cites only to "staff [o]bservation and [d]ocumentation" and the "large amount of SRG material relating to the Aryan Brotherhood" that the IU found in Plaintiff's property.  So there was no need to prepare a defense against that evidence.[13]   And Plaintiff has not provided, and the court has not found, any authority establishing an entitlement to view all the evidence in person.[14]   Nor does Plaintiff offer any reason why he needed such review, particularly when he often does not dispute that seized items were owned by him or even that they were racist, but only takes issue with where they were found.  Absent any dispute as to the form or provenance of the incriminating property and correspondence, both were represented adequately by the DR itself.

Accordingly, Plaintiff has failed to identify any genuine issue of disputed fact as to whether he was afforded the opportunity to prepare for the hearing.

### 3. *Opportunity to Present Evidence, Witnesses and Witness Statements*

An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."   *Wolff*, 418 U.S. at 566.

---

[13] The court also notes that DOC's responsibility to maintain order in its facilities is a necessary factor to consider when determining the contours of its obligations under the Due Process Clause, particularly given the court's obligation to give DOC due deference.   *Proctor*, 846 F.3d at 608.   Even *Wolff* subrogates procedural safeguards to maintenance of "institutional safety or correctional goals."   418 U.S. at 566.

[14] Plaintiff frequently points to Defendants' alleged failures to follow DOC directives, but those regulations have no bearing on this inquiry.   Whether DOC followed its own rules is irrelevant to whether DOC violated Plaintiff's constitutional rights.   Thus, the court will disregard those arguments herein.

The United States Court of Appeals for the Second Circuit has held that "at a minimum, a prisoner is entitled to be 'confronted with the accusation, informed of the evidence against him . . . and afforded a reasonable opportunity to explain his actions.'" *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (quoting *Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir. 1971)).

Plaintiff admits that he was afforded an opportunity to speak at the hearing. He claims, though, that he was not able to present a fulsome defense because the evidence was not present at the hearing. To the extent his argument refers to the absence of the physical evidence, the court again finds that that incriminating evidence adequately was presented by the DR alone, particularly where Plaintiff did not question its veracity. Moreover, *Wolff* only demands that an inmate be *informed* of the evidence against him, and it is undisputed that Plaintiff was so informed. And to the extent Plaintiff laments the absence of his witnesses, it is undisputed that he did not explicitly ask Lieutenant Cuzio to produce anyone for testimony.

However, even if the physical evidence and Plaintiff's witnesses ought to have been present at the hearing, the court finds the oversight to be harmless error. The Second Circuit has held that "a prisoner is entitled to assistance in 'marshaling evidence and presenting a defense' in advance of a prison disciplinary hearing." *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009)) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir.1988)). But "violations of this qualified right are reviewed for 'harmless error.'" *Id.*

In harmless error review, "harm" is shown where procedural errors *affected the outcome of the hearing*. *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir. 1991)

12

(stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Clark v. Dannheim,* 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing"). Plaintiff bears the burden of showing such harm. *Allah v. Semple*, No. 3:18-CV-887 (KAD), 2019 WL 6529821, at *9 (D. Conn. Dec. 4, 2019) (explaining that plaintiff must show that testimony from witnesses would have "helped his defense and affected the outcome of the hearing.").

Plaintiff has failed to meet this burden. He admitted that all the incriminating items were his, and that they matched the descriptions provided in the DR. Thus, the court concludes that their absence at the hearing was immaterial to the result thereof.

Nor has Plaintiff demonstrated that the witnesses he wished to call would have provided testimony affecting the outcome of the hearing. He asserts that two corrections officers would have testified to where they found the incriminating property and that the chaplain would have testified to the prison's sanction of his purchase of the Asatru symbols. But there was no question as to either point; it was undisputed that the incriminating property was found in property storage while Plaintiff was in restricted housing, and that the relevant authorities had permitted Plaintiff to purchase his Asatru iconography. So, there was no need to present evidence as to these facts. Furthermore, the court finds both points immaterial because (1) it is undisputed that

13

Asatru symbols, while certainly true religious iconography for some, also have been coopted by the Aryan Brotherhood, and so possession of such symbols reasonably (though unfortunately) can denote faith, SRG affiliation, or even both, and (2) Plaintiff admitted owning the items as described in the DR. Thus, even if the witnesses had been present at the hearing, the facts they would have presented would have changed nothing.

Given the undisputed facts that (1) Plaintiff was provided with the DR detailing the evidence used to determine his SRG affiliation, and (2) Plaintiff had an opportunity to speak and present a defense at his hearing (and he did so speak), it is clear as a matter of law that this due process safeguard also was satisfied.

### 4. *Written Statement of Reasons*

This procedural requirement is satisfied if a plaintiff receives "a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 563–67). The Summary Report addressed all these points: it stated that Plaintiff was found guilty, that this finding was based upon staff observations and documentation, and that Plaintiff was being sanctioned to modify his behavior and to deter him from future misconduct. *See generally* ECF No. 178-6. Though brief, the Summary Report thus satisfies due process. *See Rooks v. Santiago*, No. 3:20CV299 (MPS), 2022 WL 561412, at *12 (D. Conn. Feb. 24, 2022) (finding a written statement complied with due process where it briefly explained that the inmate "stated the paper wasn't his but the paper was found in his cell" and that he was found guilty "based on staff observation and documentation.").

### *5. Evidentiary Support for Finding of Guilt*

On review of a procedural due process claim, the court does not review the substance of a disciplinary decision, but simply evaluates the method for arriving at a particular decision. *H'Sh aka v. O'Gorman*, 758 F. App'x 196, 199 (2d Cir. 2019). *See also Myers v. Semple*, No. 3:18-CV-505 (KAD), 2019 WL 5328692, at *9 (D. Conn. Oct. 21, 2019) (stating that it is not for the court to "re-examine the entire record, make an independent assessment of witnesses, or reweigh the evidence," but rather simply to "consider[] only whether there is any evidence in the record to support the decision."). This evaluation requires a court to review the evidence upon which a decision is based, but it "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455–56 (1985). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." *Id.*

The Second Circuit has cautioned, though, that courts should not "construe[ ] the phrase 'any evidence' literally." *Elder*, 967 F.3d at 129 (quoting *Luna v. Pico,* 356 F.3d 481, 488 (2d Cir. 2004)). "Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." *Id.* at 129–30 (quoting *Sira*, 380 F.3d at 80). Accordingly, a disciplinary determination must be supported by "some '*reliable* evidence' of guilt." *Id.* at 129 (quoting *Luna*, 356 F.3d at 488) (emphasis in *Elder*).

15

Here, there is ample reliable evidence to support Lieutenant Cuzio's conclusions. It is undisputed that the DR provided a detailed description of many items indicating Plaintiff's SRG affiliation—including letters from him directed to individuals also suspected of Aryan Brotherhood affiliation which included statements and symbols used within the Aryan Brotherhood. The DR also listed items of Plaintiff's property which contained Aryan Brotherhood identifiers. And Plaintiff admits that he did write the incriminating letters and that the incriminating property was his, so there is no question as to the reliability of the evidence. Even setting aside items related to the Asatru religion, there is ample evidence upon which Lieutenant Cuzio reasonably could have found Plaintiff guilty of the alleged charge. The fact that Plaintiff possessed a coded alphabet is reasonably suspicious, particularly when coupled with language in the letters expressing disdain over others having reduced to writing incriminating statements. ECF No. 178-6 at 8 (lamenting "what you have written down dumbass, [d]on't write hot [expletive] down on paper."). The letters alone likely are enough to satisfy the "some evidence" standard.

Plaintiff apparently concedes that the items noted in the DR do indicate bigotry, but he argues that everything racist, antisemitic, and white supremacist is not necessarily affiliated with Aryan Brotherhood. *See* ECF No. 178-4 at 19–21 (admitting that Plaintiff placed a picture of Adolf Hitler on his coffee mug along with the name of a "racist group" to which he previously belonged, but that, "Not everything that is antisemitic, racist, offensive . . . designates you as being a member of the Aryan Brotherhood."). Plaintiff was not designated as an SRG affiliate due to his bigotry, but because he manifested it in the manner as do members of the Aryan Brotherhood. The "some reliable evidence"

16

standard does not require DOC to locate an Aryan Brotherhood membership card in Plaintiff's pocket before making an SRG determination. It is enough that the evidence identified reasonably supports the conclusion.

Accordingly, Plaintiff fails to identify a factual issue as to this requirement, too.

### 6. *Impartial Hearing Officer*

Finally, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Generally, an impartial hearing officer is one who "does not prejudge the evidence" and who "cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990). This safeguard is intended to avoid the "hazard of arbitrary decisionmaking . . . ." *Wolff*, 418 U.S. 539, 571 (1974); *see also Williams v. Chuttey*, 767 F. App'x 105, 109 (2d Cir. 2019) ("[I]t is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right.") (quoting *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally," and prison officials serving as hearing officers are presumed to be unbiased. *Allen*, 100 F.3d at 259.

Plaintiff argues that he was denied an impartial hearing officer, alleging that Lieutenant Cuzio could not have weighed the evidence because the evidence was not present at the hearing, and that Lieutenant Cuzio told him at the hearing that the decision to designate him as an SRG affiliate already had been made by more senior officials. With respect to the former, as the court already has discussed supra, there was no need

17

to have the evidence present. Plaintiff admitted the items were as described and he admitted that they were his belongings. Lieutenant Cuzio did not need to have the items in front of him to be able to assess their import.

However, the court agrees that Lieutenant Cuzio's alleged comment, taken as true (as the court must at the summary judgment phase), seriously calls into question his impartiality, because it creates the appearance that the matter was prejudged before Plaintiff had the opportunity to defend himself against the allegations. Still, it does not necessarily follow that the decision therefore was *arbitrary*. As discussed supra, there was more than enough evidence to support Plaintiff's designation as an SRG affiliate, and Plaintiff did not present any argument at the hearing that undermined the weight of that evidence. He argued there, as he does here, that (1) he could not be designated an SRG affiliate because although the incriminating property was his, it was not in his possession when found, and (2) while the evidence did indicate a panoply of prejudices, he was somewhat of a freelance bigot, and not a member of the Aryan Brotherhood. Neither argument calls into question the reliability or the sufficiency of the evidence. Rather, they are mere academic challenges to the practical realities that Plaintiff owned and produced the offensive materials, which is consistent with the actions of a member of the SRG. *See Williams*, 767 F. App'x 105, 109 (2d Cir. 2019) (upholding a prison disciplinary determination despite the hearing officer's comment that the inmate was unlikely to prevail in his defense where the inmate "had already made clear that his defense was not based on a factual dispute but on his interpretation of the prison rule . . . ."). Moreover, Plaintiff has pointed to no improper bias upon which his designation may

have been made. The record does not suggest that the finding of Plaintiff's guilt was predicated upon anything other than the evidence, nor is it argued that the outcome would have been any different had the hearing officer not prejudged the evidence. Accordingly, the court finds no violation of the requirement for an impartial hearing officer, or at most, harmless error.

Having determined that there is no factual dispute as to whether Plaintiff's procedural entitlements were satisfied as a matter of law, the court must grant the motion for summary judgment in Defendants' favor on that basis. Accordingly, the court need not address Defendants' alternative arguments.

### B. Intentional Infliction of Emotional Distress

On initial review, the court permitted Plaintiff to proceed on his state common law claim of intentional infliction of emotional distress, but as it now grants summary judgment to Defendants on Plaintiff's only surviving federal claim, it declines to exercise supplemental jurisdiction over the state claims. See 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all claims over which it has original jurisdiction). Accordingly, this claim is dismissed without prejudice to refiling in state court.

### IV. CONCLUSION

For the foregoing reasons, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, ECF No. 178, is **<u>GRANTED</u>** as to the single remaining federal claim.

    a. The single remaining state law claim is dismissed without prejudice.

    b. The Clerk of the Court respectfully is asked to please enter judgment in Defendants' favor as to the constitutional claim, and to please close this case.

2. Given this ruling, Plaintiff's Motion for Status Update, ECF No. 199; his Motion for Status Conference, ECF No. 200; and his Request for Status Conference, ECF No. 205, are denied as moot.

**IT IS SO ORDERED** at Hartford, Connecticut this 22nd day of August, 2025.

>             /s/
> Omar A. Williams
> United States District Judge